# 24-1639-cv(L),

24-1645-cv(CON),
24-1651-cv(CON),
24-1656-cv(CON),

24-1665-cv(CON), 24-1668-cv(CON), 24-1671-cv(CON), 24-1676-cv(CON), 24-1686-cv(CON),
24-1687-cv(CON), 24-1689-cv(CON), 24-1691-cv(CON), 24-1693-cv(CON), 24-1694-cv(CON),
24-1717-cv(CON), 24-1719-cv(CON), 24-1724-cv(CON), 24-1728-cv(CON), 24-1731-cv(CON),
24-1734-cv(CON), 24-1744-cv(CON), 24-1745-cv(CON), 24-1748-cv(CON), 24-1753-cv(CON),
24-1754-cv(CON), 24-1756-cv(CON), 24-1758-cv(CON), 24-1759-cv(CON), 24-1761-cv(CON),
24-1762-cv(CON), 24-1763-cv(CON), 24-1764-cv(CON), 24-1765-cv(CON), 24-1767-cv(CON),
24-1815-cv(CON), 24-1818-cv(CON), 24-1819-cv(CON), 24-1820-cv(CON), 24-1821-cv(CON),
24-1822-cv(CON), 24-1823-cv(CON), 24-1824-cv(CON), 24-1825-cv(CON), 24-1826-cv(CON),
24-1828-cv(CON), 24-1829-cv(CON), 24-1831-cv(CON), 24-1832-cv(CON), 24-1833-cv(CON),
24-1834-cv(CON), 24-1836-cv(CON), 24-1837-cv(CON), 24-1838-cv(CON), 24-1839-cv(CON),
24-1840-cv(CON), 24-2020-cv(CON)

## United States Court of Appeals

### *for the*

### Second Circuit

COUNTY OF WESTCHESTER, TIOGA COUNTY, CATTARAUGUS

*(For Continuation of Caption See Inside Cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## JOINT BRIEF AND SPECIAL APPENDIX
## FOR DEFENDANTS-APPELLANTS

ELLISON WARD MERKEL
HALEY PLOURDE-COLE
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

*Attorneys for Defendant-Appellant
  Express Scripts, Inc.*

BRIAN D. BOONE
MICHAEL R. HOERNLEIN
ALSTON & BIRD LLP
Vantage South End
1120 South Tryon Street, Suite 300
Charlotte, North Carolina 28203
(704) 444-1000

*Attorneys for Defendant-Appellant
  OptumRx, Inc.*

*(For Continuation of Appearances See Inside Cover)*

COUNTY, NY, PUTNAM COUNTY, NY, RENSSELAER COUNTY, NY, TOWN OF CHEEKTOWAGA, NY, FRANKLIN COUNTY, NY, CITY OF KINGSTON, SCHUYLER COUNTY, NY, NIAGARA COUNTY, NY, CAYUGA COUNTY, NY, TOWN OF AMHERST, NY, STEUBEN COUNTY, NY, CHAUTAUQUA COUNTY, NY, SARATOGA COUNTY, NY, CHEMUNG COUNTY, NY, ESSEX COUNTY, NY, CORTLAND COUNTY, NY, CITY OF MOUNT VERNON, NY, ORLEANS COUNTY, NY, OTSEGO COUNTY, NY, CLINTON COUNTY, NY, CHENANGO COUNTY, NY, TOMPKINS COUNTY, NY, CITY OF ITHACA, NY, GENESEE COUNTY, NY, HAMILTON COUNTY, NY, TOWN OF LANCASTER, NY, TOWN OF TONAWANDA, NY, LIVINGSTON COUNTY, NY, WARREN COUNTY, NY, YATES COUNTY, NY, MADISON COUNTY, NY, SCHOHARIE COUNTY, NY, NASSAU COUNTY, NY, COUNTY OF MONROE, COUNTY OF LEWIS, COUNTY OF BROOME, COUNTY OF ERIE, COUNTY OF MONTGOMERY, COUNTY OF COLUMBIA, COUNTY OF FULTON, CITY OF NEW YORK, COUNTY OF GREENE, COUNTY OF DUTCHESS, COUNTY OF ONTARIO, COUNTY OF ULSTER, COUNTY OF OSWEGO, COUNTY OF WASHINGTON, COUNTY OF HERKIMER, COUNTY OF SCHENECTADY, COUNTY OF SULLIVAN, COUNTY OF ORANGE, COUNTY OF ST. LAWRENCE, COUNTY OF SENECA, COUNTY OF WYOMING and COUNTY OF SUFFOLK,

*Plaintiff-Appellees,*

– v. –

EXPRESS SCRIPTS, INC. and OPTUMRX, INC.,

*Defendants-Appellants,*

– and –

MYLAN PHARMACEUTICALS, INC. and PURDUE PHARMA L.P.,

*Defendants.*

MICHAEL LYLE
JONATHAN G. COOPER
CHRISTOPHER G. MICHEL
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
1300 I Street, NW, Suite 900
Washington, DC 20005
(202) 538-8000

– and –

CHARLES B. STRAUT II
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California 94111
(415) 875-6600

*Attorneys for Defendant-Appellant
   Express Scripts, Inc.*

DEBOLINA DAS
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
(212) 905-9040

*Attorneys for Defendant-Appellant
   OptumRx, Inc.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant Express Scripts, Inc., states that its sole parent company is Evernorth Health, Inc. All interests in Evernorth Health, Inc., are held by The Cigna Group, a publicly traded company. The Cigna Group has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

*/s/ Jonathan G. Cooper*

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant OptumRx, Inc. states that it is not a publicly traded entity. OptumRx is a wholly owned subsidiary of OptumRx Holdings, LLC. OptumRx Holdings, LLC is a wholly owned subsidiary of Optum, Inc. Optum, Inc. is not a publicly traded entity. Optum, Inc. is a wholly owned subsidiary of United HealthCare Services, Inc. United HealthCare Services, Inc. is not a publicly traded entity. United HealthCare Services, Inc. is a wholly owned subsidiary of UnitedHealth Group Incorporated, which is publicly traded on the New York Stock Exchange. No publicly traded entity owns 10% or more of UnitedHealth Group Incorporated stock.

*/s/ Brian D. Boone*

# TABLE OF CONTENTS

<strong>Page</strong>

PRELIMINARY STATEMENT .......................................................... 1

JURISDICTIONAL STATEMENT ..................................................... 3

ISSUE PRESENTED FOR REVIEW ................................................. 4

STATEMENT OF THE CASE............................................................ 4

    A.    Legal Background ................................................... 4

    B.    Factual Background.................................................. 6

    C.    Procedural History................................................... 7

        1.    The First Wave Cases ................................... 8

        2.    The Second Wave Cases .............................. 10

        3.    The District Court Rulings .......................... 12

        4.    Appellate Proceedings ................................. 13

SUMMARY OF ARGUMENT ......................................................... 14

STANDARD OF REVIEW .............................................................. 16

ARGUMENT .................................................................................. 16

I.    THE PBMs SATISFY ALL THE ELEMENTS OF THE FEDERAL OFFICER REMOVAL STATUTE ............................................ 16

    A.    The PBMs Are "Persons" Under The Statute .................... 17

    B.    The PBMs "Acted Under" Federal Officers Within The Meaning Of The Statute ......................................... 17

        1.    The PBMs Acted Under Federal Officers In Providing Pharmacy Benefit Management Services To Federal Agencies .................................. 17

        2.    The PBMs' Actions Under Federal Officers Are Causally Connected To Plaintiffs' Claims.............. 24

    C.    The PBMs Have Asserted Colorable Federal Defenses..................... 26

II.    PLAINTIFFS' PURPORTED DISCLAIMERS DO NOT UNDERMINE THE BASIS FOR THE PBMs' FEDERAL OFFICER REMOVAL.................................................. 28

    A.    Plaintiffs' Disclaimers Are Factually And Legally Ineffective .......... 29

i

1.      Plaintiffs Challenge Indivisible Federally Directed
        Conduct ................................................................29

2.      Plaintiffs' Public Nuisance Claims Are Legally
        Indivisible............................................................32

3.      Plaintiffs' Disclaimers Would Force The PBMs To Prove
        Federal Direction In State Court ...............................37

B.      The Disclaimer Cases Invoked By The Courts Below Have
        Been Reversed Or Are Inapposite .........................................40

III.    EVEN IF THE DISCLAIMERS WERE VALID, REMOVAL IS
        PROPER BECAUSE PLAINTIFFS' CLAIMS RELATE TO THE
        PBMs' ACTIONS UNDER FEDERAL OFFICERS ...................45

CONCLUSION .......................................................................49

## <u>TABLE OF AUTHORITIES</u>

<u>**Page**</u>

### <u>Cases</u>

*Agyin v. Razmzan*,
986 F.3d 168 (2d Cir. 2021) ....................................... 4, 6, 16, 17, 18, 24, 25, 48

*Anesthesiology Assocs. of Tallahassee v. Blue Cross Blue Shield of Fla.*,
2005 WL 6717869 (11th Cir. Mar. 18, 2005) ...................................18

*Arizona v. Manypenny*,
451 U.S. 232 (1981)..................................................................27

*Badilla v. Midwest Air Traffic Control Serv., Inc.*,
8 F.4th 105 (2d Cir. 2021) ........................................................6, 16, 25

*Baker v. Atl. Richfield Co.*,
962 F.3d 937 (7th Cir. 2020) ...........................................................5, 38, 39, 47

*Benoit v. Saint-Gobain Performance Plastics Corp.*,
959 F.3d 491 (2d Cir. 2020) .....................................................33

*Bradford v. Harding*,
284 F.2d 307 (2d Cir. 1960) .....................................................16

*California v. CaremarkPCS Health LLC*, (*California II*)
2024 WL 3770326 (9th Cir. Aug. 13, 2024) ...............................2, 12, 30, 40, 41

*California v. Eli Lilly and Company (California I)*,
2023 WL 4269750 (C.D. Cal. June 28, 2023)...........................12, 40

*Caris MPI, Inc. v. UnitedHealthcare, Inc.*,
108 F.4th 340 (5th Cir. 2024) .....................................................18

*Caver v. Cent. Ala. Elec. Coop.*,
845 F.3d 1135 (11th Cir. 2017) ......................................................5, 6

*Chapman v. Crane Co.*,
694 F. App'x 825 (2d Cir. 2017) ..............................................42, 43

*In re Commonwealth's Mot. to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*,
  790 F.3d 457 (3d Cir. 2015) ...........................................................6, 47

*Copart Indus., Inc. v. Consol. Edison Co. of N.Y., Inc.*,
  362 N.E.2d 968 (N.Y. 1977).........................................................33, 42

*Corley v. Long-Lewis*,
  688 F. Supp. 2d 1315 (N.D. Ala. 2010).................................................38

*County Bd. of Arlington County v. Express Scripts Pharmacy, Inc.*,
  996 F.3d 243 (4th Cir. 2021) ........................ 1, 20, 26, 27, 28, 36, 37, 44, 45, 46

*Coventry Health Care of Missouri, Inc. v. Nevils*,
  581 U.S. 87 (2017).....................................................................

*Cuomo v. Crane Co.*,
  771 F.3d 113 (2d Cir. 2014) .................................................4, 6, 16, 26, 27, 38

*DeFiore v. SOC LLC*,
  85 F.4th 546 (9th Cir. 2023) .............................................................48

*Despres v. Ampco-Pittsburgh Co.*,
  577 F. Supp. 2d 604 (D. Conn. 2008)....................................................36

*Dougherty v. A O Smith Corp.*,
  2014 WL 3542243 (D. Del. July 16, 2014) .............................................36, 42

*Drake v. Vill. of Lima*,
  200 N.Y.S.3d 600 (App. Div. 4th Dep't 2023) ...........................................33

*Durham v. Lockheed Martin Corp.*,
  445 F.3d 1247 (9th Cir. 2006) ...........................................................4

*Frawley v. Gen. Elec. Co.*,
  2007 WL 656857 (S.D.N.Y. Mar. 1, 2007)...........................................12, 42

*Goncalves v. Rady Children's Hosp. San Diego*,
  865 F.3d 1237 (9th Cir. 2017) .....................................................18, 24, 30, 48

*Gov't of Puerto Rico v. Eli Lilly & Co.*,
  2023 WL 4830569 (D.P.R. July 13, 2023), *appeal pending sub nom. Gov't of Puerto Rico v. CaremarkPCS Health, LLC*, No. 23-1613 (1st Cir.), *argued* July 23, 2024 ......................................................40, 41

*Grady v. Monsanto Co.*,
  2023 WL 4884468 (E.D. Mo. Aug. 1, 2023)......................................................42

*Grider Drug, LLC v. Express Scripts, Inc.*,
  2009 U.S. Dist. LEXIS 107515 (W.D. Ky. Nov. 17, 2009), *aff'd*, 500 F. App'x 402 (6th Cir. 2012)......................................................21, 28

*Hawai'i v. CaremarkPCS Health, L.L.C.*,
  2024 WL 1907396 (D. Haw. May 1, 2024)......................... 23, 28, 31, 36, 42, 45

*Healthcare Ventures Partners, LLC v. Anthem Blue Cross & Blue Shield*,
  2021 WL 5194662 (S.D. Ohio Nov. 8, 2021) ......................................................43

*Isaacson v. Dow Chem. Co.*,
  517 F.3d 129 (2d Cir. 2008) ................................... 4, 5, 6, 16, 17, 18, 25, 26, 31

*Jacks v. Meridian Res. Co., LLC*,
  701 F.3d 1224 (8th Cir. 2012) ......................................................18, 24

*Jefferson County v. Acker*,
  527 U.S. 423 (1999)......................................................27

*Kelleher v. A.W. Chesterton Co.*,
  2015 WL 7422756 (S.D. Ill. Nov. 23, 2015)......................................................42

*Latiolais v. Huntington Ingalls, Inc.*,
  951 F.3d 286 (5th Cir. 2020) ......................................................5, 46, 47

*Maguire v. A.C. & S., Inc.*,
  2015 WL 4934445 (S.D.N.Y. Aug. 18, 2015)......................................................12, 42

*Marley v. Elliot Turbomach. Co., Inc.*,
  545 F. Supp. 2d 1266 (S.D. Fla. 2008) ......................................................38

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
  488 F.3d 112 (2d Cir. 2007) ......................................................4, 5, 16, 17

*Moore v. Elec. Boat Corp.*,
   25 F.4th 30 (1st Cir. 2022)......................................................................47

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374 (1992)................................................................................48

*In re Nat'l Prescription Opiate Litig.* (*Frederick County*),
   2023 WL 166006 (N.D. Ohio Jan. 12, 2023) . 1, 20, 21, 26, 27, 28 36, 37, 44, 45

*New York v. Trump*,
   683 F. Supp. 3d 334 (S.D.N.Y. 2023) ....................................................47

*O'Shea v. Asbestos Corp.*,
   2019 WL 12345572 (D.N.D. Dec. 13, 2019) ..........................................42

*Oberstar v. CBS Corp.*,
   2008 WL 11338471 (C.D. Cal. Feb. 11, 2008) ......................................36

*Ohio ex rel. Yost v. Ascent Health Services, LLC*,
   2024 WL 23187 (S.D. Ohio Jan. 2, 2024) ..............................................42

*People v. Rubenfeld*,
   172 N.E. 485 (N.Y. 1930)........................................................................33

*Ray v. Tabriz*,
   110 F.4th 949 (7th Cir. 2024) ................................................................23

*Reaser v. Allis Chambers*,
   2008 WL 8911521 (C.D. Cal. June 23, 2008) ........................................38

*Ross v. Blake*,
   578 U.S. 632 (2016)................................................................................47

*Rutledge v. Pharm. Care Mgmt. Ass'n*,
   592 U.S. 80 (2020)....................................................................................6

*Sawyer v. Foster Wheeler LLC*,
   860 F.3d 249 (4th Cir. 2017) ..................................................................6

*Shaw v. Delta Air Lines, Inc.*,
   463 U.S. 85 (1983)..................................................................................48

*Siders v. 20th Cent. Glove Corp. of Tex.*,
    2016 WL 1733473 (S.D. W. Va. Apr. 29, 2016)...................................32

*St. Charles Surgical Hosp., LLC v. La. Health Serv. & Indem. Co.*,
    935 F.3d 352 (5th Cir. 2019) ...............................................23, 28

*State by Tong v. Exxon Mobil Corp.*,
    83 F.4th 122 (2d Cir. 2023) ....................................................6, 48

*Teamsters Loc. 404 Health Servs. & Ins. Plan v. King Pharms., Inc.*,
    906 F.3d 260 (2d Cir. 2018) .......................................................16

*Watson v. Philip Morris Cos., Inc.*,
    551 U.S. 142 (2007).......................................................4, 16, 18

*Wilde v. Huntington Ingalls, Inc.*,
    616 F. App'x 710 (5th Cir. 2015) ...............................................42

*Willingham v. Morgan*,
    395 U.S. 402 (1969)................................................4, 5, 38, 39

*Wolfe v. McDonough*,
    28 F.4th 1348 (Fed. Cir. 2022) ...............................................22, 23

## Statutes / Rules

1 U.S.C. § 1 .......................................................................17

5 U.S.C. § 8901 ..................................................................22

5 U.S.C. § 8902(m)(1) .........................................................28

10 U.S.C. § 1071 ...............................................................19

10 U.S.C. § 1073a ..............................................................21

10 U.S.C. § 1074g(a)(1)-(2)....................................................19

10 U.S.C. § 1103(a)(2).........................................................27

28 U.S.C. § 1442 ........................ 1, 3, 4, 5, 15, 16, 17, 18, 21, 25, 36, 45, 46, 48

28 U.S.C. § 1447(d) ..............................................................3

32 C.F.R. § 199.21(o) ........................................................27, 28

48 C.F.R. § 1602.170-16(a) ...................................................22

48 C.F.R. § 1604.7201(a)-7202 ............................................22

48 C.F.R. § 1646.201 ...........................................................22

48 C.F.R. § 1652.204.74 .......................................................22

48 C.F.R. § 1652.204-70 .......................................................22

48 C.F.R. § 1652.204-74(a) ...................................................22

48 C.F.R. § 1652.246-70 .......................................................22

## <u>Other Authorities</u>

*Consolidated Pharmacy Benefits Guidance for the FEHBP Program*
(February 12, 2024), https://tinyurl.com/3axs3mnj .............................................22

*Federal Employees Health Benefits Program Standard Contract for*
*Experience-Rated Health Maintenance Organization Carriers*
(2019) at I-17, § 1.28(a)(5), https://tinyurl.com/376n9nb5 ................................23

FEHBP Program Carrier Letter 2019-10 (September 6, 2019),
https://tinyurl.com/45e3b74r.............................................23

Removal Clarification Act of 2011, Pub. L. No. 112-51 § 2(b)(1)(A),
125 Stat. 545, 545 ..................................................................5

## PRELIMINARY STATEMENT

Defendants-Appellants are pharmacy benefit managers Express Scripts, Inc., and OptumRx, Inc. (**PBMs**). They contract with clients—both private entities and federal agencies—to administer prescription-drug benefits. Among other work, the PBMs assist the U.S. Department of Defense in operating the TRICARE program to provide healthcare to active-duty military service members and help the U.S. Department of Veterans Affairs provide healthcare to veterans. When Plaintiffs— 57 New York counties and municipalities—sued the PBMs in state court for allegedly contributing to a public nuisance arising from prescription opioids, the PBMs removed the cases to federal court under the federal officer removal statute, which permits a private entity "acting under" a federal officer to remove claims "for or relating to" the work for the federal officer. 28 U.S.C. § 1442(a)(1).

The only other court of appeals to consider the propriety of such a removal in opioids-related litigation has upheld it. *County Bd. of Arlington County v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 248 (4th Cir. 2021). So has the district court overseeing the opioid multi-district litigation (**MDL**). *In re Nat'l Prescription Opiate Litig.* (*Frederick County*), 2023 WL 166006, at *3-8 (N.D. Ohio Jan. 12, 2023). The district courts handling these consolidated cases, however, held that remand was warranted based on Plaintiffs' purported disclaimer of reliance on the PBMs' work for federal officers. That holding is legally mistaken for multiple reasons.

1

First, Plaintiffs challenge conduct that the PBMs perform on an undifferentiated basis for federal and non-federal clients alike. As the Ninth Circuit recently held in a factually analogous case involving PBMs, the indivisible nature of the PBMs' challenged conduct means the claims have the requisite connection to the PBMs' federal work irrespective of the purported disclaimer. *California v. CaremarkPCS Health LLC*, 2024 WL 3770326, at *1 (9th Cir. Aug. 13, 2024).

Second, Plaintiffs' purported disclaimer is ineffective because a public nuisance claim under New York law requires that the *entire community* be affected by the alleged interference. By choosing to bring such a claim, Plaintiffs have foreclosed their ability to carve out portions of the community through purported disclaimers. Plaintiffs also seek abatement of the entire alleged public nuisance, which would necessarily include any alleged harms connected to the thousands of prescription opioids that the PBMs processed at the behest of federal officers in Plaintiffs' jurisdictions.

Third, Plaintiffs' purported disclaimers would force the PBMs to defend the scope of their actions for federal officers in state courts, precisely the question that Congress has long directed to federal court to protect federal operations. Each of those flaws in Plaintiffs' purported disclaimers provides an independent basis for reversing the decisions below.

2

In the alternative, even if Plaintiffs' disclaimers are valid, removal would still be proper because Plaintiffs' claims at least "relat[e] to" the PBMs' work for federal officers and therefore fall within the plain textual meaning of the federal officer removal statute. 28 U.S.C. § 1442(a)(1). Indeed, the very nature of the purported disclaimer—in which Plaintiffs seek to carve out one segment of the PBMs' provision of the same services to private and federal clients—reinforces that there is a close relationship between the scope of the claims as defined by Plaintiffs and the PBMs' work for federal officers. This Court should accordingly reverse the remand orders and return these cases to federal court for further proceedings.

## JURISDICTIONAL STATEMENT

The district courts had subject-matter jurisdiction under 28 U.S.C. § 1442(a)(1) because the PBMs, as "person[s] acting under" an "officer . . . of the United States," removed these suits "for or relating to . . . act[s] under color of such office" to "the district court … for the district and division embracing the place wherein [they are] pending." This Court has jurisdiction under 28 U.S.C. § 1447(d) because the PBMs appealed from orders "remanding [the] case[s] to the State court from which [they were] removed pursuant to [28 U.S.C.] section 1442."

## ISSUE PRESENTED FOR REVIEW

Whether these suits alleging that the PBMs created a public nuisance through their provision of pharmacy benefit manager services are removable under the federal officer removal statute, 28 U.S.C. § 1442(a)(1).

## STATEMENT OF THE CASE

### A.    Legal Background

Initially enacted "near the end of the War of 1812," the federal officer removal statute has long served "to protect federal officers from interference by hostile state courts." *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147-48 (2007) (quoting *Willingham v. Morgan,* 395 U.S. 402, 405 (1969)); *see also In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 117 (2d Cir. 2007). The statute extends not just to federal officers but also to private parties "acting under" federal officers, including "a private company acting pursuant to a contract with the federal government." *Agyin v. Razmzan*, 986 F.3d 168, 175 (2d Cir. 2021); *see also Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135 (2d Cir. 2008). That protection follows directly from the statute's basic purpose: "[i]f the federal government can't guarantee its agents access to a federal forum if they are sued or prosecuted, it may have difficulty finding anyone willing to act on its behalf." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006).

4

For most of the past 75 years, the federal officer removal statute provided a right for a "person acting under" a federal officer to remove a suit brought in state court "for any act under color of such office." *Willingham*, 395 U.S. at 404 n.1 (citation omitted). As interpreted by this Court, that version of the statute required a removing defendant to establish three elements: (1) "that it is a 'person' within the meaning of the statute," which includes private corporate entities; (2) "that it was 'acting under' a federal officer, which subsumes the existence of a 'causal connection' between the charged conduct and asserted official authority," and (3) that it has "a colorable federal defense." *MTBE*, 488 F.3d at 124 (cleaned up); *see also Isaacson*, 517 F.3d at 137.

Congress amended the federal officer removal statute in the Removal Clarification Act of 2011, Pub. L. No. 112-51 § 2(b)(1)(A), 125 Stat. 545, 545. As relevant here, the statute now permits "any person acting under" a federal officer to remove a suit brought "for *or relating to* any act under color of such office." 28 U.S.C. § 1442(a)(1) (emphasis added). Many other federal courts of appeals have held that the 2011 amendment adding "or relating to" to the statutory term "for" had the effect of "broaden[ing] federal officer removal to actions, not just *causally* connected, but alternatively *connected* or *associated*, with acts under color of federal office." *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 292 (5th Cir. 2020) (en banc); *see also Baker v. Atl. Richfield Co.*, 962 F.3d 937, 944 (7th Cir. 2020); *Caver*

*v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1144 (11th Cir. 2017); *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 258 (4th Cir. 2017); *In re Commonwealth's Mot. to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 471-72 (3d Cir. 2015).

To date, this Court has "continued to apply the causal-nexus requirement" that it adopted under the pre-2011 version of the statute. *State by Tong v. Exxon Mobil Corp.*, 83 F.4th 122, 145 n.7 (2d Cir. 2023). The Court has, however, emphasized that the "hurdle erected by [the causation] requirement is quite low," *Isaacson*, 517 F.3d at 137 (citation omitted), and that the federal officer removal statute as a whole should be interpreted "liberally" and "broadly" in light of its critical purposes, *Badilla v. Midwest Air Traffic Control Serv., Inc.*, 8 F.4th 105, 120 (2d Cir. 2021); *see also Agyin*, 986 F.3d at 175; *Crane*, 771 F.3d at 115.

### B.    Factual Background

In carrying out their basic functions, the PBMs contract with health insurance plan sponsors to administer prescription-drug benefits and process insurance claims for prescription medications. A1913; *see also Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 83-84 (2020). PBMs contract with both private entities (*e.g.*, employer-sponsored health plans) as well as government agencies.

As particularly relevant here, Express Scripts provides pharmacy benefit manager services to the U.S. Department of Defense (**DoD**) health care program

known as TRICARE, which offers plans covering active-duty service members. A1297. Express Scripts serves TRICARE members across the country, including in New York, subject to specific requirements and direction from DoD. A1913-1915. Express Scripts also provides services to health plans participating in the Federal Employees Health Benefits Program, which is administered and overseen by the U.S. Office of Personnel Management (**OPM**). A1916-17. Express Scripts serves federal employees across the country, including in Plaintiffs' communities, subject to specific requirements and direction from OPM. A1917. OptumRx similarly contracts with the Veterans Health Administration (**VHA**) to provide services to veterans across the country, including in Plaintiffs' jurisdictions, subject to specific requirements and direction from VHA. A1985.

### C.    Procedural History

Between 2017 and 2021, dozens of New York cities, counties, and towns filed opioid lawsuits in state courts throughout New York. In July 2017, the New York State Court Litigation Coordinating Panel ordered all similar opioid matters filed in state court to be coordinated in the Suffolk County Supreme Court under the caption *In re Opioid Litigation*, Index No. 400000/2017. Certain of the cases were designated as *Track I Cases* and proceeded to a bellwether trial as to certain claims against certain other defendants, which resulted in a verdict against drug manufacturer Teva and its wholly-owned distributor Anda on the issue of liability

on December 30, 2021. In August 2022, the New York State Court Litigation Coordinating Panel transferred the remaining cases to the Westchester County Supreme Court under the caption *In re Opioid Litigation – Non-Track I Cases*, Index No. 75000/2022.

### 1. The First Wave Cases

On April 7, 2023, Plaintiffs in 35 cases (**First Wave Cases**) filed identical amended complaints naming more than two dozen new defendants, including the PBMs. The complaints included New York common law claims for public nuisance, fraud, unjust enrichment, and negligence, as well as New York statutory claims for deceptive consumer practices, false advertising, and false statement to obtain public funds. A1273-88.[1] The allegations against the PBMs centered on their supposed promotion of opioids on their lists of approved drugs (known as "formularies"), allegedly in exchange for rebates from drug manufacturers. *See, e.g.,* A1251 ("PBM Defendants received rebates and other financial incentives to promote the Manufacturer Defendants' drugs to ensure they were widely sold").

The PBMs timely removed 34 of the 35 First Wave Cases to the U.S. District Court for the Southern District of New York under the federal officer removal statute. The district court consolidated those cases (**SDNY First Wave Cases**) under

---

[1] This brief cites the originally removed and amended complaints in *Westchester County*, which are substantially identical to the originally removed and amended complaints filed in the other 34 First Wave Cases.

the caption of the first-removed action, *Westchester County v. Mylan Pharm., Inc.*, 7:23-cv-06096 (S.D.N.Y.). The PBMs timely removed the 35th case, *Nassau County v. Mylan Pharm., Inc.*, No. 24-1839, to the U.S. District Court for the Eastern District of New York on July 15, 2023. A88-99.

On September 29, 2023, Plaintiffs in the SDNY First Wave Cases further amended their complaints. The amended complaints included the same claims as the original complaints, except that they no longer included claims for negligence or unjust enrichment. *See* A1627-44. Plaintiffs' allegations again pressed the theory that the "PBMs negotiated with the opioid manufacturers to give opioids favorable placement on national formularies in exchange for rebates and fees." A1577. For example, Plaintiffs allege that the PBMs placed OxyContin on their formularies in exchange for rebates from Purdue Pharma. A1588-89.

The amended complaints also purported "to disclaim[] federal claims," including claims "related to prescriptions adjudicated or processed under any federal program or federal contract, including OptumRx's contract with [VHA] or pharmacy care services provided to the federal government, Express Scripts' contracts with [DoD], the TRICARE health care program, and other health plans participating in the FEHBP overseen or administered by the federal government." A1328. Notwithstanding those purported disclaimers, Plaintiffs' complaints nevertheless included claims for public nuisance under New York law premised on the PBMs

9

creating a single, aggregate "oversupply" of prescription opioids by "flood[ing]" the opioid market through their "almost exclusive control over the dissemination of opioids." A1540, A1632, A1643. Plaintiffs alleged that this injury is "indivisible" in satisfaction of an element of their public nuisance claim under New York law. A1643. Plaintiffs also sought to hold Express Scripts and OptumRx "jointly and severally" liable for "all damages" caused by the opioid crisis, including "[i]ncreased costs and expenses . . . relating to healthcare services, law enforcement, the criminal justice system, social services, and education systems" and "significant expenses for police, emergency, health, prosecution, corrections, rehabilitation, and other services." A1632-33, A1643.

Nassau County filed an amended complaint identical to the amended complaints in the SDNY First Wave Cases. *See generally* A289-621. Plaintiffs in all the First Wave Cases then moved to remand. A1648-50, A622-23. The PBMs opposed remand. *See generally* A1879-1910, A660-91.

### 2.    The Second Wave Cases

In April 2024, Plaintiffs in 22 other cases (**Second Wave Cases**) filed amended complaints identical to one another to name new defendants, including the PBMs. *See generally* A2263-2554.[2] Those complaints included similar claims for

---

[2]    This brief cites the complaint in *Monroe County*, which is substantially identical to the complaints filed in the other 21 Second Wave Cases.

relief and allegations as the complaints previously filed in the First Wave Cases. *See generally* A2522-52. As relevant here, they similarly allege harms resulting from an "oversupply of opioids" due to the PBMs' actions that allegedly "injuriously affected rights common to the general public." A2529, A2535. Like Plaintiffs in the First Wave Cases, Plaintiffs in the Second Wave Cases allege that they "suffered an indivisible injury" in satisfaction of a required element of New York public nuisance law. A2542. The Second Wave Plaintiffs further allege that the PBMs "profited" from the alleged oversupply of opioids "by receiving rebates and other fees" from drug manufacturers. A2511-12. The complaints in the Second Wave Cases also purport to disclaim recovery in connection with pharmacy benefit claims processed for TRICARE, FEHBA, and the VHA. A2304-08.

The PBMs timely removed 21 of the 22 Second Wave Cases (**SDNY Second Wave Cases**) to the Southern District of New York, where the district court consolidated them with the SDNY First Wave Cases under the *Westchester County* caption. The PBMs timely removed the 22nd case, *County of Suffolk v. Purdue Pharma. L.P.*, No. 24-2020, to the Eastern District of New York, where it was assigned to the district judge handling the *Nassau County* case. *See generally* A2764-93.

On May 17, 2024, Plaintiffs began moving to remand the SDNY Second Wave Cases. A2731-32. Suffolk County moved to remand as well. *See* A3337-38.

11

The PBMs opposed remand of the SDNY Second Wave Cases. *See generally* A1936-63.

### 3. The District Court Rulings

**a.** On June 18, 2024, the Southern District of New York (Seibel, J.) granted Plaintiffs' motion to remand the SDNY First Wave Cases. *See generally* SPA16-38. The district court determined that the purported disclaimers in Plaintiffs' amended complaints eliminated the basis for federal-officer jurisdiction. *See* SPA25-32. In finding the disclaimer effective, the district court relied on asbestos cases in which the plaintiffs' disclaimers of claims based on any exposures that occurred on federal property defeated mandatory federal jurisdiction. *See* SPA26-28 (first citing *Maguire v. A.C. & S., Inc.*, 2015 WL 4934445, at *1 (S.D.N.Y. Aug. 18, 2015), and then citing *Frawley v. Gen. Elec. Co.*, 2007 WL 656857, at *1–2 (S.D.N.Y. Mar. 1, 2007)).

The district court rejected the PBMs' argument that the disclaimers here are ineffective because Plaintiffs allege an aggregate, indivisible injury. In doing so, the district court relied on the remand order in *California v. Eli Lilly and Company (California I)*, 2023 WL 4269750 (C.D. Cal. June 28, 2023), which the Ninth Circuit later reversed in *California v. CaremarkPCS Health LLC (California II)*, 2024 WL 3770326 (9th Cir. Aug. 13, 2024). *See* SPA29-30. Having determined that the

disclaimers defeated mandatory federal jurisdiction, the district court also declined to exercise supplemental jurisdiction. *See* SPA32-35.

**b.**     On July 3, 2024, the Southern District of New York (Seibel, J.) granted the motion to remand the SDNY Second Wave Cases pursuant to a stipulation that preserved the PBMs' appellate rights. SPA39-40.

**c.**     On July 4, 2024, the Eastern District of New York (Merchant, J.) granted Nassau County's motion to remand on the grounds that Nassau County's purported disclaimer defeated the causal connection between the PBMs' work for federal clients and Nassau County's claims. SPA1-15. The district court relied on the Southern District of New York's opinion remanding the SDNY First Wave Cases and on the Central District of California's subsequently reversed opinion in *California I*. SPA9 & n.6.

**d.**     On July 27, 2024, the Eastern District of New York (Merchant, J.) granted Suffolk County's motion to remand pursuant to a stipulation that preserved the PBMs' appellate rights. SPA43.

### 4.     Appellate Proceedings

The PBMs timely filed a notice of appeal in the lead *Westchester County* case, as well as timely notices of appeal in each of the other SDNY First Wave Cases, the SDNY Second Wave Cases, *Nassau County*, and *Suffolk County*—all of which were consolidated by this Court for this appeal. *See generally* A3342-3487.

## SUMMARY OF ARGUMENT

The district courts erred in remanding these cases, all of which present the same substantive issues for this Court's review.

**I.**     The PBMs satisfy all the required elements for federal officer removal jurisdiction. They are persons within the meaning of the statute who acted under federal officers from DoD, OPM, and VHA. Plaintiffs' claims for relief are causally connected to the services that the PBMs provided under federal officers, as the Fourth Circuit and the district court overseeing the opioid MDL have correctly concluded. And the PBMs have colorable federal defenses, including government contractor, TRICARE preemption, and FEHBA preemption defenses.

**II.**     The district courts erred in concluding that Plaintiffs eliminated these grounds for federal jurisdiction by purportedly disclaiming the PBMs' federal work, thereby allegedly severing the causal connection between Plaintiffs' claims and the federal work. The asserted disclaimers fail to sever that connection for multiple reasons. First, Plaintiffs challenge indivisible conduct that the PBMs perform on an undifferentiated basis for federal and non-federal clients alike. Second, Plaintiffs plead a public nuisance cause of action that requires as a legal element an indivisible injury to the entire community, and they seek a remedy that is likewise indivisible. Third, the disclaimers would improperly deprive the PBMs of a federal forum in which to prove the extent to which their conduct occurred under federal direction.

14

Thus, even assuming that disclaimers could be effective in other contexts such as the asbestos cases cited by the district courts, Plaintiffs' attempted disclaimers in these cases are not. Indeed, the primary non-asbestos case on which the district courts relied—a decision involving PBMs—was recently reversed by the Ninth Circuit.

**III.** In the alternative, the PBMs satisfy the requirements of the federal officer removal statute even if the purported disclaimers sever the causal connection between Plaintiffs' claims and the PBMs' work under federal officers, because the claims still "relat[e] to" that work. 28 U.S.C. § 1442(a)(1). The disclaimers purport to carve out one portion of the PBMs' services to federal and non-federal clients; as a matter of ordinary language and common sense, the remaining claims are at least *related to* the conduct from which they were allegedly carved out. Congress amended the federal officer removal statute in 2011 to permit removal of suits "relating to" a defendant's work under federal officers. *Id.* Although this Court has not yet applied that statutory language, there is no sound basis to conclude that the statute has precisely the same scope after the 2011 amendment as it did before that amendment. As every other federal court of appeals that has addressed the issue has agreed, broadening the statute's language broadened the statute's scope. If this Court declines to reverse the decisions below based on the causal-nexus prong of the federal officer removal statute, it should nonetheless reverse on the alternative "relating to" prong. *Id.*

15

## STANDARD OF REVIEW

This Court "review[s] *de novo* [a] district court's determination that it lacked subject matter jurisdiction and its decision to remand." *Teamsters Loc. 404 Health Servs. & Ins. Plan v. King Pharms., Inc.*, 906 F.3d 260, 264 (2d Cir. 2018).

## ARGUMENT

### I. THE PBMs SATISFY ALL THE ELEMENTS OF THE FEDERAL OFFICER REMOVAL STATUTE

The federal officer removal statute permits "any person acting under" a federal officer to remove a case containing claims "for or relating to any act under color of [federal] office." 28 U.S.C. § 1442(a)(1). This Court has construed the statute to require a removing defendant to satisfy three elements: (1) "that it is a 'person' within the meaning of the statute," (2) "that it was 'acting under' a federal officer, which subsumes the existence of a 'causal connection' between the charged conduct and asserted official authority," and (3) that it has "a colorable federal defense." *MTBE*, 488 F.3d at 124 (citation omitted). Defendants satisfy all of those elements here, particularly given the instruction from the Supreme Court and this Court that the statute "must be 'liberally construed,'" *Watson,* 551 U.S. at 147 (citation omitted), because it "vindicates" the federal government's interest in "preserving its own existence." *Bradford v. Harding*, 284 F.2d 307, 310 (2d Cir. 1960) (Friendly, J.); *see, e.g.*, *Badilla*, 8 F.4th at 120-121; *Agyin*, 986 F.3d at 175; *Crane*, 771 F.3d at 115; *Isaacson*, 517 F.3d at 137.

16

## A. The PBMs Are "Persons" Under The Statute

It is well established that "corporate persons qualify as 'persons' under § 1442." *Isaacson*, 517 F.3d at 135; *see also* 1 U.S.C. § 1 ("unless the context indicates otherwise, . . . the word[] 'person' . . . include[s] corporations . . ."). Both Express Scripts and OptumRx are corporations. *See* A1120, A1302. It is undisputed that they are "persons" for purposes of the federal-officer-removal statute and accordingly satisfy the first element of the statute.

## B. The PBMs "Acted Under" Federal Officers Within The Meaning Of The Statute

The PBMs also satisfy the second element of the federal officer removal statute as construed by this Court because this suit is "for" their conduct "acting under" a federal officer. *Isaacson*, 517 F.3d at 135. This Court has explained that the "acting under" element has two components: (i) the removing defendant "act[ed] under a federal officer" and (ii) there is a "causal connection" between that action under a federal officer and the plaintiff's claims. *MTBE*, 488 F.3d at 124 (citation omitted). Both of those components are present here.

### 1. The PBMs Acted Under Federal Officers In Providing Pharmacy Benefit Management Services To Federal Agencies

The "'triggering relationship between a private entity and a federal officer'" that satisfies the federal-officer-removal statute "involves 'an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior.'" *Agyin*, 986 F.3d at 175

17

(quoting *Watson*, 551 U.S. 149, 152) (emphases in original). "The Supreme Court has said, for example, that a private company acting pursuant to a contract with the federal government has this relationship." *Id.* "Courts generally apply a broad construction [of §1442]—particularly with respect to private parties who claim to be 'acting under' a federal officer." *Id.* "Not only must the words of § 1442 be construed broadly but a court also must 'credit the defendants' theory of the case' when evaluating the relationship between the defendants' actions and the federal officer." *Id.* (quoting *Isaacson*, 517 F.3d at 137) (internal alterations omitted).

In *Agyin*, for example, this Court held that a defendant providing health services to indigent patients under the terms of a federal statute "neatly" fit the acting-under requirement for federal-officer removal because "[h]e assisted and helped to carry out the duties of the federal government to provide medical care to the indigent"—tasks "the federal government would have had to perform itself" in the absence of the statute. *Id.* at 176; *see also Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1247 (9th Cir. 2017) (corporate carrier of FEHBA health plan acted under OPM); *Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1233–34 (8th Cir. 2012) (similar); *Anesthesiology Assocs. of Tallahassee v. Blue Cross Blue Shield of Fla.*, 2005 WL 6717869, at *2 (11th Cir. Mar. 18, 2005) (similar); *see also Caris MPI, Inc. v. UnitedHealthcare, Inc.*, 108 F.4th 340, 347-48 (5th Cir. 2024) (Medicare Advantage organization acted under federal officer for purposes of suit

18

by health care provider challenging organization's recoupment of alleged overpayments).

Here, the PBMs acted under federal officers by assisting and performing services at the direction of three programs that fulfill governmental duties, providing healthcare for military servicemembers (TRICARE), federal employees (FEHBA), and veterans (VHA).

**a.** Congress established TRICARE to "create and maintain high morale in the uniformed services by providing an improved and uniform program of medical and dental care for members and certain former members of those services, and for their dependents." 10 U.S.C. § 1071. The TRICARE statute requires DoD to establish a pharmacy benefits program, including "a uniform formulary" that encompasses "the complete range of therapeutic classes." *Id.* § 1074g(a)(1)-(2).

Express Scripts performs numerous services to assist DoD in carrying out its statutory duty to operate TRICARE. *See* A1914-17. Specifically, Express Scripts administers the TRICARE uniform formulary to help DoD fulfill its duty to deliver healthcare to servicemembers. *See generally* A2557-2730. Express Scripts provides those services for TRICARE members across the country, including in New York. A862, A1914-15.

Moreover, Express Scripts performs those tasks under the subjection, guidance, and control of DoD, which further underscores that it is acting under a

19

federal officer. The TRICARE Contract includes a lengthy Statement of Work that dictates nearly every aspect of Express Scripts' responsibilities in supporting TRICARE. A861-62, A1913-14, A2627-77. The SOW also prevents Express Scripts from restricting a beneficiary's prescription benefits. A2654-55.

Further illustrating DoD's direction and control, the TRICARE Contract also requires Express Scripts to establish and maintain a nationwide retail pharmacy network. A863, A1915. Express Scripts negotiates and contracts with retail pharmacies to offer DoD a robust nationwide pharmacy network. *Id.* DoD policies and procedures require Express Scripts to incorporate specific terms into its pharmacy contracts, including credentialing standards, audit rights, and quality of service requirements. A864, A1916. Express Scripts also "brief[s] DoD representatives weekly and ha[s] a formal program review three times a year," in addition to "daily interaction between [Express Scripts] and DoD representatives regarding contract administration and execution." A864, A1916-17.

Given that clear federal direction, both the Fourth Circuit and the federal opioid MDL court have held that Express Scripts acts under DoD in providing services to TRICARE in opioids cases substantially similar to these. *See Arlington County*, 996 F.3d at 248; *Frederick County*, 2023 WL 166006, at *2, 4-5. First, the Fourth Circuit held in *Arlington County* that Express Scripts' mail-order pharmacy affiliates act under DoD in providing services to TRICARE. 996 F.3d at 248. That

20

case was on all fours with this one: it involved the same family of defendants, the same claim (opioid-related public nuisance), and the same issue (federal officer removal). *Id.* at 247. The Fourth Circuit explained that, by operating TRICARE's mail-order pharmacy, the Express Scripts defendants in that case were "carrying out the duties of [DoD]" subject "to the federal government's guidance and control," thus "satisfy[ing § 1442(a)(1)'s] 'acting under' requirement." *Id.* at 253. "In fact, the [Express Scripts] Defendants were essentially acting as the statutorily authorized *alter ego* of the federal government, as the TRICARE statute requires the Secretary of Defense to contract out the administration of the TMOP [TRICARE mail order pharmacy] program." *Id.* at 253–54 (citing 10 U.S.C. § 1073a).

Second, the federal district court overseeing the MDL involving thousands of opioids cases likewise concluded that Express Scripts acted under DoD for federal officer removal purposes. *Frederick County*, 2023 WL 166006, at \*2, \*4-5. It explicitly found that Express Scripts' pharmacy benefit management services, including administering the DoD uniform formulary, satisfied the "acting under" element. *Id.*; *see also Grider Drug, LLC v. Express Scripts, Inc.*, 2009 U.S. Dist. LEXIS 107515, at \*5-8 (W.D. Ky. Nov. 17, 2009) (finding that Express Scripts satisfied the "acting under" element in "executing its duties under" the TRICARE statement of work outside the opioid context), *aff'd*, 500 F. App'x 402, 403 (6th Cir. 2012) ("The action was properly removed to federal court by Express Scripts.").

21

**b.** Express Scripts further acted under federal officers by assisting OPM in carrying out pharmacy benefit manager services for federal employees under the Federal Employees Health Benefits Act of 1959 (**FEHBA**), 5 U.S.C. § 8901 *et seq.* FEHBA "establishes a comprehensive program of health insurance for federal employees." *Coventry Health Care of Missouri, Inc. v. Nevils*, 581 U.S. 87, 91 (2017). OPM requires that carriers "provide pharmacy access to serve the needs of the entire enrolled population,"[3] which in turn necessitates the use of pharmacy benefit manager services. Many FEHBA carriers turn to Express Scripts to carry out OPM's requirements, including in New York. A865, A1917. In that capacity, Express Scripts is subject to OPM's requirements, oversight, and control. A865, A1917.

OPM also subjects Express Scripts to its requirements, oversight, and control in administering pharmacy benefits of FEHBA plans, including specific regulations OPM established to govern PBM providers, *see* 48 C.F.R. §§ 1602.170-16(a), 1604.7201(a)-7202, 1646.201, 1652.204-74(a), 1652.204-70, 1652.204.74, 1652.246-70, and specific guidelines OPM issued to govern pharmacy benefits, including guidelines on formulary management, utilization management, and

---

[3] *Consolidated Pharmacy Benefits Guidance for the FEHBP Program*, at 11 (February 12, 2024), https://tinyurl.com/3axs3mnj [hereinafter OPM Carrier Letter 2024-05].

prescription opioids, among other topics.[4] The formularies used by a PBM are also subject to OPM reporting requirements.[5]

Given OPM's extensive control over PBMs in their provision of services to federal employees, other courts have held that PBMs and other similar providers of services to FEHBA plans act under a federal officer. *See, e.g.*, *Hawai'i v. CaremarkPCS Health, L.L.C.*, 2024 WL 1907396, *6-9 (D. Haw. May 1, 2024) (finding that PBM "acted under" a federal officer in servicing FEHBA plans); *see also Ray v. Tabriz*, 110 F.4th 949, 956-57 (7th Cir. 2024) (holding that FEHBA carrier "act[ed] under" OPM); *St. Charles Surgical Hosp., LLC v. La. Health Serv. & Indem. Co.*, 935 F.3d 352, 354-56 (5th Cir. 2019) (collecting similar cases).

**c.** For similar reasons, OptumRx "act[ed] under" federal officers by helping the VHA administer healthcare benefits for veterans, including throughout the State of New York. The U.S. Department of Veterans Affairs "provides health care to nine million enrolled veterans through its [VHA], the largest health care system in the country." *Wolfe v. McDonough*, 28 F.4th 1348, 1351 (Fed. Cir. 2022).

---

[4] *See, e.g.*, FEHBP Program Carrier Letter 2019-10 (September 6, 2019), https://tinyurl.com/45e3b74r.

[5] *See Federal Employees Health Benefits Program Standard Contract for Experience-Rated Health Maintenance Organization Carriers* (2019) at I-17, § 1.28(a)(5), https://tinyurl.com/376n9nb5.

OptumRx has acted as a third-party administrator providing pharmacy benefit management services to the VHA since 2009. *See* A1121.

OptumRx and the VHA have a close relationship: the VHA "dictates nearly every aspect of its relationship with OptumRx" through "detailed regulation, monitoring, and supervision." *Id.* For example, the VHA constructs its own formulary and prior-authorization criteria and "maintains complete control of claim adjudication and pricing logic." *Id.* OptumRx neither decides what prescription drugs are covered on the VHA's formulary nor makes recommendations regarding formulary design. *Id.* In addition to daily communication and oversight, the VHA also appoints a "Contracting Officer Technical Representative," who is charged with monitoring OptumRx's compliance with the contract. A1121-22.

As it relates to the VHA plan, OptumRx administers every aspect of the VHA's pharmacy benefit management services at the federal government's behest. A1123. Like Express Scripts and the defendants in *Agyin*, *Goncalves*, and *Jacks*, OptumRx therefore helps fulfill basic government tasks. *See Agyin*, 986 F.3d at 176; *Goncalves*, 865 F.3d at 1247; *Jacks*, 701 F.3d at 1233–34.

### 2. The PBMs' Actions Under Federal Officers Are Causally Connected To Plaintiffs' Claims

The PBMs' actions under federal officers are causally connected to Plaintiffs' claims and therefore satisfy that requirement of the federal officer removal statute. As this Court has explained, the "hurdle erected by [the causation] requirement is

24

quite low." *Isaacson*, 517 F.3d at 137. "[T]he statute does not require that the [suit] must be for the very acts . . . done by [a removing defendant] under federal authority." *Id.* (citation omitted). Rather, removing defendants "must only establish that the act that is the subject of Plaintiffs' attack . . . occurred *while* [those defendants] were performing their official duties." *Id.* at 137-38 (citation omitted); *see Badilla*, 8 F.4th at 120 ("The causal connection implied by the 'under color of . . . office' requirement is satisfied if the challenged act 'occurred *while* [d]efendants were performing their official duties.'") (emphasis in original) (citation omitted).

Here, Plaintiffs allege that all residents within their jurisdictions were injured by excessive prescriptions of opioids attributable to the formularies and utilization management of the PBMs, as well as the dispensing practices of their affiliated mail-order pharmacies. *See, e.g.*, A1556-57, A1631, A2360, A2526-27. That population includes tens of thousands of TRICARE, FEHBA, and VHA plan members. A862, A1914-15. As explained above, the PBMs administer benefits for each of those federal programs under the direction of federal agencies and officers. *See* § I.B.1, *supra*. Plaintiffs' allegations are thus "for" the PBMs' conduct under federal officers within the plain meaning of the statute and this Court's precedents. 28 U.S.C. § 1442(a)(1)); *see Badilla*, 8 F.4th at 120-21; *Agyin*, 986 F.3d at 176-77; *Isaacson*, 517 F.3d at 137-38.

25

Indeed, the two courts that have closely analyzed similar claims against the PBMs have agreed that the connection required by the federal officer removal statute is present. *See Arlington County*, 996 F.3d at 256-57 ("Arlington faults the [Express Scripts] Defendants for filling certain opioid prescriptions and causing a public nuisance, but the [Express Scripts] Defendants were required to fill those prescriptions to comply with their duties under the DOD contract . . . . That is sufficient to satisfy the federal officer removal statute."); *Frederick County*, 2023 WL 166006, at *5-6 ("Plaintiffs' own theory of the case depends on the allegations that a significant number of the prescriptions dispensed by the Express Scripts Defendants were in fact for opioids and were filled in Plaintiffs' jurisdictions. Therefore, the Court finds that the Express Scripts Defendants have demonstrated a causal nexus between actions performed pursuant to the DoD contract and Plaintiffs' lawsuits.").

### C. The PBMs Have Asserted Colorable Federal Defenses

The final element of the federal officer removal statute—that the defendant assert a colorable federal defense—is also readily satisfied. *See Crane*, 771 F.3d at 116-17. As this Court has explained, the colorable-federal-defense element does not require a fact-intensive inquiry or even a "clearly sustainable" position but rather only a "a claim that is 'defensive' and 'based in federal law'" and "'arises out of the party's official duties.'" *Isaacson*, 517 F.3d at 138-39 (first quoting *Mesa v.*

26

*California*, 489 U.S. 121, 129-30 (1989), and then quoting *Arizona v. Manypenny*, 451 U.S. 232, 241 (1981)); *see also Jefferson County v. Acker*, 527 U.S. 423, 431 (1999) ("We . . . do not require the officer virtually to win his case before he can have it removed.") (internal quotation marks omitted). To the contrary, "where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [its] version of the facts to a federal, not a state, court.'" *Crane*, 771 F.3d at 116 (citation omitted).

The PBMs here have asserted at least three colorable federal defenses. First, they have a colorable government contractor defense because they aided the federal government in performing basic government tasks: the administration of pharmacy benefit manager services pursuant to highly precise directives and specifications set forth in the TRICARE Contract with the DoD, in contracts with VHA, and in contracts with FEHBA plans under OPM's supervision. *See* A1995-96. Those factual assertions are sufficient to state a colorable government contractor defense in opioid cases. *See Arlington County*, 996 F.3d at 255; *Frederick County*, 2023 WL 166006, at *8.

Second, Express Scripts has a colorable TRICARE preemption defense because TRICARE preempts claims like Plaintiffs' that relate to healthcare benefits for TRICARE members. *See* A1997-98; 10 U.S.C. § 1103(a)(2); 32 C.F.R. § 199.21(o). Multiple courts have held that Express Scripts had a colorable

TRICARE preemption defense against materially identical opioid claims. *See Arlington County*, 996 F.3d at 256 (Express Scripts had a "valid preemption defense" under the TRICARE statute against similar opioid claims); *Frederick County*, 2023 WL 166006, at *8 ("[T]he Express Scripts Defendants have a colorable argument that the DoD contract preempts the Plaintiffs' state law claims."); *see also Grider*, 2009 U.S. Dist. LEXIS 107515, at *10 (finding "colorable" the defense that 32 C.F.R. § 199.21(o) preempts non-opioid claims against Express Scripts).

Third, Express Scripts has a colorable FEHBA preemption defense. *See* A1997-98. FEHBA expressly preempts state laws relating to coverage or benefits afforded by FEHBA plans. 5 U.S.C. § 8902(m)(1). Plaintiffs claim that Express Scripts should have altered the coverage or benefits provided by FEHBA plans for prescription opioids. That gives rise to a colorable FEHBA preemption defense. *See Hawai'i*, 2024 WL 1907396, at *13 (finding PBM's FEHBA preemption defense satisfied the "colorable defense" element); *see also St. Charles*, 935 F.3d at 357.

## II. PLAINTIFFS' PURPORTED DISCLAIMERS DO NOT UNDERMINE THE BASIS FOR THE PBMs' FEDERAL OFFICER REMOVAL

The district courts remanded based on their conclusions that Plaintiffs' purported disclaimers—35 of them added only *after* the PBMs removed— eliminated the basis for federal-officer jurisdiction. But those disclaimers fail to accomplish that objective for multiple reasons. The PBMs' conduct that Plaintiffs challenge is not factually divisible by federal versus non-federal health plans in the

artificial manner they suggest. Nor are Plaintiffs' asserted claims legally divisible. And in any event, the division that Plaintiffs propose would require adjudication of federal defenses in state court, which is impermissible under the federal officer removal statute. The district courts' legal bases for remand are accordingly erroneous, and all the cases should remain in federal court.[6]

### A.    Plaintiffs' Disclaimers Are Factually And Legally Ineffective

### 1.    Plaintiffs Challenge Indivisible Federally Directed Conduct

First, Plaintiffs' purported disclaimers fail because Plaintiffs challenge conduct that the PBMs perform on an undifferentiated basis for federal and non-federal clients alike. It is therefore not possible to divide the PBMs' conduct in the way that Plaintiffs' disclaimers suggest.

The Ninth Circuit's recent ruling in *California II* is instructive. In that case, Express Scripts, Inc. (and another PBM, Caremark), removed a suit on federal-officer grounds because the plaintiff's claims challenged the PBMs' provision of pharmacy benefit manager services like those at issue in this case—*e.g.*, formulary design and negotiations of rebates with prescription drug manufacturers—provided

---

[6]    The First Wave Cases were properly removed before the disclaimers were added, and the post-removal disclaimers do not defeat federal jurisdiction. *See* SPA20-22 (noting plaintiffs added disclaimers to amended complaints after removal); SPA7-9 (same); *see also* A1327-30 (disclaimer in post-removal amended complaint). In the Second Wave Cases, the disclaimers were added before removal, but they do not provide a basis for remand. *See* A2304-09 (disclaimer in original complaint removed to federal court).

to TRICARE and to health plans operating under FEHBA. 2024 WL 3770326, at *1. As in this case, the district court remanded, crediting a purported disclaimer of recovery in connection with TRICARE and FEHBA. *Id.* The Ninth Circuit reversed and held that the disclaimer was insufficient to "defeat removal." *Id.* The Ninth Circuit explained that the claims "remain[ed] 'causally connected'" to the PBMs' federal work despite the disclaimer because the State's complaint challenged conduct that the PBMs performed for federal and non-federal clients alike. *Id.* (quoting *Goncalves*, 865 F.3d at 1244). Because the district court had remanded to state court based solely on its determination that the disclaimer defeated the causal-connection requirement for federal officer removal, the Ninth Circuit remanded to federal district court for consideration of the remaining arguments for remand to state court. *Id.* Judge Ikuta wrote a concurrence in the judgment explaining that "no disclaimer, however worded, can help California avoid a causal nexus between Caremark's conduct on behalf of the federal government and California's claims" and that "[t]he same analysis applies to Express Scripts" as well. *Id.* at *2 & n.1.

The same analysis applies here. The PBMs' rebate negotiations with prescription opioid manufacturers, which are central to Plaintiffs' allegations, necessarily implicate Express Scripts' work for FEHBA plans and OptumRx's work for the VHA. *See, e.g.*, A1819 ("PBM Defendants received rebates and other financial incentives to promote the Manufacturer Defendants' drugs to ensure they

30

were widely sold."). FEHBA plans expect and desire their PBMs to negotiate with manufacturers to obtain discounts, often in the form of rebates, to the cost of prescription drugs. A1917, A865; *see also Hawai'i*, 2024 WL 1907396, at *4 ("[T]he contracts that the PBMs have with FEHBA carriers usually require that rebates be passed on to the carrier."). The PBMs negotiate such rebates across their entire book of business for both federal and non-federal health plans alike. A1917, A865; *cf. Hawai'i*, 2024 WL 1907396, at *4 (noting a PBM's argument that it "negotiates rebates with drug manufacturers on behalf of FEHBA carrier clients as well as other clients, and no rebate is exclusive to FEHBA plans").

Because Express Scripts does not have separate rebate agreements with opioid manufacturers for FEHBA and non-FEHBA plans but rather negotiates rebate contracts that govern both types of plans, Plaintiffs "necessarily challenge conduct that [Express Scripts] engages in while acting under a federal officer." *Hawai'i*, 2024 WL 1907396, at *4; *see also id.* at *9 (accepting a PBM's argument that it acted under a federal officer in connection with its "formulary and rebate practices" based on its work for FEHBA plans); A1917, A865. The same logic applies to Plaintiffs' challenge to the work that OptumRx performs while acting under the VHA. *See Badilla*, 8 F.3th at 120 (quoting *Isaacson*, 517 F.3d at 137-38 ("The causal connection implied by the 'under color of office' requirement is satisfied if the

challenged act 'occurred *while* defendants were performing their official duties.'") (emphasis in original) (cleaned up)).

### 2. Plaintiffs' Public Nuisance Claims Are Legally Indivisible

Second, Plaintiffs' disclaimer is ineffective because it contradicts the elements of their public nuisance claim. *See, e.g.*, *St. Charles*, 990 F.3d at 451 (explaining that courts reject disclaimers that are "artful pleading designed to circumvent federal officer jurisdiction"); *Siders v. 20th Cent. Glove Corp. of Tex.*, 2016 WL 1733473, at *4 (S.D. W. Va. Apr. 29, 2016) (collecting similar cases).

The crux of Plaintiffs' claims is that the PBMs allegedly "caused, created, contributed to, and/or maintained a public nuisance which interfered with public rights." A2526-27; *see also* A1632 ("PBM Defendants have created and maintained a public nuisance"). Plaintiffs allege that the public nuisance "has injuriously affected rights common to the general public, specifically including the rights of the public in Plaintiff[s' c]ommunit[ies] to public health, safety, peace, comfort, and convenience." A2529; *see also* A1632 (alleging that the PBMs' conduct "has had and is continuing to have a significant effect upon rights common to the general public"). In fact, Plaintiffs expressly allege, as required for a claim of public nuisance, that the injury that resulted from the PBMs' conduct causing a public nuisance is "indivisible." A1643, A2542.

Plaintiffs understandably focus on the alleged interference with "the exercise of rights common to all" because that is what New York law requires for a public nuisance claim. *See Benoit v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d 491, 504 (2d Cir. 2020); *Copart Indus., Inc. v. Consol. Edison Co. of N.Y., Inc.*, 362 N.E.2d 968, 971 (N.Y. 1977). As Chief Judge Cardozo explained, public nuisance is committed "in such place and in such manner that the aggregation of private injuries becomes so great and extensive as to constitute a public annoyance and inconvenience, and a wrong against the community." *People v. Rubenfeld*, 172 N.E. 485, 486 (N.Y. 1930) (Cardozo, C.J.). Because private nuisances threaten only "one person or relatively few," the alleged injury to the collective community distinguishes public nuisance from private nuisance. *Copart Indus.*, 362 N.E.2d at 971; *see also Drake v. Vill. of Lima*, 200 N.Y.S.3d 600, 602-604 (App. Div. 4th Dep't 2023) ("In contrast to private nuisance, which involves interference with a particular person's right to enjoy his or her property, public nuisance requires interference with a public right common to all.").[7]

The community-wide nature of Plaintiffs' alleged public nuisance claims cannot be reconciled with Plaintiffs' purported disclaimer of certain aspects of those

---

[7] The PBMs of course dispute that Plaintiffs have any claim for public nuisance, including Plaintiffs' claim that the PBMs have interfered with a public right. But Plaintiffs have chosen to pursue claims that involve alleged injuries to the public.

same claims. As a matter of law and common sense, a claim that requires that *all members* of the public be affected cannot be narrowed by *excluding some members* of the public. That would be like trying to sell a whole pie while also carving out a piece—a contradiction in logic and terms.

That contradiction is made plain in Plaintiffs' description of the alleged "significant interference with public rights." A1632-33, A2530. The alleged interference includes the "creation and fostering of an illegal, secondary market for prescription opioids" and "[e]asy access to prescription opioids by children and teenagers." A1632-33, A2530. But there is no legally defensible way to sever the portion of the alleged "illegal, secondary market for prescription opioids" and easy access to opioids that was allegedly caused by the PBMs' services for TRICARE, FEHBA carriers, and VHA, from the portion that was allegedly caused by services to non-federal clients. In New York, the PBMs processed hundreds of thousands of claims for prescription opioids at the behest of the federal government—for TRICARE alone, Express Scripts processed over 220,000 claims for over 48,000 TRICARE members across New York. A1914-15, A862. Plaintiffs do not even try to allege that opioids dispensed through TRICARE, FEHBA plans, and the VHA system were any less likely to be "diver[ted] into an illegal, secondary market" or

accessed by children and teenagers, A2530, A2532-33, than those dispensed through non-federal plans.[8]

Plaintiffs' damages allegations suffer from the same problem. Plaintiffs seek to recover from the PBMs for harms caused by the entire opioid crisis, including "increased costs of police, emergency, health, prosecution, corrections, rehabilitation, and other services." A2540; *accord* A1492. But for Plaintiffs' disclaimer to have any effect, Plaintiffs would need to identify those alleged damages relating to healthcare services, law enforcement, the criminal justice system, and social services traceable *exclusively* to the PBMs' work for non-federal health plans and identify and carve out from their alleged recovery any similar damages allegedly caused by the hundreds of thousands of prescription opioid claims they processed for federal health plans. That is not plausible. Plaintiffs do not suggest that police officers or social service workers, for example, separately track the services they provide to recipients based on the kind of health insurance the recipients have. Plaintiffs' disclaimers simply cannot be squared with their own theory of the case.

Courts consistently refuse to credit such disclaimers that contradict the complaint's legal theory and request for relief. *See, e.g.*, *Hawai'i*, 2024 WL

---

[8]  To be clear: the PBMs dispute that their conduct caused any diversion of opioids. They are merely describing the contradiction between the disclaimers and Plaintiffs' allegations.

1907396, at *12 (rejecting disclaimer where PBM negotiated rebates for both federal and non-federal plans); *Despres v. Ampco-Pittsburgh Co.*, 577 F. Supp. 2d 604, 608 (D. Conn. 2008) (rejecting plaintiffs' disclaimer because their claims still reached federally connected work notwithstanding waiver of all "federal claims"); *Dougherty v. A O Smith Corp.*, 2014 WL 3542243, at *4 (D. Del. July 16, 2014) (rejecting disclaimer that was contradicted by plaintiff's attempt to nevertheless impose liability for work done for the Navy because a plaintiff "cannot have it both ways"); *Oberstar v. CBS Corp.*, 2008 WL 11338471, at *3 (C.D. Cal. Feb. 11, 2008) (rejecting disclaimer where plaintiff continued to pursue relief based on defendant's federal duties).

By making these sweeping arguments and allegations, Plaintiffs necessarily included *all community residents* within the scope of their legal claims, including TRICARE members, VHA members, and other federal health plan members in New York, as well as the thousands of prescription opioids received by New York residents who are members of TRICARE and other federal plans. A1914-15, A862; *see also Arlington County*, 996 F.3d at 257 ("Arlington faults the [Express Scripts] Defendants for filling certain opioid prescriptions and causing a public nuisance, but the Express Scripts Defendants were required to fill those prescriptions to comply with their duties under the DOD contract."); *Frederick County*, 2023 WL 166006, at *6 ("There can be no real doubt that many of those prescription claims have been

36

for opioids prescribed in the Plaintiff jurisdictions and covered under the DoD formulary.").

Partly for those reasons, the Fourth Circuit in *Arlington County* and Judge Polster in *Frederick County* rejected arguments that the plaintiffs in those cases were not challenging the PBMs' federal work because the complaints did not mention Express Scripts' federal clients by name. To allow Plaintiffs to artificially subdivide their claims—whether expressly or by implication—would "elevate form over substance." *Arlington County*, 996 F.3d at 256; *see Frederick County*, 2023 WL 166006, at *5 ("Federal jurisdiction cannot be avoided merely by careful or creative word-smithing."). Under the federal officer removal statute, "the dispositive question is whether the government directed a defendant to perform the acts for which it is being sued, not whether the complaint mentions the government contract"—or purports to disclaim it. *Frederick County*, 2023 WL 166006, at *5.

### 3. Plaintiffs' Disclaimers Would Force The PBMs To Prove Federal Direction In State Court

The purported disclaimers are also ineffective for the independent reason that they would force the PBMs to prove federal direction in state court. Courts have explained that disclaimers that force defendants to prove the extent of federal direction are unenforceable. In *Crane*, the plaintiff brought tort claims based on asbestos exposure but argued that the defendant construction company's federal-contractor defense was not meritorious and could not support federal-officer

37

removal. 771 F.3d at 114, 116. This Court disagreed, noting "[p]recisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present his version of the facts to a federal, not a state, court.'" *Id.* at 116 (quoting *Willingham*, 395 U.S. at 409).

Likewise, in *Baker*, the plaintiffs alleged that the defendants polluted soil but tried to disclaim any request for damages connected to the defendants' manufacturing chemicals for the government. 962 F.3d at 939-40, 945 n.3. The Seventh Circuit held that the question as to what extent the alleged harm "flowed from the [defendants'] specific wartime production for the federal government or from their more general manufacturing operations outside those confines" was a "*merits question*[] that a federal court should decide." *Id.* at 944 (emphasis in original); *see also Marley v. Elliot Turbomach. Co., Inc.*, 545 F. Supp. 2d 1266, 1275 (S.D. Fla. 2008) (rejecting "circular disclaimer" that "would defeat the purpose of § 1442(a)(1) as it would force federal contractors to prove in state court that they were acting under the direction of the government"); *Reaser v. Allis Chambers*, 2008 WL 8911521, at *6 (C.D. Cal. June 23, 2008) (similar); *Corley v. Long-Lewis*, 688 F. Supp. 2d 1315, 1335-36 (N.D. Ala. 2010) (similar).

That is precisely the problem with Plaintiffs' disclaimers here. If given effect, the disclaimers will force the PBMs to rely on the state court to determine merits questions, such as the extent to which the alleged public nuisance arose from the

PBMs' action under federal officers (*e.g.*, administering the TRICARE uniform formulary) as opposed to the PBMs' non-federal work. For example, when Plaintiffs allege that the PBMs "sold at retail substantial quantities of prescription opioids" without taking meaningful action to stop diversion, A1518-19, the PBMs will have to prove what proportion of those prescription opioids were sold to "military personnel, veterans, federal customers or health plan beneficiaries under the authority or direction of a federal officer, federal agency, or pursuant to any federal contract," among the many other situations that Plaintiffs disclaim, A1329. As in *Baker*, the federal court should be the one to determine the scope of the PBMs' federal activities in a case they removed under the federal officer removal statute. 962 F.3d at 944; *see also Willingham*, 395 U.S. at 409 (holding that if "the question raised is whether [the defendants] were engaged in some kind of 'frolic of their own,'" as opposed to acting for the government, "then they should have the opportunity to present their version of the facts to a federal, not a state, court").

Indeed, these cases are stronger candidates for removal than *Baker* because unlike the straightforward disclaimer there, the disclaimers here are complex and would require the state court to enforce them across a range of factual circumstances. A1328-29, A2304-09. Just one of the several paragraphs of disclaimers in the SDNY Second Wave complaints covers so many different situations that it takes up 30 lines of text. A2305-07; *see also* A1328-29.

**B.      The Disclaimer Cases Invoked By The Courts Below Have Been Reversed Or Are Inapposite**

In granting Plaintiffs' remand motions, the district courts relied almost entirely on other district court cases holding that plaintiffs' disclaimers eliminated mandatory federal subject matter jurisdiction under the federal officer removal statute. The case on which the district courts principally relied—and which is most analogous, as it involves PBMs including Express Scripts—was subsequently reversed by the Ninth Circuit. *California II*, 2024 WL 3770326 (reversing and remanding *California I*, 2023 WL 4269750). The other case involving PBMs on which the district courts relied turns on the subsequently reversed opinion in *California I* and is itself on appeal. *See Gov't of Puerto Rico v. Eli Lilly & Co.*, 2023 WL 4830569, at *1-2 (D.P.R. July 13, 2023), *appeal pending sub nom. Gov't of Puerto Rico v. CaremarkPCS Health, LLC*, No. 23-1613 (1st Cir.), *argued* July 23, 2024. The various non-PBM cases on which the district courts relied are inapposite because they involved claims based on injuries that occurred at different locations or in connection with different health plans—the kind of separable injury that contrasts with the indivisible conduct and harm Plaintiffs allege, as they must, in these cases.

**1.**      In finding the purported disclaimer effective, the district courts relied on *California I*, 2023 WL 4269750, the remand order that the Ninth Circuit reversed in *California II*, 2024 WL 3770326. SPA30, SPA9 n.6. The Ninth Circuit's reversal

of *California I* undermines the orders below and supports the PBMs' argument for removing these cases.

As explained above, *California I* involved a disclaimer closely related to the ones at issue here. But the Ninth Circuit found the disclaimer insufficient to "defeat removal" because the PBMs' federal conduct "remain[ed] 'causally connected to the dispute'" notwithstanding the disclaimer. *California II*, 2024 WL 3770326, at *1 (citation omitted). Now reversed, *California I* cannot carry any weight, let alone the substantial weight the courts below gave it.

**2.** The *Westchester* court also relied on *Puerto Rico*, *see* SPA30-31, but that case has little persuasive value. Like *California I* and *II*, *Puerto Rico* involved non-public nuisance claims brought against PBMs related to insulin pricing. *Puerto Rico*, 2023 WL 4830569, at *1. Relying on the now-reversed *California I* decision, the *Puerto Rico* court rejected the PBMs' argument that their federally directed work was indivisible from their work for private plans. *Id.* at *1-2.

*Puerto Rico* is fatally flawed because it relied on the now-repudiated logic of *California I*. *Puerto Rico*, 2023 WL 4830569, at *2. Its persuasive value is further limited by the fact that insulin-pricing lawsuits like *California I* and *Puerto Rico* lack public nuisance claims. As the PBMs have explained, a public nuisance claim

41

is insusceptible to artificial subdivision because it involves alleged violation of "rights common to all." *Copart Indus.*, 362 N.E.2d at 971.[9]

**3.** With one exception, the non-PBM cases cited below are all personal-injury lawsuits brought by individuals due to exposure to dangerous chemicals or substances, usually asbestos. *Chapman v. Crane Co.*, 694 F. App'x 825 (2d Cir. 2017); *Wilde v. Huntington Ingalls, Inc.*, 616 F. App'x 710, 712 (5th Cir. 2015); *Grady v. Monsanto Co.*, 2023 WL 4884468, at *1 (E.D. Mo. Aug. 1, 2023); *O'Shea v. Asbestos Corp.*, 2019 WL 12345572, at *1-2 (D.N.D. Dec. 13, 2019), *report and recommendation adopted*, 2020 WL 9848714 (D.N.D. Jan. 8, 2020); *Kelleher v. A.W. Chesterton Co.*, 2015 WL 7422756, at *1 (S.D. Ill. Nov. 23, 2015); *Maguire v. A.C. & S., Inc.*, 2015 WL 4934445, at *1 (S.D.N.Y. Aug. 18, 2015); *Dougherty*, 2014 WL 3542243, at *1, *report and recommendation adopted*, 2014 WL 4447293; *Frawley*, 2007 WL 656857, at *1. They stand for the uncontested proposition that in personal-injury cases, a plaintiff can "expressly carve out certain factual bases, whether by time span or location, such that any alleged injury" could not have happened under a federal officer's direction. *Hawaiʻi*, 2024 WL 1907396, at *11.

---

9   The *Westchester* remand order also cited in passing *Ohio ex rel. Yost v. Ascent Health Services, LLC*, 2024 WL 23187 (S.D. Ohio Jan. 2, 2024), another remand order in the insulin context. SPA30. That case rejected an indivisibility argument by quoting *Puerto Rico* without further analysis. *Yost*, 2024 WL 23187, at *3. Accordingly, the problems with *Puerto Rico* apply equally to *Yost*.

That proposition does not apply to Plaintiffs' purported disclaimers here, which are not temporal or geographic in scope and which attempt to divide a claim with indivisible elements challenging indivisible conduct.

The *Nassau* court also cited this Court's unpublished opinion in *Chapman*. SPA9. That is another asbestos case and is irrelevant for the same reasons. 694 F. App'x at 827. But it is also distinguishable for an additional reason: the issue in *Chapman* was not the scope of the disclaimer; it was whether "the claims giving rise to [federal-officer removal] must be formally dismissed for a properly removed case to be remanded to state court." *Id.* The *Chapman* defendant did not argue that the disclaimer was ineffective because the plaintiffs' claims were indivisible, so the case has nothing to say about the disclaimers at issue here. *Id.*

The one exception was *Healthcare Ventures Partners, LLC v. Anthem Blue Cross & Blue Shield*, 2021 WL 5194662 (S.D. Ohio Nov. 8, 2021). But that case only highlights the differences between a proper disclaimer and the improper ones here. The *Healthcare Ventures* plaintiff alleged that the defendant had not properly paid a specific set of healthcare claims. *Id.* at *1. After removal on federal-officer grounds, the plaintiff disclaimed seeking damages for all healthcare claims that arose under FEHBA plans. *Id.* at *1, *6. The court credited the disclaimer, concluding that it applied to "a discrete and readily identifiable category whose membership does not require the state court to consider the contours of the federal officer removal

statute." *Id.* at \*8. Disclaiming discrete healthcare claims is analogous to the location-based disclaimers credited in the asbestos cases. By contrast, Plaintiffs here are attempting to disclaim indivisible conduct and indivisible portions of their public-nuisance claim, and their disclaimer would still require the state court to determine the extent of federal direction when assessing their claims. Plaintiffs cannot simply excise opioids prescription claims adjudicated for federal healthcare plans from allegations about an alleged aggregate oversupply of opioids, so *Healthcare Ventures* is not relevant here.

While relying on those inapposite cases—none of which involved a public nuisance claim for an alleged oversupply of prescription opioids—the district courts disregarded the cases (cited by the PBMs) with the most closely analogous facts and reasoning. The Fourth Circuit in *Arlington County* and the MDL court in *Frederick County* both rejected arguments by the plaintiffs in those cases that they were not challenging the PBMs' federal work because the complaints did not mention Express Scripts' federal clients by name. *Arlington County*, 966 F.3d at 256-57; *Frederick County*, 2023 WL 166006, at \*5. Those courts recognized that allowing a plaintiff to implicitly subdivide its claim "would elevate form over substance." *Arlington County*, 996 F.3d at 256; *see Frederick County*, 2023 WL 166006, at \*5 ("Federal jurisdiction cannot be avoided merely by careful or creative word-smithing."). There

44

is no reason the result should differ because Plaintiffs here attempt that artificial subdivision explicitly rather than implicitly.

\* \* \*

In sum, Plaintiffs' disclaimers are illusory and should be disregarded. Plaintiffs continue to advance claims causally connected to the PBMs' action under federal officers, so federal officer removal was proper—as courts have found both in opioids cases, *Arlington County*, 996 F.3d at 256-57; *Frederick County*, 2023 WL 166006, at \*5-6, and in non-opioids cases challenging the same formulary design and rebate negotiation conduct at issue here, *Hawaiʻi*, 2024 WL 1907396, at \*11-12. Under this Court's precedent, removal was proper and the decisions below should be reversed.

## III. EVEN IF THE DISCLAIMERS WERE VALID, REMOVAL IS PROPER BECAUSE PLAINTIFFS' CLAIMS RELATE TO THE PBMs' ACTIONS UNDER FEDERAL OFFICERS

In the alternative, the PBMs satisfy the requirements for federal officer removal jurisdiction even if Plaintiffs' disclaimers were valid because Plaintiffs' claims still "relat[e] to" the PBMs' work for the TRICARE, FEHBA, and VHA programs. 28 U.S.C. § 1442(a)(1). Plaintiffs allege that the PBMs promoted the use of opioids through their administration of pharmacy benefits in exchange for rebates from drug manufacturers. Even assuming for purposes of argument that Plaintiffs could validly limit their claims to work the PBMs did for non-federal clients, the

PBMs' administration of pharmacy benefits for non-federal clients is still *related to* their work for federal clients. As noted, the PBMs do not negotiate separate rebates with manufacturers for federal as opposed to non-federal clients. The PBMs likewise adjudicate prescription drug benefits for federal clients just as they do for non-federal clients. *See* § I.B.1, *supra*. And the very nature of Plaintiffs' purported disclaimer—carving out a subset of the PBMs' overall work for private and federal clients—demonstrates that there is at least a relationship between the remaining claims and the PBMs' federal work. Removal based on that relationship is proper under the plain language of the federal officer removal statute.

As explained above, Congress added the "relating to" language to the federal officer removal statute in 2011, broadening the previous language that permitted removal only of suits "for" defendants' acts under federal officers. *See* pp. 5-6, *supra*. In light of that expanded statutory language, many of this Court's sister circuits have recognized that parties seeking removal under Section 1442(a)(1) no longer need to demonstrate a "causal nexus." Instead, by changing the statutory language in 2011, "Congress broadened the Act to cover actions 'not just *causally* connected, but alternatively *connected* or *associated*, with acts under color of federal office.'" *Latiolais*, 951 F.3d at 292; *see, e.g.*, *Arlington County*, 996 F.3d at 256.

For example, in *Baker*, the Seventh Circuit "replaced causation with connection" as the legal standard governing federal-officer removal because "[t]his

46

position better comports with the Supreme Court's decisions, which have never utilized a rigid causation standard for removal." 962 F.3d at 944. Likewise, in *In re Commonwealth's Motion*, the Third Circuit held that "it is sufficient for there to be a 'connection' or 'association' between the act in question and the federal office" based on the "broad" meaning of the words "relating to." 790 F.3d at 471-72. And in *Latiolais*, the en banc Fifth Circuit held that "any civil action that is connected or associated with an act under color of federal office may be removed" and overruled cases that had "erroneously relied on a 'causal nexus' test after Congress amended" the federal-officer-removal statute. 951 F.3d at 296; *see also Moore v. Elec. Boat Corp.*, 25 F.4th 30, 35 (1st Cir. 2022); *New York v. Trump*, 683 F. Supp. 3d 334, 344 (S.D.N.Y. 2023) ("Clearly, Congress broadened the Act to cover actions 'not just *causally* connected, but alternatively *connected* or *associated*, with acts under color of federal office.'") (emphasis in original) (quoting *Latiolais*, 951 F.3d at 292).

The new standard adopted by those courts reflects the sound statutory-interpretation principle that "[w]hen Congress amends legislation, courts must 'presume it intends the change to have real and substantial effect.'" *Ross v. Blake*, 578 U.S. 632, 641-42 (2016) (brackets and citation omitted). The new standard also echoes the Supreme Court's direction that the statutory term "relating to" is a "broad" phrase meaning "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into *association with or connection with*." *Morales v. Trans*

*World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (emphasis added) (citation omitted); *see Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 & n.16 (1983) (same).

Although this Court has acknowledged the 2011 amendment permitting removal of suits both "for" and "relating to" conduct under federal officers, the Court has thus far indicated that federal officer defendants must demonstrate a "causal nexus" as the Court required before the amendment. *See Tong*, 83 F.4th at 145 & n.7. To be sure, demonstrating a causal nexus remains one way to satisfy the federal officer removal statute, and the Court could decide this case on that basis. *See* Parts I & II, *supra*; *Tong*, 83 F.4th at 145 & n.7 (noting that this Court in *Agyin* held that removal was proper because the defendant demonstrated a causal nexus) (citing *Agyin*, 986 F.3d at 979). But it is not the only way. If the Court concludes that the PBMs have not demonstrated a causal nexus here, the Court should apply the statute's plain language—as many other courts of appeals have done—and hold that federal officer removal was proper here because Plaintiffs' claims at least "relat[e] to" the PBMs' conduct under federal officers. 28 U.S.C. § 1442(a)(1).[10]

---

[10] If the Court is not inclined to adopt a new formulation of the standard for federal officer removal, it should at least hold that its "causal nexus" test now "incorporat[es] the 'connected or associated with' standard reflected in Congress's 2011 amendment," *DeFiore v. SOC LLC*, 85 F.4th 546, 557 n.6 (9th Cir. 2023) (quoting *Goncalves*, 865 F.3d at 1244–45), and permit the PBMs' federal officer removal on that basis.

## **CONCLUSION**

The Court should reverse the decisions below.

Respectfully submitted,

| *Ellison Ward Merkel* | *Brian D. Boone* |
|---|---|
| **QUINN EMANUEL URQUHART &** | **ALSTON & BIRD LLP** |
| **SULLIVAN, LLP** | Brian D. Boone |
| Ellison Ward Merkel | Michael R. Hoernlein |
| Haley Plourde-Cole | Vantage South End |
| 51 Madison Avenue, 22nd Floor | 1120 South Tryon St., Suite 300 |
| New York, NY 10010 | Charlotte, NC 28203 |
| ellisonmerkel@quinnemanuel.com | Tel: (704) 444-1000 |
| haleyplourdecole@quinnemanuel.com | brian.boone@alston.com |
| 212-849-7000 | michael.hoernlein@alston.com |
| | |
| Michael Lyle | Debolina Das |
| Jonathan G. Cooper | 90 Park Avenue |
| Christopher G. Michel | New York, NY 10016 |
| 1300 I St. NW, Suite 900 | debolina.das@alston.com |
| Washington, DC 20005 | 212-905-9040 |
| mikelyle@quinnemanuel.com | |
| jonathancooper@quinnemanuel.com | *Counsel for OptumRx, Inc.* |
| christophermichel@quinnemanuel.com | |
| 202-538-8000 | |
| | |
| Charles B. Straut II | |
| 50 California St., 22nd Fl. | |
| San Francisco, CA 94111 | |
| charlesstraut@quinnemanuel.com | |
| 415-875-6600 | |
| | |
| *Counsel for Express Scripts, Inc.* | |

49

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Second Circuit Local Rule 32.1(a)(4)(A) because it contains 11,118 words (based on the Microsoft Word word-count function), excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) because it has been prepared in a proportionately spaced typeface using Microsoft Word in Times New Roman, 14-point type, and according to the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6).

*Ellison Ward Merkel*
**QUINN EMANUEL URQUHART &**
**SULLIVAN, LLP**
Ellison Ward Merkel
51 Madison Avenue, 22nd Floor
New York, NY 10010
ellisonmerkel@quinnemanuel.com
212-849-7000

*Counsel for Express Scripts, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on October 11, 2024, the foregoing document was served

on all parties or their counsel of record via CM/ECF.

Dated: October 11, 2024

*Ellison Ward Merkel*

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
Ellison Ward Merkel
51 Madison Avenue, 22nd Floor
New York, NY 10010
ellisonmerkel@quinnemanuel.com
212-849-7000

*Counsel for Express Scripts, Inc.*

# SPECIAL APPENDIX

i

# TABLE OF CONTENTS

**Page**

**<u>23-cv-05382</u>**

Memorandum and Order of the Honorable Orelia E.
  Merchant, dated July 4, 2024, Appealed From ...... SPA-1

**<u>23-cv-06096</u>**

Opinion and Order of the Honorable Cathy Seibel,
  dated June 18, 2024, Appealed From .................... SPA-16

Order of the Honorable Cathy Seibel, dated
  July 3, 2024 ............................................................ SPA-39

**<u>24-cv-02962</u>**

Order of the Honorable Cathy Seibel, dated
  July 3, 2024, Appealed From ................................ SPA-41

**<u>24-cv-03498</u>**

Text Order of the Honorable Orelia E. Merchant,
  dated July 27, 2024, Appealed From ..................... SPA-43

**<u>Statutes</u>**

28 U.S.C. § 1442 ...................................................... SPA-44

28 U.S.C. § 1447 ...................................................... SPA-46

SPA-1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

NASSAU COUNTY, NY,

          *Plaintiff*,

                                          **MEMORANDUM & ORDER**

       -against-                          2:23-CV-5382 (OEM) (ARL)

MYLAN PHARMACEUTICALS, INC., *et al.* ,

             *Defendants*.

-----------------------------------------------------------------x

**ORELIA E. MERCHANT, United States District Judge:**

    Before the Court is plaintiff, the County of Nassau, New York ("Plaintiff" or "Nassau")'s

motion to remand.  This action brought by Plaintiff against 31 corporate defendants[1] arises out of

a coordinated and consolidated civil opioid litigation, *In re Opioid Litigation*, Index No.

400000/2017 (Garguilo, J.) (Suffolk Cnty Sup. Ct. 2017).

    For the following reasons, Plaintiff's motion to remand is **GRANTED**, and this case is

**REMANDED** back to New York State Court for Suffolk County, Index No. 400000/2017 for all

further proceedings.  No stay of this decision pending appeal shall issue.

---

[1]  Mylan Pharmaceuticals, Inc.; Sandoz, Inc.; West-Ward Pharmaceuticals Corp. *n/k/a* Hikma Pharmaceuticals, Inc.; Amneal Pharmaceuticals, Inc.; KVK-Tech, Inc.; Indivior Inc. *f/k/a* Reckitt Benckiser Pharmaceuticals, Inc.; Assertio Therapeutics *f/k/a* Depomed, Inc.; Abbott Laboratories, Inc.; Sun Pharmaceutical Industries, Inc.; Zydus Pharmaceuticals (USA) Inc.; Novartis AG *a/k/a* Novartis Inc.; Novartis Pharmaceuticals Corporation (collectively, the "Manufacturer Defendants"); Henry Schein, Inc.; Henry Schein Medical Systems, Inc.; Koninklijke Ahold MDelhaize N.V.; Ahold Delhaize USA, Inc.; American Sales Company, LLC (collectively the "Distributor Defendants"); Associated Pharmacies, Inc.; Costco Wholesale Corporation; Target Corporation; Wegmans Food Markets, Inc.; KPH Healthcare Services, Inc. *d/b/a* Kinney Drugs; Kinney Drugs; The Stop & Shop Supermarket Company LLC *d/b/a* Stop & Shop Pharmacy (collectively, the "Pharmacy Defendants"); Express Scripts Holding Company; Express Scripts, Inc.; UnitedHealth Group Incorporated; Medco Health Solutions, Inc.; Merck-Medco; Optum, Inc.; OptumRx Inc.; Navitus Holdings, LLC; Navitus Health Solutions, LLC (collectively, the "Pharmacy Benefit Defendants") (altogether, the "Defendants").

SPA-2

## BACKGROUND[2]

This suit is one of many such opioid actions brought by New York municipalities—indeed by municipalities "around the country"—seeking to hold the entire opioid supply chain liable for their alleged respective roles in one of the "most significant healthcare crises in our nation's history," the opioid epidemic.  Removing Defendants' Opposition to the Motion for Remand, ECF 88 ("Opp") at 22 n.4; Second Amended Complaint, ECF 76-3 (originally filed at 75-1), ¶ 1011.

"Starting in 2017, various New York cities, counties, and towns filed dozens of cases in New York state court against dozens of opioid manufacturers, distributors, and pharmacies. . . . to recoup costs allegedly incurred in addressing issues related to opioid abuse."  ESI Removal Notice ¶ 1.  This case started June 12, 2015, as *Nassau County, NY v. Purdue Pharma L.P., et al.* "In July 2017, the New York State Court Litigation Coordination Panel ('LCP') ordered all similar opioid matters filed in state court to be coordinated in the Suffolk County Supreme Court under the caption *In re Opioid Litigation*, Index No. 400000/2017."  *Id.* ¶ 8.  "Certain of the cases— including this case—were selected for a bellwether trial and designated as *In re Opioid Litigation*

---

[2] The following facts and background are drawn from the OptumRx's notice of removal ("OptumRx Removal Notice"), ECF 1; Express Scripts' supplemental notice of removal ("ESI Removal Notice"), ECF 21; the Second Amended Complaint, ECF 76-3 (originally filed at ECF 75-1), and incorporates the exhibits attached thereto, and materials the parties submitted related to this motion.  *Maguire v. A.C. & S., Inc.*, No. 14 Civ. 7578 (PAE), 2015 WL 4934445, at *1 n.1 (S.D.N.Y. Aug. 18, 2015) ("In resolving this motion, the Court treats all facts alleged in these pleadings as true. . . . The Second Circuit [ ] has said that, on jurisdictional issues, federal courts may look outside the pleadings to other evidence in the record, and therefore the court will consider material outside of the pleadings submitted on a motion to remand." (internal quotation marks and citations omitted)); *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna U.S. Healthcare*, No. 15-cv-2007 (KBF), 2015 WL 2183900, at *3 (S.D.N.Y. May 11, 2015) ("In resolving a motion to remand, the Court is not limited to the allegations in the pleadings and may also consider extrinsic evidence.") (subsequent history omitted).  The Court also takes judicial notice of other cases and related filings where necessary for the fact of their existence, not for their truth. *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006); Fed. R. Evid. 201.

SPA-3

–*Track I Cases*.  The Track I Cases culminated in a trial that reached a verdict against certain defendants on the issue of liability on December 30, 2021."[3]  *Id.* ¶ 9.

In April 2023, Plaintiff amended its operative master state court complaint.  *See* First Amended Complaint, ECF 76-6.  Relevant here, Plaintiff named the pharmacy benefit manager defendants OptumRx, Inc. ("OptumRx") and Express Scripts, Inc., ("Express Scripts" or "ESI") (the "Removing Defendants").

Upon the Removing Defendant's addition to *In re Opium Litigation* in June of 2023, OptumRx timely removed this action by filing a notice of removal on July 15, 2023 in the Eastern District of New York.  *See generally* OptumRx Removal Notice.  On July 28, 2023,  Express Scripts filed their own supplemental notice of removal.  *See* ESI Removal Notice.  Both Removing Defendants alleged in their respective notices of removal that they were parties to contracts with various federal agencies to provide and administer pharmacy benefit services for federal clients. For example, ESI has contracts with the U.S. Department of Defense ("DoD") to administer pharmacy benefit services for the TRICARE health plan as well as for Federal Employees Health Benefits Program ("FEHBP") administered by the U.S. Office of Personnel Management ("OPM").  *See* ESI Removal Notice ¶¶ 4-5; *see also* OptumRx Removal Notice ¶¶ 2, 5.  As grounds for removal, the Removing Defendants invoked the federal officer removal statute, 28 U.S.C. § 1442(a)(1), alleging they had acted under a federal officer and were raising a colorable

---

[3] Thirty-four other *In re Opioid* cases in August 2022 were transferred by the LCP to Westchester County Supreme Court under the caption *In re Opioid Litigation – Non-Track I Cases*, Index No. 75000/2022.  ESI Removal Notice ¶ 10.  Removing Defendants have also removed those 34 cases to the Southern District of New York, and they have now been consolidated under *Westchester County v. Mylan Pharmaceuticals, Inc. et al.*, 7:23-cv-06096-CS (2023) (Seibel, J.).

SPA-4

government-contractor defense. *See* OptumRx Removal Notice ¶¶ 14-44; ESI Removal Notice ¶¶ 4, 21-80.

 The Court subsequently granted the parties' joint motion to stay any answer or response to the complaint until 60 days after the order and decision resolving the motion for remand. *See* Order dated Aug. 10, 2023.

On September 26, 2023, the Court held a pre-motion conference regarding Plaintiff's anticipated motion to remand and set an initial briefing schedule. *See* Minute Entry dated Sept. 26, 2023.

On October 11, 2023, Plaintiff filed a motion to file a second amend complaint, providing as an attachment Plaintiff's proposed second amended complaint, which was filed under seal. *See See* ECF 76-3 (originally filed at ECF 75-1); *supra* note 2. On October 16, the Court granted the motion to amend, making the Second Amended Complaint the current operative complaint in this action and reset the briefing schedule for the motion to remand. *See* Order dated Oct. 16, 2023. The Court also requested supplemental briefing on any proposed sealing of the Second Amended Complaint. *See id.*

On December 7, 2023, the fully bundled motion to remand was filed. *See* Plaintiff's Memorandum of Law in Support of Remand ("Pl's Memo"), ECF 87-1; Removing Defendants' Opposition to Remand ("Opp."), ECF 88; Plaintiff's Reply ("Reply"), ECF 92. The case is ripe for adjudication.

## LEGAL STANDARD

Federal courts are courts of limited jurisdiction. *Badgerow v. Walters*, 596 U.S. 1, 7 (2022); *see also Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1745 (2019) (citations

omitted) ("[F]ederal courts are courts of limited jurisdiction" and "may not exercise jurisdiction absent a statutory basis.").  One such basis is "[t]he federal-officer removal statue . . . [which] provides that a case may be removed from state to federal court when the case is brought against '[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or any agency thereof, in an official or individual capacity, for or relating to any act under color of such office.'"  *Hicksville Water Dist. v. Jerry Spiegel Assocs., Inc.*, No. 19-CV-6070 (PKC) (SMG), 2020 WL 3129162, at *3 (E.D.N.Y June 12, 2020) (quoting 28 U.S.C. § 1442(a)(1)).

A defendant that is not itself a federal officer must satisfy a three-pronged test to determine whether it may effect removal on this basis.  To do so, a defendant must "(1) show that it is a person within the meaning of the statute who acted under a federal officer, (2) show that it performed the actions for which it is being sued under color of federal office, and (3) raise a colorable federal defense."  *State by Tong v. Exxon Mobil Corp.*, 83 F.4th 122, 142-43 (2d Cir. 2023) (quotation marks and citations omitted); *see Isaacson v. Dow Chem Co.*, 517 F.3d 129, 135 (2d Cir. 2008).  The propriety of a defendant's removal is a matter of subject matter jurisdiction and cannot be waived.  *See Yong Qin Luo v. Mikel*, 625 F.3d 772, 775 (2d Cir. 2010).  As federal courts may only hear and adjudicate a limited class of claims, this Court has an "unflagging obligation" to be sure of its own jurisdiction (or lack thereof).  *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  "The party asserting jurisdiction bears the burden of proving that the case is properly in federal court and that party may not be relieved of its burden by any formal procedure."  *Yong Qin Luo*, 625 F.3d at 775 (quotation marks and citation omitted).

SPA-6

"Removability is determined from the record as of the time the petition for removal is filed." *Id.* (cleaned up); *see Hallingby v. Hallingby*, 574 F.3d 51, 56 (2d Cir. 2009).

But even if jurisdiction existed at the time of removal, the elimination of all federal claims after removal bears on the court's exercise of supplemental jurisdiction. *See Frawley v. Gen. Elec. Co.*, No. 06 Civ. 15395 (CM), 2007 WL 656857, at *3 (S.D.N.Y. Mar. 1, 2007) ("[W]hether to retain a removed case after post-removal dismissal of all claims that made the case properly removable presents an entirely different issue than whether removal was proper in the first place- an issue that is decided in accordance with entirely different principles."). Thus, "a properly removed case *can* be remanded to the state court after [a] complaint is amended to remove the allegations that made removal proper." *Id.* (emphasis in original).

## DISCUSSION

Plaintiff argues that remand is appropriate because they have expressly disclaimed any claims arising from Defendants' conduct in connection with federal programs, plans, contracts, employees, and beneficiaries in the Second Amended Complaint, and thus, Removing Defendants have not satisfied the elements necessary for federal officer removal and this court should not exercise supplemental jurisdiction over their state law claims. *See generally* Pl's Memo and Reply. Removing Defendants maintain that (1) Plaintiff's post-removal amendments do not affect the propriety of the removal, (2) Removing Defendants properly removed this case under 28 U.S.C. § 1442(a)(1), (3) Plaintiff's disclaimers are illusory, as Plaintiff's complaints still reflect liability and damages theories that implicate the work that the Removing Defendants do at the behest of federal clients, (4) even if the disclaimers are viable, the Court should retain supplemental jurisdiction given the federal questions and federal defenses which permeate Plaintiff's claims,

6

SPA-7

and (5) the Court should stay the execution of any order of remand until the Removing Defendants have an opportunity to appeal. *See generally* Opp.

### A.   Plaintiff's Disclaimers and Federal Officer Jurisdiction

While Removing Defendants spend a great deal of time in their opposition to Plaintiff's remand motion on the propriety of the removal in the first instance, ultimately, they miss the thrust of Plaintiff's motion which is that, notwithstanding the propriety of removal, Plaintiff has since amended the operative pleading to eliminate the bases of federal officer jurisdiction. Accordingly, this Court's focus is not on whether removal was proper in the first instance, but on whether the disclaimers are effective, and if so, whether the Court should nevertheless exercise supplemental jurisdiction over these cases.[4] *See Westchester County, et al. v. Mylan Pharmaceuticals, Inc., et al.,* No. 23-CV-6096 (CS), 2024 WL 3043121, at *6 (S.D.N.Y. June 18, 2024) (remanding 34 related New York opioid cases brought by municipalities in similar procedural posture back to state court).

Here, the Second Amended Complaint includes the following paragraphs[5]:

- This lawsuit does not seek damages related to the federal government or for conduct undertaken pursuant to contracts with the federal government, nor does it challenge the creation of custom formularies for, or on behalf of, a federal government agency or federal officer, such as for any Federal Employees Health Benefits Act ("FEHBA"), TRICARE-governed health benefits plan or any other federal plan. Furthermore, it does not seek to recover moneys paid by the federal government pursuant to such plans. As such, the

---

[4] Thus, the Court need not address whether these cases were originally removable under 28 U.S.C. § 1442(a)(1). *See Westchester County, et al. v. Mylan Pharmaceuticals, Inc., et al.,* No. 23-CV-6096 (CS), 2024 WL 3043121, at *6 (S.D.N.Y. June 18, 2024); *see also Healthcare Venture Partners, LLC v. Anthem Blue Cross & Blue Shield*, No. 1:21-cv-29, 2021 WL 5194662, at *5 (S.D. Ohio Nov. 8, 2021) ("[T]he Court need not decide whether the inclusion of one or more [benefit claims] arising from a FEHBA-plan would make the case removable under § 1442(a)(1). That is because the Court finds that, to the extent any such claims were ever part of this action, [plaintiff] has waived those claims in connection with its action here.").

[5] For a full recitation of all the disclaimer paragraphs, s*ee* Second Amended Complaint, ¶¶ 2-6; *see also* Pl's Memo at 9 n.7 (providing citation to additional disclaimers throughout the Second Amended Complaint and allegations whose facts are further "narrowed to state claims and examples of specific evidence of conduct").

Complaint does not seek relief from any PBM Defendant that is available pursuant to any claim(s) involving a federal government agency, federal officer or federal government contracting officer associated with any FEHBA or TRICARE-governed health benefits plan or federal health insurance program . . . . Second Amended Complaint ¶ 3.

- This lawsuit does not contain claims against the Defendants that are federal in character related to prescriptions adjudicated or processed under any federal program or federal contract, including OptumRx's contract with the Veterans Health Administration or pharmacy care services provided to the federal government, Express Script's contracts with the U.S. Department of Defense, the TRICARE health care program, and other health plans participating in the FEHBP overseen or administered by the federal government; nor does it include requests for relief governed by, or available pursuant to claims associated with any FEHBP or TRICARE-governed health benefits plan . . . Plaintiff further disclaims any claims herein regarding: (1) conduct related to prescription claims for federal plans that may or may not have caused an oversupply of prescription opioids or caused or contributed to the harms for which Plaintiff seeks recovery, (2) Express Scripts' pharmacy benefits management or mail order pharmacy work for the Department of Defense under any TRICARE Contract and pertaining to health plans under FEHBA, including the operation of mail order pharmacies in accordance with contractual guidelines set by the federal government . . . . *Id.* ¶ 4.

- Plaintiff disavows any cause of action or claim for recovery related to opioids distributed to military personnel, veterans, federal customers or health plan beneficiaries under the authority or direction of a federal officer, federal agency, or pursuant to any federal contract; or any statutory mandate to provide health care to beneficiaries of federal plans, military personnel or veterans and/or their beneficiaries through the TRICARE federal health insurance program; contracts pertaining to pharmacy benefit management and mail order pharmacy services for federal employees, including pertaining to the TRICARE Home Delivery/Mail Order Pharmacy, or programs such as Meds by Mail; or federal contracts where a federal officer or agency directed or exercised guidance and control over Defendants' conduct as described generally in this lawsuit; the operation or management of a TRICARE mail order pharmacy; or federal contracts pertaining to dispensing by mail order pharmacies to beneficiaries of federal plans, military personnel or veterans and/or their beneficiaries; or prescription claims under a contract between Defendants and the federal government. *Id.* ¶ 5.

- Plaintiff expressly disclaims and disavows any and all federal claims or questions related to opioids at issue in this lawsuit and disavows any cause of action or claim for recovery related to opioids at issue that could give rise to federal subject matter jurisdiction under either 28 U.S.C. § 1331 (federal question) or 28 U.S.C. § 1442 (a)(1) (federal officer). Plaintiff is not seeking relief for any and all claims for damages against any Defendant whose conduct whether by omission or commission, was engaged in at the behest of the United States or any agency or person acting under him or under color of such office to the

extent that such a claim would implicate federal court jurisdiction under 28 U.S.C. § 1442(a)(1) . . . . *Id.* ¶ 6.

- Plaintiff does not allege claims related to military personnel, veterans, federal customers, or federal health plan beneficiaries. *Id.* ¶ 916, *passim*.

These disclaimers are identical to the ones found to be effective by Judge Seibel in *Westchester County.* 2024 WL 3043121, at *3-4. And for the same reasons stated in that decision, the Court independently finds that "the federal claims ha[ve] been abandoned[.]" *Chapman v. Crane Co.*, 694 F. App'x 825, 827–28 (2d Cir. 2017) (summary order). Specifically, the Court finds that these new and modified allegations are sufficiently specific and tailored so as to "renounce any claims or recovery related to the Removing Defendants' services, conduct, and contracts in connection with TRICARE, the FEHBA, the VHA or any other federal program." *Westchester County*, 2024 WL 3043121, at *6-7 (collecting similar cases); *see also Frawley*, 2007 WL 656857, at *3 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988)) ("[T]he United States Supreme Court has held that a properly removed case *can* be remanded to the state court after the complaint is amended to remove the allegations that made removal proper.").[6]

---

[6] Removing Defendants also raised in this case the identical arguments as in *Westchester County* that the Plaintiff's disclaimers are "ineffective and illusory" given the diffuse nature of nuisance injuries, arguing that such injury is "indivisible" and "incompatible" with the Second Amended Complaint. Opp. at 18-19. As explained by several other courts such arguments are unpersuasive because "when carried to its logical end, [the argument] assumes that any organization that contracts with the government, including for services that are also available to private organizations, may *always* take advantage of federal officer removal if any portion of the work it performs is on behalf of *both* private and government organizations, even if the government services are not at issue." *People of the State of California v. Eli Lilly & Co.*, No. 2:23-cv-01929-SPG-SK, 2023 WL 4269750, at *6 (C.D. Cal. June 28, 2023) (emphasis in original). "Yet [Removing Defendants have] not provided authority for this proposition, nor has the Court found any such authority, especially under circumstances similar to the present case, where Plaintiff has repeatedly demonstrated that it does not seek to sue over any conduct performed on behalf of a federal entity. Therefore, the Court rejects the Removing Defendants' factual indivisibility arguments." *Id.*; *accord Westchester County. See* 2024 WL 3043121, at *8 (collecting cases).

**B. Supplemental Jurisdiction**

The Court now turns to the central question in this motion, which is not whether this court may retain the case—it may—but rather whether this court *should* retain the case. *See Frawley*, 2007 WL 656857, at *3 (emphasis added) (removed under § 1442(a) then remanded); *see Lundy v. Catholic Health System of Long Island Inc.*, 711 F.3d 106, 117 (2d Cir. 2013) ("The exercise of supplemental jurisdiction is within the sound discretion of the district court.").

Plaintiff contends that the Court should decline supplemental jurisdiction over the state law claims in the action because the Second Amended Complaint has now "excised all factual grounds for removal as identified by Removing Defendants previously." Reply at 1 n.1; *see* Pl's Memo at 22-25. Removing Defendants contest that remand is proper for various reasons, none of which are persuasive or in accordance with precedent. Opp. at 22-24.

"Section 1367(c) provides four specific bases for declining supplemental jurisdiction over a claim."[7] *Pro Bono Invs., Inc. v. Gerry*, No. 03 Civ. 4347 (JGK), 2005 WL 2429787, at *13 (S.D.N.Y. Sept. 30, 2005). The Second Circuit "has held that, as a precondition to declining supplemental jurisdiction, a district court must identify a factual predicate corresponding to one of Section 1367(c)'s four enumerated categories." *Id.* (citing *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 446-47 (2d Cir. 1998)). Because this Court has concluded that the Plaintiff's disclaimers are effective in expressly disclaiming the basis upon which federal

---

[7] 28 U.S.C. § 1367(c) provides: The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

    (1) the claim raises a novel or complex issue of State law,
    (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
    (3) the district court has dismissed all claims over which it has original jurisdiction, or
    (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

officer removal was based, the Court finds those "claims" dismissed for the purposes of the supplemental jurisdiction analysis.[8]  *See* 28 U.S.C. § 1367(c).

Given the new allegations in the Second Amended Complaint and the additional context in which they were drafted, this Court finds, as other courts have, that Nassau has effectively "dismissed" any federal claims or remedy therefrom by abandonment.  28 U.S.C. § 1367(c)(3). *See Maguire v. A.C. & S., Inc.*, No. 14 Civ. 7578 (PAE), 2015 WL 4934445, at *3 (finding abandonment language added to the amended complaint "so as to limit the reach of the [] causes of action" constituted a "dismiss[al]" of those claims under § 1367(c) and collecting cases); *cf. Frawley*, 2007 WL 656857, at *2, 5 (explaining that the court would "not hesitate to remand the case back to the New York State Supreme Court" if plaintiffs "delete[d]" and abandoned any and all claims against Navy contractor arising out of the plaintiff's naval experience).

Finding factual predicate sufficient to support basis for remand, the Court now turns to the discretionary considerations warranting remand: "judicial economy, procedural convenience, fairness to litigants, and comity to the States."  *Carnegie-Mellon,* 484 U.S. at 343.

As to judicial economy and convenience, the Supreme Court has opined that "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims

---

[8] Indeed the Second Circuit has acknowledged that that the "claims giving rise to original jurisdiction" need not be "formally dismissed for a properly removed case to be remanded to state court."  *Chapman*, 694 F. App'x at 827–28; *cf. Valencia v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003) (concluding district court abused discretion in retaining supplemental jurisdiction where plaintiffs had abandoned all federal claims; it was a relatively early stage of the case; "[n]o substantive motions had been filed; no judicial opinions had been issued; and the case was not yet ready for trial"); *Carnegie-Mellon*, 484 U.S. at 345 ("[A] federal district court has discretion under the doctrine of pendent jurisdiction to remand a properly removed case to state court when all federal-law claims in the action have been eliminated and only pendent state-law claims remain.").

11

remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie-Mellon*, 484 U.S. at 350.  As only state law claims remain, this militates toward remand to the coordinated litigation that remains in place.  That the coordinated litigation already has in place its own procedures and devices to handle these cases only makes it more clear that the Court should decline jurisdiction.[9]  In state court, this case would be "under the leadership of an able and experienced jurist, who has developed appropriate procedures for expediting this class of lawsuit." *Frawley*, 2007 WL 656857, at *4.  As the parties themselves admit, "this case is especially complex—the complaint is nearly 150 pages long and contains seven causes of action, and at least 34 other New York municipalities have filed similar cases."  Stipulation To Extend Time To Respond To Complaint ("Extension Stipulation"), ECF 6, ¶ 3.  Given the foregoing, judicial convenience and economy weighs heavily in favor in remand.

As to any unfairness to the defendants, there can be none.  First, there was no surprise here. In fact, in a stipulation filed just four days after removing the case, the parties represented that they were anticipating a motion to remand and requested additional time.  *See id.* ¶¶ 1, 3, 5.  Removing Defendants were also on notice since the pre-motion conference that Plaintiff would intend to amend the complaint with this express intent in mind.  *See supra* Background.  The remand motions were promptly filed in accordance with the Court's briefing schedule and no further delay in briefing has occurred.  This counsels in favor of remand.  *See Maguire*, 2015 WL 4934445, at *5 (remanding where plaintiff "filed her motion to remand promptly, before any discovery had

---

[9] *See, e.g.*, *In re Opioid*, Case Management Order #1,  NYSCEF 10; *id.*, Case Management Order # 2, NYSCEF 541 ("This Case Management Order No. 2 is intended to ensure efficient use of judicial resources and the facilities and personnel of the court, reduce duplicative or inconsistent rulings, orders or judgments, serve the convenience of the parties, witnesses, and counsel, and promote the just, speedy and inexpensive determination of this proceeding.").

been conducted" and "thus did not postpone the litigation, waste judicial resources, and perhaps cause inconsistencies in discovery procedure.").

Second, this case has not been litigated in any meaningful way beyond the instant motion to remand and no discovery has been taken. Thus, there is no "substantial unfairness or inconvenience to the parties" present that would weigh in favor of keeping the case in this forum. *Westchester County*, 2024 WL 3043121, at *10 (collecting cases).

As to comity between state and federal systems, both the litigants and New York citizens "have an interest in the prompt and efficient resolution of controversies based" on New York state laws. *Carnegie-Mellon*, 484 U.S. at 353. Here the state interest is outsized as compared to any federal interest. Countless New York municipalities have doggedly pursued their state law claims against the full spectrum of the pharmaceutical supply chain since 2017 seeking to recoup damages caused by the opioid epidemic to their citizens and municipalities' coffers. These municipalities have secured settlements and a bellwether victory against other plaintiffs (who are no longer at issue). *See, e.g.,* Purdue Settlement, *In re Opioid*, NYSCEF 1025. Comparatively, while at the time of removal there may have been a federal interest in hearing Removing Defendants' colorable federal defenses in a federal forum, that interest is no longer present given Plaintiff's effective disclaimer of any such government-contractor-based claims.[10] Lastly, with the remand of the 34 cases, it makes little sense as a matter of comity for this Court to retain this case and risk inconsistent adjudications of the same central state-law claims.

---

[10] And, to the extent such an issue may arise in the future, state court justices are "perfectly capable of applying the correct law (which is federal law)." *Frawley*, 2007 WL 656857, at *5 ("That the New York State courts are familiar with the government contractor defenses in [toxic tort cases] is abundantly clear.").

At bottom, "[t]he doctrine of pendent jurisdiction thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Carnegie-Mellon*, 484 U.S. at 350.  Here, the "most sensible" outcome is to remand back to New York State Court.  Accordingly, the Court declines to exercise supplemental jurisdiction.

### C.  Stay of the Execution of the Remand Order is Not Warranted

Removing Defendants request that the Court stay execution of the remand for at least thirty days to preserve their right to appeal, and to maintain the stay if they appeal.  Opp. at 24-25.  As an initial matter, Removing Defendants do not present, much less argue, the relevant four-part legal test for staying an order pending appeal, nor do they provide authority otherwise indicating that the Court should stay litigation in these specific circumstances.[11]  *See Nken v. Holder*, 556 U.S. 418, 433–34 (2009).  Simply requesting a stay is insufficient, as "[t]he Court is not responsible for developing arguments on a party's behalf or addressing conclusory claims."  *Chui v. American Yuexianggui of Li LLC*, No. 18-CV-05091 (JMA) (AKT), 2021 WL 4482656, at *3 (E.D.N.Y. July 26, 2021), *report and recommendation adopted*, 2021 WL 4480736 (E.D.N.Y. Sept. 30, 2021).  As such, the Court finds that Removing Defendants have failed to carry their "burden of showing that the circumstances justify an exercise of" of the court's discretionary and equitable power to injunct the legal process of remand.  *Nken*, 556 U.S. at 427, 434 ("A stay is an intrusion into the ordinary processes of administration and judicial review.").

---

[11] "Those legal principles have been distilled into consideration of four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quotation marks omitted).

SPA-15

In any case, the Court's own review under the relevant stay factors indicates no imminent irreparable injury will befall the Removing Defendants by remanding the case back to state court. Rather, the Removing Defendants will have to continue litigating and expending monetary resources as they already have for over six years. Both the public interest and the balance of the equities favor Plaintiff as well. Plaintiff and those members of the public they allege are harmed by all defendants' actions will be needlessly delayed pending appeal when in fact there is as a specialized tribunal ready to shepherd this phase of the case to a fair and just resolution. *See People v. Eli Lilly & Co.*, No. 2:23-cv-01929-SPG-SK, 2023 WL 4681625, at *1 (C.D. Cal. July 14, 2023) (denying Removing Defendants stay in same removal-remand scenario). The request for a stay is denied.

## CONCLUSION

For the reasons stated herein, Plaintiff's motion to remand is **GRANTED,** and this case is **REMANDED** to the Supreme Court of the State of New York, Suffolk County. The Clerk of Court is directed to remand the case to the Supreme Court of the State of New York, Suffolk County under Index No. 400000/2017, *In re Opioid Litigation*, and close the case.

**SO ORDERED.**

/s/ Orelia E. Merchant
ORELIA E. MERCHANT
United States District Judge

Dated:        July 4, 2024
              Brooklyn New York

15

SPA-16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
WESTCHESTER COUNTY, *et al.*,

                                             Plaintiffs,                    **OPINION & ORDER**

              - against -                                                   No. 23-CV-6096 (CS)

MYLAN PHARMACEUTICALS, INC., *et al.*,

                                             Defendants.
-----------------------------------------------------------------x

<u>Appearances</u>:

Hunter J. Shkolnik
Paul J. Napoli
NS PR Law Services, LLC
Santurce, Puerto Rico

Salvatore C. Badala
Shayna E. Sacks
Napoli Shkolnik PLLC
Melville, New York
*Counsel for Plaintiffs*

Ellison Ward Merkel
Haley Plourde-Cole
Quinn Emanuel Urquhart & Sullivan, LLP
New York, New York

Michael Lyle
Jonathan Cooper
Quinn Emanuel Urquhart & Sullivan, LLP
Washington, D.C.

Charles B. Straut II
Quinn Emanuel Urquhart & Sullivan, LLP
San Francisco, California
*Counsel for Defendant Express Scripts, Inc.*

Michael R. Hoernlein
Brian D. Boone
Emily McGowan
Alston & Bird LLP
Charlotte, North Carolina

Caroline Rawls Strumph
Alston & Bird LLP
Atlanta, Georgia
*Counsel for Defendant OptumRx, Inc.*

Seibel, J.

      Before the Court is Plaintiffs' motion to remand.  (*See* ECF No. 114.)  For the following reasons, the motion is GRANTED.

## I.    **BACKGROUND**

      "The following facts derive principally from the complaint, the notice of removal, and the briefing on the instant motion seeking remand."  *Ohno Enters. v. Allen*, No. 15-CV-6675, 2016 WL 3512176, at *1 (E.D.N.Y. June 22, 2016); *see Pondexter v. Oruzio*, No. 15-CV-5617, 2017 WL 1079974, at *1 (E.D.N.Y. Mar. 21, 2017) ("When determining subject matter jurisdiction, courts may look outside the pleadings to documents appended to a notice of removal or a motion to remand that convey information essential to the court's jurisdictional analysis.  The following facts are therefore drawn from the documents attached to the notice of removal and the motion to remand in this case as well as the evidence presented in the parties' supplemental filings.").[1]

      Plaintiffs are thirty-four New York counties and municipalities, including towns and cities, all of which initiated the underlying actions in state courts throughout New York from September 2017 to February 2020.  (*See* ECF No. 116-2.)  Those actions – and others – were consolidated into New York State's *In re Opioid Litigation*, Index No. 400000/2017, which the

---

      [1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

New York State Litigation Coordinating Panel ("LCP") established in Suffolk County Supreme Court in July 2017 to coordinate the state's large volume of opioid-related lawsuits.  (*See* ECF No. 37 ¶¶ 7-8; ECF No. 121 ("Ds' Opp.") at 2.)  Several of the *In re Opioid Litigation* cases were designated as "Track I Cases" and proceeded to trial, resulting in a verdict against certain defendants on December 30, 2021.  (ECF No. 37 ¶ 9; Ds' Opp. at 2.)  The remaining cases – including the 34 cases to which the instant motion is addressed – were then transferred to Westchester County Supreme Court under the caption *In re Opioid Litigation – Non-Track I Cases*, Index No. 75000/2022, where they have been assigned to Justice Nancy Quinn Koba.  (Ds' Opp. at 3; *see* ECF No. 115 ("Ps' Mem.") at 1-2; ECF No. 37 ¶¶ 10-11.)

On April 7, 2023, Plaintiffs amended their respective complaints to name pharmacy benefit managers ("PBMs") Express Scripts, Inc. and OptumRx, Inc. as new Defendants, among others.  (*See* ECF No. 116-4 ¶ 4.)[2]  These complaints contain seven state law claims:  (1) deceptive acts and practices in violation of New York General Business Law ("NY GBL") § 349; (2) false advertising in violation of NY GBL § 350; (3) public nuisance; (4) violation of New York Social Services Law § 145-B; (5) fraud; (6) unjust enrichment; and (7) negligence.  (*Id.* ¶¶ 529-636.)

On July 14, 2023, Defendant OptumRx, Inc. ("OptumRx"), removed the first of these 34 cases to this Court, (*see* ECF Nos. 1, 116-2), contending that its provision of pharmacy benefit management services pursuant to contracts with federal agencies, including the Veterans Health Administration ("VHA"), satisfies the federal officer removal statute, 28 U.S.C. § 1442(a),

---

[2] PBMs are entities which "function as intermediaries between insurance providers and pharmaceutical manufacturers," handling negotiations and payments within the prescription drug supply chain while playing no direct role in the physical distribution of those drugs.  *Pharmacy Benefit Managers*, Nat'l Ass'n of Ins. Comm'rs, https://content.naic.org/cipr-topics/pharmacy-benefit-managers (last visited May 28, 2024).

because Plaintiffs' allegations implicate its provision of services at the direction of the federal

government, (*see* ECF No. 1 ¶¶ 1-5, 30).[3]  On July 28, 2023, Defendant Express Scripts, Inc.

("Express Scripts" and together with OptumRx, the "Removing Defendants"), filed a

supplemental notice of removal, contending that its contract with the United States Department

of Defense ("DOD") to provide various services to DOD's TRICARE healthcare program for

active duty service members and veteran retirees, as well as its participation in the Federal

Employees Health Benefits Program ("FEHBP"), administered by the United Sates Office of

---

[3] The remaining cases were all removed to this Court between July 14, 2023 and July 17, 2023.  (*See* ECF No. 116-2.)  On July 20, 2023, the Court entered an Order consolidating all thirty-four cases for pretrial purposes only and designating *Westchester County v. Mylan Pharmaceuticals, Inc., et al.*, No. 23-CV-6096, as the lead case.  (*See* ECF No. 15.)  The thirty three related cases are:  *Cattaraugus County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06103; *Cayuga County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06106; *Chautauqua County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06108; *Chemung County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06109; *Chenango County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06120; *City of Ithaca, NY v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06115; *City Of Kingston, NY v. Novartis, et al.*, No. 23-CV-06126; *City of Mount Vernon, NY v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06136; *Clinton County, NY v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06113; *Cortland County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06121; *Essex County v. Mylan Pharmaceuticals, Inc. et al. ,*No. 23-CV-06097; *Franklin County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06125; *Genesee County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06128; *Hamilton County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06129; *Livingston County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06132; *Niagara County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06104; *Orleans County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06110; *Otsego County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06112; *Putnam County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06116; *Rensselaer County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06117; *Saratoga County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06119; *Schoharie County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06123; *Schuyler County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06127; *Steuben County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06107; *Tioga County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06098; *Tompkins County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06114; *Town of Lancaster, NY v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06130; *Town of Amherst, NY v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06118; *Town of Cheektowaga, NY v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06124; *Warren County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06133; *Yates County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06134; *Town of Tonawanda, NY v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06131; and *Madison County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06135.

Personnel Management ("OPM"), independently satisfy the requirements for federal officer

removal under § 1442(a).  (*See generally* ECF No. 37.)

On August 3, 2023, Plaintiffs filed a pre-motion letter in anticipation of a motion to

remand, (*see* ECF No. 44), and on August 30, 2023, the Court held a pre-motion conference at

which it granted Plaintiffs leave to amend their complaints and set a briefing schedule for the

motion, (*see* Minute Entry dated Aug. 30, 2023).

Plaintiffs' amended complaints were filed on September 29, 2023 and contain several

paragraphs by which Plaintiffs seek to disclaim and abandon any and all claims which may give

rise to § 1442(a) jurisdiction.  (*See generally* ECF No. 105 ("Sept. 2023 Compl.").)[4]

Specifically, Plaintiffs offer the following disclaimers:

> [T]his lawsuit relates to Defendants' unlawful conduct that has created,
> perpetuated, contributed to, and maintained, a serious public health crisis of
> opioid abuse, addiction, morbidity, and mortality throughout New York state.
> The Defendants must be held accountable to abate the nuisances they have caused
> in communities across the state.  This lawsuit does not seek damages related to
> the federal government or for conduct undertaken pursuant to contracts with the
> federal government, nor does it challenge the creation of custom formularies for,
> or on behalf of, a federal government agency or federal officer, such as for any
> Federal Employees Health Benefit Act ("FEHBA"), TRICARE-governed health
> benefits plan or any other federal plan.  Furthermore, it does not seek to recover
> moneys paid by the federal government pursuant to such plans.  As such, the
> Complaint does not seek relief from any PBM Defendant that is available
> pursuant to any claim(s) involving a federal government agency, federal officer or
> federal government contracting officer associated with any FEHBA or
> TRICARE-governed health benefits plan or federal health insurance program; nor
> pharmacy care services provided to the federal government; nor remedies that
> would interfere with or otherwise affect any federal plan, including but not
> limited to any remedies that would interfere with or affect the formularies,

---

[4] ECF No. 105 was sealed at Plaintiffs' request, (*see* ECF No. 106), to allow the parties to
determine if it contained any confidential information subject to a protective order, (*see* ECF No.
107).  Plaintiffs were ordered to file redacted versions of that document and the amended
complaints in the related cases "as soon as practicable," (*id.*), but do not appear to have done so,
(*See* ECF No. 116-1).  As such, the Court shall unseal ECF No. 105 and the other amended
complaints unless Plaintiffs advise the Court that they do in fact contain confidential information
and file redacted versions of those documents no later than July 2, 2024.

utilization management policies and programs, or administration of any Federal Plan; the uniform administration of the TRICARE program or the provision of healthcare services to U.S. military servicemembers, veterans, and their beneficiaries; or services provided under a contract that requires the exclusive use of any federal government formulary, including the Department of Defense's Uniform Formulary, that specifies the drugs authorized, sets requirements for prior authorization and utilization reviews, and/or assures medical necessity, clinical appropriateness and/or cost-effectiveness, and/or establishes a prescription restriction program for TRICARE federal health insurance program members and/or beneficiaries.

This lawsuit does not contain claims against the Defendants that are federal in character related to prescriptions adjudicated or processed under any federal program or federal contract, including OptumRx's contract with the Veterans Health Administration or pharmacy care services provided to the federal government, Express Script's contracts with the U.S. Department of Defense, the TRICARE health care program, and other health plans participating in the FEHBP overseen or administered by the federal government; nor does it include requests for relief governed by, or available pursuant to claims associated with any FEHBP or TRICARE-governed health benefits plan; nor claims against Defendants involving beneficiaries under federal healthcare programs or federal plans; nor federal prescription claims adjudicated or processed for plans controlled or sponsored by federal government agencies or entities or those processed according to a federal formulary design or Medicare Part D plans; nor conduct as a fiscal intermediary on behalf of the federal government; nor conduct governed or managed by a federal officer or federal government contracting offer [*sic*], or basic governmental tasks fulfilled or carried out by a Defendant on behalf of the federal government; nor determinations as to the appropriateness of restrictions on a TRICARE member's prescriptions, which are to be determined by a federal officer; nor conduct considered to be undertaken by any defendant as a statutorily authorized *alter ego* of the federal government; nor any contract that provides and/or requires federal government subjection, guidance and/or control over a Defendant's performance and/or the prescription drugs included in formularies. Plaintiff further disclaims any claims herein regarding:  (1) conduct related to prescription claims for federal plans that may or may not have caused an oversupply of prescription opioids or caused or contributed to the harms for which Plaintiff seeks recovery, (2) Express Scripts' pharmacy benefits management or mail order pharmacy work for the Department of Defense under any TRICARE Contract and pertaining to health plans under FEHBA, including the operation of mail order pharmacies in accordance with contractual guidelines set by the federal government; and (3) OptumRx's work for the Veterans Health Administration and/or the federal government.

Plaintiff disavows any cause of action or claim for recovery related to opioids distributed to military personnel, veterans, federal customers or health plan beneficiaries under the authority or direction of a federal officer, federal agency, or pursuant to any federal contract; or any statutory mandate to provide health

care to beneficiaries of federal plans, military personnel or veterans and/or their beneficiaries through the TRICARE federal health insurance program; contracts pertaining to pharmacy benefit management and mail order pharmacy services for federal employees, including pertaining to the TRICARE Home Delivery/Mail Order Pharmacy, or programs such as Meds by Mail; or federal contracts where a federal officer or agency directed or exercised guidance and control over Defendants' conduct as described generally in this lawsuit; the operation or management of a TRICARE mail order pharmacy; or federal contracts pertaining to dispensing by mail order pharmacies to beneficiaries of federal plans, military personnel or veterans and/or their beneficiaries; or prescription claims under a contract between Defendants and the federal government.

Plaintiff expressly disclaims and disavows any and all federal claims or questions related to opioids at issue in this lawsuit and disavows any cause of action or claim for recovery related to opioids at issue that could give rise to federal subject matter jurisdiction under either 28 U.S.C. § 1331 (federal question) or 28 U.S.C. § 1442(a)(1) (federal officer). Plaintiff is not seeking relief for any and all claims for damages against any Defendant whose conduct whether by omission or commission, was engaged in at the behest of the United States or any agency or person acting under him or under color of such office to the extent that such a claim would implicate federal court jurisdiction under 28 U.S.C. § 1442(a)(1), predicated on preemption by the TRICARE statute and the FEHBA, or the government contactor's defense articulated in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1998). All such claims that legitimately implicate such defenses, in the unlikely event that they exist and are factually supported, are not asserted and are hereby expressly and preemptively disclaimed. Plaintiff hereby puts any Defendant who may nonetheless assert such defenses as a basis for federal jurisdiction over this case on notice that Plaintiff seeks no recovery for injuries as a result of conduct that meets the three-prong *Boyle* test and constitutes actions of a federal officer sufficient to trigger jurisdiction under 28 U.S.C. § 1442(a)(1). Plaintiff specifically advises all Defendants of their position that such an express, clear and unequivocal disclaiming of exposures and of claims implicating the *Boyle* defense, as well as any other claims that legitimately implicate 28 U.S.C. § 1442(a)(1), render any potential future removal of this case to federal court on one of these clearly-disclaimed bases objectively unreasonable under *Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005).

(Sept. 2023 Compl. ¶¶ 3-6; *see id.* ¶¶ 113-116.)[5]

---

[5] In addition to these express disclaimers, Plaintiffs also include similar language in other paragraphs throughout their amended complaints. (*See, e.g.*, Sept. 2023 Compl. ¶ 52 ("Plaintiff does not allege claims related to military personnel, veterans, federal customers or federal health plan beneficiaries."); *id.* ¶ 106 (same); *id.* ¶ 505 ("Plaintiff does not allege claims related to OptumRx's work for the Veterans Health Administration, military personnel, veterans, federal

The instant motion followed.

## II.   <u>LEGAL STANDARD</u>

"[F]ederal courts are courts of limited jurisdiction," and "may not exercise jurisdiction

absent a statutory basis." *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019); *see*

*Robinson v. Kotler*, No. 23-CV-10623, 2024 WL 839049, at *1 (S.D.N.Y. Feb. 28, 2024)

("[F]ederal courts are courts of limited jurisdiction, meaning that they can only hear certain types

of cases permitted by law.").  One such basis is "[t]he federal-officer removal statute . . . [which]

provides that a case may be removed from state to federal court when the case is brought against

'the United States or any agency thereof or any officer (or any person acting under that officer)

of the United States or of any agency thereof, in an official or individual capacity, for or relating

to any act under color of such office.'"  *Hicksville Water Dist. v. Jerry Spiegel Assocs., Inc.*, No.

19-CV-6070, 2020 WL 3129162, at *3 (E.D.N.Y. June 12, 2020) (quoting 28 U.S.C. §

1442(a)(1)).

A defendant that is not itself a federal officer "must satisfy a three-pronged test to

determine whether it may effect removal on those grounds," under which it must "(1) show that

it is a person within the meaning of the statute who acted under a federal officer, (2) show that it

performed the actions for which it is being sued under color of federal office, and (3) raise a

colorable federal defense."  *State by Tong v. Exxon Mobil Corp.*, 83 F.4th 122, 142-43 (2d Cir.

2023); *see Isaacson v. Dow Chem Co.*, 517 F.3d 129, 135 (2d Cir. 2008).

———————————————

customers or federal health plan beneficiaries."); *id*. ¶ 1027 ("Plaintiff does not allege claims
related to the PBM's work for or on behalf of the federal government, or that involving military
personnel, veterans, federal customers or federal health plan beneficiaries."); *id.* ¶ 1130 (same).)

Citations to the Sept. 2023 Compl. refer to paragraphs in the "Addendum" section of that
document, which begins at page 8 of the PDF as numbered by the Court's Electronic Case Filing
System.  (*See generally* Sept. 2023 Compl.)

But "even if jurisdiction existed at the time of removal, the elimination of all federal claims after removal bears on the court's exercise of supplemental jurisdiction." *Paprarella v. Liddle & Robinson, L.L.P.*, No. 18-CV-9267, 2023 WL 2344725, at *4 (S.D.N.Y. Mar. 3, 2023); *see Meer Enters., LLC v. Kocak*, No. 18-CV-6, 2018 WL 1901478, at *3 (S.D.N.Y. Apr. 20, 2018) ("Courts in this Circuit have granted motions to remand where a plaintiff's federal claims have been withdrawn or dismissed before the start of discovery, or prior to the court's decision on a motion to dismiss.") (collecting cases). In other words, "whether to retain a removed case after post-removal dismissal of all claims that made the case properly removable presents an entirely different issue than whether removal was proper in the first place," and thus "a properly removed case *can* be remanded to the state court after [a] complaint is amended to remove the allegations that made removal proper." *Frawley v. Gen. Elec. Co.*, No. 06-CV-15395, 2007 WL 656857, at *3 (S.D.N.Y. Mar. 1, 2007) (emphasis in original); *see Maguire v. A.C. & S., Inc.*, 73 F. Supp. 3d 323, 328 (S.D.N.Y. 2014) ("The later elimination of federal claims and defenses, so as to leave standing only state-law claims, may bear on whether the Court chooses to exercise supplemental jurisdiction, but it does not eliminate federal jurisdiction."); *Martincic v. A.O. Smith Corp.*, No. 20-CV-958, 2020 WL 5850317, at *4 (W.D. Pa. Oct. 1, 2020) ("[T]he propriety of a post-removal action either in the form of an express disclaimer or an amendment to a complaint removing allegations triggering federal liability is controlled by the discretionary principles of supplemental jurisdiction: judicial economy, convenience, fairness, and comity.").[6]

---

[6] The Removing Defendants argue that a motion to remand is evaluated on the basis of the allegations as pleaded at the time of removal and may not be affected by post-removal amendments. (*See* Ds' Opp. at 3-5.) They are correct that the propriety of removal in the first place generally is judged as of the time of removal, *see, e.g.*, *Mraz v. JPMorgan Chase Bank, N.A.*, No. 17-CV-6380, 2018 WL 2075427, at *4 (E.D.N.Y. May 3, 2018), but it is well settled that events post-removal may warrant remand even if the case was properly removed, *see, e.g.*,

## III.     DISCUSSION

Plaintiffs argue that remand is appropriate because they have expressly disclaimed any claims arising from Defendants' conduct in connection with federal programs, plans, contracts, employees, and beneficiaries, and thus the Removing Defendants have not satisfied the elements necessary for federal officer removal and this Court should not exercise supplemental jurisdiction over their state law claims.  (*See generally* Ps' Mem.)  The Removing Defendants maintain that (1) Plaintiffs' post-removal amendments do not affect the propriety of removal, which was proper under the federal officer removal statute, (2) Plaintiffs' disclaimer is illusory, as Plaintiffs' complaints still reflect liability and damages theories that implicate the work that the Removing Defendants do at the behest of their federal clients, and (3) even if the disclaimers are viable, this Court should retain supplemental jurisdiction given the federal questions and federal defenses which permeate Plaintiffs' claims.  (*See generally* Ds' Opp.)

### A.     Plaintiffs' Disclaimers and Federal Officer Jurisdiction

The Removing Defendants frame the instant motion as turning on the propriety of removal in the first instance, (Ds' Opp. at 3-5; *see id.* at 1 ("It is black-letter law that post-removal amendments do not affect the propriety of removal.")), and as a result, spend much of their opposition detailing the extent to which removal pursuant to 28 U.S.C. § 1442(a)(1) was proper, (*see id.* at 5-18).  But in so doing they largely speak past Plaintiffs' motion, the primary thrust of which is that a plaintiff may amend its complaint post-removal to eliminate the bases for federal officer jurisdiction and that, in such circumstances, a federal court should decline to

---

*Pelker v. Air & Liquid Sys. Corp.*, No. 17-CV-1107, 2018 WL 679642, at *8 (D. Or. Feb. 2, 2018) (noting that "post-removal developments may cause remand not only to be proper, but even to be required" and rejecting defendants' "argu[ment] that removability must be determined *at the time of removal*, and thus post-removal waivers have no effect.") (emphasis in original).

10

exercise supplemental jurisdiction over the remaining state law claims. (*See* Ps' Mem. at 6-9, 22-25; ECF No. 128 ("Ps' Reply") at 1-4.)

As noted, Plaintiffs are correct that "a properly removed case *can* be remanded to the state court after the complaint is amended to remove the allegations that made removal proper," *Frawley*, 2007 WL 656857, at *3 (emphasis in original), and thus I focus not on whether removal was proper in the first instance, but on whether the disclaimers are effective, and if so, whether I should nevertheless exercise supplemental jurisdiction over these cases.

As a threshold matter, federal courts evaluating similar circumstances "have consistently granted motions to remand where the plaintiff expressly disclaimed the claims upon which federal officer removal was based." *Grady v. Monsanto Co.*, No. 23-CV-226, 2023 WL 4884468, at *2 (E.D. Mo. Aug. 1, 2023); *see id.* at *3 (collecting cases); *Maguire v. A.C. & S.*, No. 14-CV-7578, 2015 WL 4934445, at *2 (S.D.N.Y. Aug. 18, 2015) ("Courts have consistently held that . . . an explicit [post-removal] abandonment sufficiently excises the claims that led to removal on the grounds of a federal-contractor defense as to justify remand."); *Wilde v. Huntington Ingalls, Inc.*, 616 F. App'x 710, 715 n.28 (5th Cir. 2015) (*per curiam*) ("Courts regularly recognize post-removal claim disclaimers in federal officer proceedings."); *Healthcare Venture Partners, LLC v. Anthem Blue Cross & Blue Shield*, No. 21-CV-29, 2021 WL 5194662, at *6 (S.D. Ohio Nov. 8, 2021) ("The bottom line is that case law suggests that post-removal claim disclaimers, or waivers, can give rise to remand.") (collecting cases); *O'Shea v. Asbestos Corp., Ltd.*, No. 19-CV-127, 2019 WL 12345572, at *9 (D.N.D. Dec. 13, 2019) ("Case law clearly supports the proposition that a waiver filed after removal may operate to eliminate the bases of federal officer jurisdiction and justify remand."), *report and recommendation adopted*, 2020 WL 9848714 (D.N.D. Jan. 8, 2020); *Dougherty v. A.O. Smith Corp.*, No. 13-CV-1972,

2014 WL 3542243, at *10 (D. Del. July 16, 2014) ("[F]ederal courts have consistently granted motions to remand where the plaintiff expressly disclaimed the claims upon which federal officer removal was based."), *report and recommendation adopted*, 2014 WL 4447293 (D. Del. Sept. 8, 2014); *Batchelor v. Am. Optical Corp.*, 185 F. Supp. 3d 1358, 1363-64 (S.D. Fla. 2016) (to same effect) (collecting cases).[7]

For example, in *Maguire v. A.C. & S., Inc.* plaintiffs sought damages from several defendants in connection with personal injuries allegedly caused by asbestos exposure. *See* 2015 WL 4934445, at *1. Following one defendant's removal to federal court based on federal-officer jurisdiction under 28 U.S.C. § 1442(a)(1), *id.*, plaintiffs were granted leave to amend their complaint and added a disclaimer: "No Claims Are Made for Asbestos Exposures Which Are Alleged to Have Occurred Aboard Any Military Vessel or Vehicle, on or at Any Shipyard or on or at Any Governmental Facility or Location," *id.* at *2. The *Maguire* court found that "such broad abandonment language [was] sufficient to constitute abandonment of claims subject to a federal contractor defense," and remanded because removal had been based on claims of exposure at government sites, but with all such claims "removed from the scope of the Amended Complaint, [defendant's] basis for asserting federal jurisdiction has been eliminated." *Id.* at *4.

Similarly, the court in *Frawley v. Gen. Elec. Co.* granted a motion to remand when Plaintiffs amended their complaint post-removal to delete allegations related to asbestos

---

[7] In contrast, the two cases on which the Removing Defendants primarily rely – *Cnty. Bd. of Arlington Cnty., Va. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243 (4th Cir. 2021), and *In re Nat'l Prescription Opiate Litig.*, No. 17-MD-2804, 2023 WL 166006 (N.D. Ohio Jan. 12, 2023), (*see* Ds' Opp. at 1, 8-9, 14-18) – are inapposite, as neither assessed the propriety of remand in the context of express disclaimers of the sort at issue here, or otherwise mentioned disclaimers at all, *see, e.g.*, *People of the State of Cal. v. Eli Lilly & Co.*, No. 23-CV-1929, 2023 WL 4269750, at *5 n.4 (C.D. Cal. June 28, 2023) (rejecting similar argument concerning *Cnty. Bd. of Arlington Cnty.* because "that decision is distinguishable, at least in part, because it did not involve an express disclaimer, such as Plaintiff's here.").

exposure from employment on United States Navy ships. *See* 2007 WL 656857, at *1-2. In so doing, the *Frawley* court accepted Plaintiffs' argument that the court should not exercise supplemental jurisdiction over the remaining claims in the amended complaint which "arise entirely under state law, and in which there is allegedly no federal interest, due to the abandonment of any and all claims against [defendant] arising out of the plaintiff's naval experience." *Id.* at *3.

The *Maguire* and *Frawley* decisions demonstrate that post-removal "disclaimers which explicitly renounce[] claims of a specific nature [are] sufficient to warrant remand . . . where the removal was based on the federal officer removal statute," *Batchelor*, 185 F. Supp. 3d at 1364, because such disclaimers preclude defendants from "assert[ing] a colorable federal defense based on government contractor immunity [as] such a defense pertains to claims that simply do not exist," *id.* at 1364-65; *see Healthcare Venture Partners, LLC*, 2021 WL 5194662, at *8 ("If a disclaimer is sufficiently clear and specific that, on remand, the state court would not be left to determine whether an action was taken on behalf of an officer of the United States and under color of office, then the disclaimer is effective."); *O'Shea*, 2019 WL 12345572, at *11 (where "plaintiffs' notices of waiver suffice to eliminate the factual allegations giving rise to [defendant's] federal officer defense . . . the motions to remand should be granted"); *Kelleher v. A.W. Chesterton Co.*, No. 15-CV-893, 2015 WL 7422756, at *2 (S.D. Ill. Nov. 23, 2015) ("Plaintiff's waiver has rendered any federal defenses moot. To deny remand of this case would affirm [defendant's] right to assert a defense against a claim that does not exist. Indeed, in many . . . cases involving claims originally subject to a federal-contractor defense, remand has been held appropriate following similar waivers.") (collecting cases).

Here the disclaimers offered by Plaintiffs are sufficiently specific.  They explicitly renounce any claims or recovery related to the Removing Defendants' services, conduct, and contracts in connection with TRICARE, the FEHBA, the VHA or any other federal program, (*see* Sept. 2023 Compl. ¶¶ 3-6) – *i.e.*, they abandon any claims or recovery arising out of the Removing Defendants' work on behalf of any federal entity, including those identified in their respective notices of removal, (*see* ECF No. 1 ¶ 1 ("OptumRx is a contractor with the federal government.  OptumRx contracts with federal agencies and entities to provide pharmacy benefit management services across the country, including to [VHA] health-plan members . . . .  Plaintiff challenges conduct under that federal contract . . . ."); *id.* ¶ 3 ("Plaintiff challenges opioid prescriptions adjudicated or processed under federal contracts like the VHA contract."); ECF No. 37 ¶ 5 ("For both TRICARE and FEHBP, Express Scripts is acting under a federal officer; the alleged conduct relates to an act under color of office; and Express Scripts has colorable federal defenses, including the government contractor defense . . . .  It is therefore entitled to remove these cases under the federal officer removal statute.")).

The Removing Defendants nevertheless argue that the disclaimers are "ineffective and illusory" because the nuisance injury alleged by Plaintiffs is "indivisible," as Plaintiffs purportedly "allege the aggregate impact of *all* opioid prescriptions in their jurisdictions constitute a single public nuisance," (Ds' Opp. at 19 (emphasis in original)), "seek to hold the [Removing Defendants] jointly and severally liable for all damages caused by the opioid crisis," (*id.* at 20), and will be unable to separate damages related to commercial health plans from those related to federal plans, (*see id.* at 20-21).

But nearly identical indivisibility arguments have already been rejected by multiple courts, including in *People of the State of Cal. v. Eli Lilly & Co.*, a case alleging that PBMs

14

conspired with insulin manufacturers to artificially raise the price of insulin in California.  *See*

2023 WL 4269750, at *1.  That court explained:

> [The removing defendant's] indivisibility argument stretches federal officer
> jurisdiction too far.  A number of courts [in cases involving asbestos exposure]
> have credited similar types of waivers that seek to disclaim work performed on
> behalf of government officers while suing private contractors for work performed
> on behalf of private organizations.  At oral argument, [the removing defendant]
> argued that th[ose] asbestos cases presented meaningfully different facts than
> those the Court is faced with in the present Motion.  Specifically, [the removing
> defendant] argued that work performed on specific vessels could be divided in a
> way that joint negotiations on behalf of multiple parties could not.  While such a
> division may be more difficult here, the Court is not persuaded that it cannot be
> done.  Furthermore, [the removing defendant's] argument, when carried to its
> logical end, assumes that any organization that contracts with the government,
> including for services that are also available to private organizations, may always
> take advantage of federal officer removal if any portion of the work it performs is
> on behalf of both private and government organizations, even if the government
> services are not at issue.  Yet [the removing defendant] has not provided authority
> for this proposition, nor has the Court found any such authority, especially under
> circumstances similar to the present case, where Plaintiff has repeatedly
> demonstrated that it does not seek to sue over any conduct performed on behalf of
> a federal entity.  Therefore, the Court rejects the Removing Defendants' factual
> indivisibility arguments.

*Id.* at *6; *see Gov't of Puerto Rico v. Eli Lilly & Co.*, No. 23-CV-1127, 2023 WL 4830569, at *2

(D.P.R. July 13, 2023) (rejecting indivisibility argument "because relief would be strictly limited

to non-federal health insurance plans," and "[t]hus, upon remand, the state court would not need

to address any issue related to Defendants' contracts with the federal government nor would

Defendants have any colorable federal defense because the claims asserted do not involve federal

programs or federal actors," and because "the Court [was] not persuaded that dividing the work

done by Defendants on behalf of the federal government from the work done for its private

clients [was] not possible in th[e] case"); *Ohio ex. rel. Yost v. Ascent Health Servs. LLC*, No. 23-

CV-1450, 2024 WL 23187, at *3 (S.D. Ohio Jan. 2, 2024) (same).

The Court is similarly "not persuaded that dividing the work done by Defendants on

behalf of the federal government from the work done for [other] clients is not possible in this

case," *Gov't of Puerto Rico*, 2023 WL 4830569, at *2, particularly given the significant number of "courts [which] have credited similar types of waivers that seek to disclaim work performed on behalf of [federal] government officers while suing private contractors for work performed on behalf of private organizations," *People of the State of Cal.*, 2023 WL 4269750, at *6; *see Maguire*, 2015 WL 4934445, at *2 n.2 (collecting cases).  If, as the Removing Defendants predict, it proves impossible to disaggregate the harm from opioids distributed under federal programs from the harm from other opioids, that will redound to Plaintiffs' detriment, as I am confident that the state court will enforce Plaintiffs' disclaimer.  But speculation that Plaintiffs have made a decision that will make their damages harder (or even impossible) to prove is no reason to disregard their disclaimer.  And this Court is hardly in a position, in adjudicating a motion to remand in a case that has barely gotten off the ground with respect to the PBMs, to make decisions about what damages calculations may or may not be able to be made much further down the road.[8]

    At bottom, "Plaintiffs' post-removal claim disclaimer is substantially similar . . . to the disclaimers that were determined to be effective in the cases discussed above," *Dougherty*, 2014 WL 3542243, at *16, and thus they have "effectively waived the claims that would provide the basis for § 1442(a)(1) jurisdiction," *Healthcare Venture Partners, LLC*, 2021 WL 5194662, at

---

    [8] On a similar note, the Removing Defendants submitted a Corrected Notice of Removal filed in another opioid case involving a federal disclaimer, *Jefferson County v. Williams et al.*, No. 20JE-CC00029 (Twenty-Third Judicial Circuit, Missouri), in which they argue that the plaintiff's expert reports filed in that case reflect theories of liability that encompass the PBMs' work for federal agencies, thus showing that disclaimers of the sort offered by Plaintiffs are unworkable, (*see* ECF No. 129).  The Court will not assume that Plaintiffs will not be able to isolate the Removing Defendants' work for federal healthcare plans in their damages calculations, and therefore disregard their disclaimer, on the basis of expert reports submitted by a different plaintiff, represented by different counsel, in a case that is in a very different procedural posture.

*9; *see id.* at *6 ("[T]he [disclaimer] . . . unequivocally evinces [plaintiff's] intent not to pursue the issue of FEHBA-plans in this litigation.  Thus, the statement suffices to waive these claims, even if they were originally included in the Complaint."); *Ohio ex. rel. Yost*, 2024 WL 23187, at *3 (finding post-removal disclaimer effective where it "clearly identifies that [Plaintiff] does not challenge conduct related to TRICARE or FEHB" and "[t]hus . . . provides a discrete and readily identifiable category of claims it disclaims, and therefore remand would not require the state court to consider the contours of the federal officer removal statute"); *People of the State of Cal.*, 2023 WL 4269760, at *7 ("Plaintiff's disclaimer, and later repeated waivers, negate any causal nexus that might otherwise have existed between Plaintiff's claims and the Removing Defendants' conduct on behalf of government officers.").  Put simply, Plaintiffs' disclaimers are effective.[9]

### B.    <u>Supplemental Jurisdiction</u>

Having determined that Plaintiffs' post-removal disclaimers effectively waive any claims or recovery attributable to the Removing Defendants' conduct related to, or contracts with, federal officers, the Court must determine whether to exercise supplemental jurisdiction over the state law claims in Plaintiffs' amended complaints.[10]

---

[9] The Court thus need not address whether these cases were originally removable under 28 U.S.C. § 1442(a)(1).  *See Healthcare Venture Partners, LLC*, 2021 WL 5194662, at *5 ("[T]he Court need not decide whether the inclusion of one or more [benefit claims] arising from a FEHBA-plan would make the case removable under § 1442(a)(1).  That is because the Court finds that, to the extent any such claims were ever part of this action, [plaintiff] has waived those claims in connection with its action here.").

[10] At least one other court "agrees . . . that a district court has discretion in determining whether to remand a case after the claims giving rise to § 1442(a)(1) jurisdiction are eliminated" but "respectfully disagrees . . . that this decision should proceed as a 28 U.S.C. § 1367 supplemental jurisdiction analysis," and instead applied a "§ 1442(a)(1) ancillary-claim analysis" when "determin[ing] whether to adjudicate the remaining claims."  *Healthcare Venture Partners, LLC*, 2021 WL 5194662, at *9 n.5.  I need not resolve that dispute, because "although the

The exercise of supplemental jurisdiction is governed by 28 U.S.C. § 1367. *See Maguire*, 2015 4934445, at *4 n.4; *Dougherty*, 2014 WL 3542243, at *16. "Whether to exercise supplemental jurisdiction under § 1367 is within the sound discretion of the district court. Courts consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity to decide whether to exercise supplemental jurisdiction." *Camara v. Kenner*, No. 16-CV-7078, 2018 WL 1596195, at *6 (S.D.N.Y. Mar. 29, 2018); *see Frawley*, 2007 WL 656857, at *3.

Here, "[f]actors of judicial economy and convenience clearly militate in favor of remanding th[ese] cases to the New York Supreme Court," *Frawley*, 2007 WL 656857, at *4, where dozens of similar opioid lawsuits were filed and consolidated into the state's *In re Opioid Litigation* by the LCP, where a bellwether trial resulted in a verdict against certain defendants on December 30, 2021, and where other similar coordinated cases are still pending before Justice Koba under the caption *In re Opioid Litigation – Non-Track I Cases*, Index No. 75000/2022.[11] Given those extensive efforts to coordinate and litigate New York state's opioid cases, the state court "is fully familiar with all the issues that [may] arise . . . whereas this court will have a rather steep learning curve." *Frawley*, 2007 WL 656857, at *4; *see Gorfinkel v. Vayntrub*, No. 13-CV-3093, 2014 WL 4175914, at *7 (E.D.N.Y. Aug. 20, 2014) (declining to exercise

---

§ 1442(a)(1) ancillary-claim analysis and the § 1367 supplemental jurisdiction analysis rest on different statutory foundations, the two tests are essentially identical in practice," *id.*, and therefore this Court will employ the § 1367 supplemental jurisdiction framework used by the courts in *Frawley*, 2007 WL 656857, at *4 and *Maguire*, 2015 WL 4934445, at *4-5.

[11] Based on the Court's review, there are at least six such cases: *City of Plattsburgh v. Purdue Pharma L.P., et al.*, Index No. 75031/2022; *City of Albany v. Purdue Pharma L.P., et al.*, Index No. 75032/2022; *City of Schenectady v. Purdue Pharma L.P., et al.*, Index No. 75033/2022; *City of Troy v. Purdue Pharma L.P., et al.*, Index No. 75034/2022; *City of Yonkers v. Purdue Pharma L.P., et al.*, Index No. 75045/2022; and *County of Yates v. Akin's Pharmacy, et al.*, Index No. 75061/2022.

18

supplemental jurisdiction because "the State court is most familiar with Plaintiff's causes of action, and is the original forum of Plaintiff's choosing.").

Next, considerations of "[c]omity and respect for New York state courts dictate that where possible, state courts should decide matters of state law, and that absent exceptional circumstances, this Court should decline to exercise supplemental jurisdiction over such claims." *Wilson v. Dantas*, No. 12-CV-3238, 2013 WL 92999, at *9 (S.D.N.Y. Jan. 7, 2013). As Plaintiffs are only pursuing state law causes of action, the comity factor favors remand as well. *See Chin Tuan v. Flatrate Moving Network LLC*, No. 19-CV-4264, 2020 WL 4606318, at *7 (S.D.N.Y. Aug. 11, 2020) ("[T]he interests of comity militate in favor of remand because the case is predominantly a matter of state law."); *Healthcare Venture Partners, LLC*, 2021 WL 5194662, at *10 (holding that comity factor weighs in favor of remand because "[plaintiff] has alleged eight separate causes of action under . . . state law" and "[c]omity suggests that a[] [state] court, not the federal court, would be better positioned to adjudicate those claims.").

Finally, the fairness factor favors remand as "[r]emand[] . . . at this early stage of the proceeding – far from trial and before substantial discovery has begun – does not create substantial unfairness or inconvenience to the parties." *Wilson*, 2013 WL 92999, at *9; *see Gonzalez v. Red. Apple Grp., Inc.*, No. 21-CV-508, 2022 WL 987425, at *3 (E.D.N.Y. Feb. 5, 2022) ("The earlier the stage at which the federal claims are eliminated, the more the factors of judicial economy, convenience, fairness and comity weigh towards remanding the matter to the state court from which it was removed."); *Hassan, D.D.S. , PLC v. Miamee, D.D.S., P.C.*, No. 20-CV-488, 2020 WL 9347966, at *2 (E.D. Va. June 1, 2020) ("As to fairness, because the proceedings are at such an early stage, no party . . . would be prejudiced by remand.").

In sum, all four factors favor remand. *See Spehar v. Fuchs*, No. 02-CV-9352, 2003 WL 23353308, at *10 (S.D.N.Y June 17, 2003) (declining to exercise supplemental jurisdiction because "when a post-removal amendment leaves a federal court with only state law claims, and where the federal court has had no substantive involvement in the case, the values of judicial economy, convenience, fairness, and comity weigh in favor of remanding to state court.").[12] Accordingly, the Court declines to exercise supplemental jurisdiction.

---

[12] The Removing Defendants argue that the Court should nevertheless exercise supplemental jurisdiction because (1) "resolving this case will require addressing substantial questions of federal law," including Defendants' duties under the Controlled Substances Act ("CSA"), (*see* Sept. 2023 Compl. ¶¶ 773-776, 827-829, 947, 971, 1234, 1275, 1278, 1302, 1307), which Plaintiffs' counsel purportedly "recognize," having recently filed a separate opioid case for different plaintiffs "against many of the same defendants" in federal court in Florida, (Ds' Opp. at 23), (2) Removing Defendants have "have significant federal defenses, including federal preemption under the Employee Retirement Income Security Act of 1974," ("ERISA"), (*id.*), and (3) Plaintiffs' counsel purportedly selected a similar case, not before this court, as a "PBM bellwether[]" in the federal opioid Multi-District Litigation ("MDL"), "further confirming that these cases raise federal questions and belong in federal court," (*id.* at 24).

The Removing Defendants' arguments regarding the CSA and ERISA essentially present new grounds for removal – federal question jurisdiction and complete preemption. While a defendant "may . . . amend its notice of removal after thirty days if the amendment is merely technical," it "may not amend a notice of removal after thirty days to state a new ground for removal," *Certain Underwriters at Lloyd's London v. Art Crating, Inc.*, No. 12-CV-5078, 2014 WL 123488, at *13 (E.D.N.Y. Jan. 10, 2014); *see* 28 U.S.C. § 1446, let alone raise new grounds for removal for the first time in an opposition brief to a motion to remand, *see, e.g., Hahn v. Rauch*, 602 F. Supp. 2d 895, 909 (N.D. Ohio 2008) ("These bases [for removal] were raised for the first time in Defendants' opposition to the motion to remand. A defendant cannot argue a new substantive ground as a basis for removal in opposing remand."); *Warner v. Midnight Recovery*, No. 19-CV-453, 2020 WL 1105111, at *4 (W.D. Ky. Mar. 6, 2020) ("If a defendant fails to raise a substantive ground for removal in its notice of removal or does not file an amendment raising that issue within thirty days, that basis for removal is waived."); *PMC, Inc. v. Tomco Constr., Inc.*, No. 21-CV-13470, 2021 WL 5413988, at *4 (D.N.J. Nov. 18, 2021) ("[A] defendant may not add an entirely new basis for this Court's removal jurisdiction by raising it only in an opposition brief filed more than thirty days after removal."); *see also Wyant v. Nat'l R.R. Passenger Corp.*, 881 F. Supp. 919, 924-25 (S.D.N.Y. 1995) (explaining that a "notice of removal generally must be filed within thirty days after the receipt of the initial state court pleading" and "[a] defendant may not amend its notice of removal after this thirty-day period to remedy a substantive defect in the petition" and holding that because defendant "did not assert its federal question basis for removal in its notice of removal in any way," the "Court cannot now,

### C.    Removing Defendants' Stay Request

The Removing Defendants request that this Court stay execution of any remand order for at least thirty days to preserve their right to appeal and then maintain that stay should they choose to appeal.  (Ds' Opp. at 24.)

"But a stay [pending appeal] is not a matter of right, even if irreparable injury might otherwise result; rather, a stay is an exercise of judicial discretion, and the party requesting a stay bears the burden of showing that the circumstances justify an exercise of discretion." *New York v. United States Dep't of Homeland Sec.*, 974 F.3d 210, 214 (2d Cir. 2020); s*ee Leroy v. Hume*, 563 F. Supp. 3d 22, 25 (E.D.N.Y. 2021).  A court considers four factors to determine if that burden has been met:  "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Nken v. Holder*, 556 U.S. 418, 434 (2009).

The Removing Defendants have developed virtually no argument addressing any of these factors, let alone demonstrated that a stay pending appeal is warranted in these circumstances.[13]

---

six months after the filing of the notice of removal and more than seven months after the filing of the complaint, permit it to add this new substantive ground for removal").  The Court thus disregards arguments presenting new grounds for removal.

To the extent the Removing Defendants rely on Plaintiffs' counsel having filed in federal court for other clients or having designated a similar case as a bellwether in the MDL, those strategic decisions, made for other clients in other contexts and plausibly based on any number of reasons, are far too thin a reed to support retention of jurisdiction in the face of considerations of judicial economy, convenience, fairness and comity.

[13] The case on which the Removing Defendants primarily rely in support of their stay request, *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023), is hardly dispositive, as "the sole question before th[e] Court" in that case was "whether a district court must stay its proceedings while [an] interlocutory appeal on arbitrability is ongoing," *id.* at 740.  In any event, "Defendants right to appeal is rendered nugatory only if the state court reaches the merits of plaintiffs' claims

Simply requesting a stay is insufficient, as "[t]he Court is not responsible for developing arguments on a party's behalf or addressing conclusory claims." *Chui v. American Yuexianggui of Li LLC*, No. 18-CV-5091, 2021 WL 4482656, at *3 (E.D.N.Y. July 26, 2021), *report and recommendation adopted*, 2021 WL 4480736 (E.D.N.Y. Sept. 30, 2021); *see Spectrum Ne., LLC v. City of Rochester*, No. 21-CV-6453, 2022 WL 787964, at *4 (W.D.N.Y. Mar. 15, 2022) (declining to address party's contention where party did "no more than invoke a proposition," without "meaningfully explain[ing] its argument, cit[ing] any applicable legal authority, or apply[ing] said authority to the present dispute," as it "is not the Court's responsibility to develop the [defendant's] scattershot assertions into discernible legal arguments"); *Dahn v. Comm'r of Soc. Sec.*, No. 18-CV-1507, 2020 WL 5554510, at *2 (W.D.N.Y. Sept. 17, 2020) ("Because it is not the Court's responsibility to develop arguments on a party's behalf, the Court declines to address any such conclusory claims, and instead confines its analysis to those arguments that [Plaintiff] has meaningfully briefed.").

Accordingly, the request for a stay pending appeal is denied.[14]

---

before the Second Circuit, on appeal, holds that I improperly remanded plaintiffs' case." *Leroy*, 563 F. Supp. 3d at 30. Given the complexity and early stage of the cases to be remanded, it is virtually impossible that the state court proceedings will terminate before an appeal of this decision is decided.

[14] This outcome should come as no surprise, as the failure to develop the argument for a stay has resulted in denials in other cases involving one of the Removing Defendants. *See Gov't of Puerto Rico*, 2023 WL 4830569, at *3 ("Express Scripts requests that the Court delay the mailing of the remand order to the state court by seven days. Express Scripts provides no legal basis for this request. The request is hereby DENIED."); *Cal. by and through Harrison v. Express Scripts, Inc.*, No. 23-CV-8570, 2024 WL 841197, at *6 (C.D. Cal. Feb. 28, 2024) ("[T]he Court concludes a stay is not warranted here. [Removing] Defendants have not made a strong showing that they are likely to succeed on the merits, for the same reasons [the Court is granting the motion to remand]. Nor have the [Removing] Defendants addressed any possible hardship in their moving papers.").

SPA-38

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' motion to remand is GRANTED.  The Clerk of Court is respectfully directed to terminate the pending motions, (ECF No. 114, 125),[15] docket this Order in this case and the thirty-three related cases (listed in footnote 3), and remand all of these cases to the Supreme Court of the State of New York, Westchester County.

**SO ORDERED.**

Dated: June 18, 2024
      White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

---

[15] ECF No. 125 is a request for oral argument, which the Court does not find necessary.

23

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
WESTCHESTER COUNTY, *et al.*,

                                    Plaintiffs,                    **ORDER**

        - against -                                               No. 23-CV-6096 (CS)

MYLAN PHARMACEUTICALS, INC., *et al.*,

                                    Defendants.
-------------------------------------------------------------x

Seibel, J.

        Between April 18, 2024 and May 1, 2024, Defendants timely removed twenty-one cases

(the "Second Wave Cases") from Westchester County Supreme Court to this Court, which were

properly designated as related to the above-captioned case.  (*See* ECF No. 150 ¶ 1; ECF No. 140

at 4.)[1]  On June 18, 2024, I entered an Order remanding the above-captioned case and thirty-

three related opioid cases that were initially removed from Westchester County Supreme Court

to this Court in 2023.  (*See* ECF No. 148 at 23.)

---------------------------------

        [1] The twenty-one Second Wave Cases are:  *County of Monroe v. Purdue Pharma L.P., et al.*, No. 24-CV-2962; *County of Erie v. Purdue Pharma L.P., et al.*, No. 24-CV-3008; *County of Ontario v. Purdue Pharma L.P., et al.*, No. 24-CV-3004; *County of Schenectady v. Purdue Pharma L.P., et al.*, No. 24-CV-2986; *County of Orange v. Purdue Pharma L.P., et al.*, No. 24-CV-3076; *County of Seneca v. Purdue Pharma L.P., et al.*, No. 24-CV-3077; *County of Sullivan v. Purdue Pharma L.P., et al.*, No. 24-CV-3083; *County of Wyoming v. Purdue Pharma L.P., et al.*, No. 24-CV-3088; *County of Dutchess v. Purdue Pharma L.P., et al.*, No. 24-CV-3106; *County of Oswego v. Purdue Pharma L.P., et al.*, No. 24-CV-3112; *County of Greene v. Purdue Pharma L.P., et al.*, No. 24-CV-3126; *County of Lewis v. Purdue Pharma L.P., et al.*, No. 24-CV-3140; *County of Herkimer v. Purdue Pharma L.P., et al.*, No. 24-CV-3138; *County of Broome v. Purdue Pharma L.P., et al.*, No. 24-CV-3191; *County of Washington v. Purdue Pharma L.P., et al.*, No. 24-CV-3170; *County of Saint Lawrence v. Purdue Pharma L.P., et al.*, No. 24-CV-3193; *County of Columbia v. Purdue Pharma L.P., et al.*, No. 24-CV-3293; *County of Fulton v. Purdue Pharma L.P., et al.*, No. 24-CV-3257; *County of Ulster v. Purdue Pharma L.P., et al.*, No. 24-CV-3259; *City of New York v. Purdue Pharma L.P., et al.*, No. 24-CV-3345; and *County of Montgomery v. Purdue Pharma L.P., et al.*, No. 24-CV-3305.

SPA-40

As the parties recognize in their joint letter dated July 2, 2024, the reasoning of that Order applies with equal force to the Second Wave Cases. (*See* ECF No. 150 ¶ 4.) Accordingly – and on consent of all parties, (*see id.* ¶ 5) – the Court grants their joint request to remand the Second Wave Cases to state court. The Clerk of Court is respectfully directed to: (1) docket this Order in the above-captioned case and the twenty-one Second Wave Cases (listed in footnote 1); (2) terminate the pending motions to remand in the twenty-one Second Wave Cases; and (3) remand the twenty-one Second Wave Cases to the Supreme Court of the State of New York, Westchester County no earlier than July 10, 2024.

**SO ORDERED.**

Dated: July 3, 2024
        White Plains, New York

_____
    CATHY SEIBEL, U.S.D.J.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
WESTCHESTER COUNTY, *et al.*,

                            Plaintiffs,

    - against -

MYLAN PHARMACEUTICALS, INC., *et al.*,

                            Defendants.

--------------------------------------------------------------x

**ORDER**

No. 23-CV-6096 (CS)

Seibel, J.

       Between April 18, 2024 and May 1, 2024, Defendants timely removed twenty-one cases (the "Second Wave Cases") from Westchester County Supreme Court to this Court, which were properly designated as related to the above-captioned case. (*See* ECF No. 150 ¶ 1; ECF No. 140 at 4.)[1] On June 18, 2024, I entered an Order remanding the above-captioned case and thirty-three related opioid cases that were initially removed from Westchester County Supreme Court to this Court in 2023. (*See* ECF No. 148 at 23.)

_____

[1] The twenty-one Second Wave Cases are: *County of Monroe v. Purdue Pharma L.P., et al.*, No. 24-CV-2962; *County of Erie v. Purdue Pharma L.P., et al.*, No. 24-CV-3008; *County of Ontario v. Purdue Pharma L.P., et al.*, No. 24-CV-3004; *County of Schenectady v. Purdue Pharma L.P., et al.*, No. 24-CV-2986; *County of Orange v. Purdue Pharma L.P., et al.*, No. 24-CV-3076; *County of Seneca v. Purdue Pharma L.P., et al.*, No. 24-CV-3077; *County of Sullivan v. Purdue Pharma L.P., et al.*, No. 24-CV-3083; *County of Wyoming v. Purdue Pharma L.P., et al.*, No. 24-CV-3088; *County of Dutchess v. Purdue Pharma L.P., et al.*, No. 24-CV-3106; *County of Oswego v. Purdue Pharma L.P., et al.*, No. 24-CV-3112; *County of Greene v. Purdue Pharma L.P., et al.*, No. 24-CV-3126; *County of Lewis v. Purdue Pharma L.P., et al.*, No. 24-CV-3140; *County of Herkimer v. Purdue Pharma L.P., et al.*, No. 24-CV-3138; *County of Broome v. Purdue Pharma L.P., et al.*, No. 24-CV-3191; *County of Washington v. Purdue Pharma L.P., et al.*, No. 24-CV-3170; *County of Saint Lawrence v. Purdue Pharma L.P., et al.*, No. 24-CV-3193; *County of Columbia v. Purdue Pharma L.P., et al.*, No. 24-CV-3293; *County of Fulton v. Purdue Pharma L.P., et al.*, No. 24-CV-3257; *County of Ulster v. Purdue Pharma L.P., et al.*, No. 24-CV-3259; *City of New York v. Purdue Pharma L.P., et al.*, No. 24-CV-3345; and *County of Montgomery v. Purdue Pharma L.P., et al.*, No. 24-CV-3305.

SPA-42

As the parties recognize in their joint letter dated July 2, 2024, the reasoning of that Order applies with equal force to the Second Wave Cases.  (*See* ECF No. 150 ¶ 4.)  Accordingly – and on consent of all parties, (*see id.* ¶ 5) – the Court grants their joint request to remand the Second Wave Cases to state court.  The Clerk of Court is respectfully directed to:  (1) docket this Order in the above-captioned case and the twenty-one Second Wave Cases (listed in footnote 1); (2) terminate the pending motions to remand in the twenty-one Second Wave Cases; and (3) remand the twenty-one Second Wave Cases to the Supreme Court of the State of New York, Westchester County no earlier than July 10, 2024.

**SO ORDERED.**

Dated: July 3, 2024
       White Plains, New York

_____
  CATHY SEIBEL, U.S.D.J.

SPA-43

| 07/27/2024 | | ORDER granting <u>17</u> Motion to Remand: As recognized by the parties, see ECF <u>17</u> , the reasoning of the Court's decision remanding the related case, *Nassau County, NY v. Mylan Pharmaceuticals, Inc.*, 23-CV-5382 (OEM) at ECF 109, applies to this case. Accordingly and on consent of all parties the Court grants the parties' request to remand the case to state court. The Clerk of Court is respectfully directed to terminate the pending <u>17</u> motion to remand in this case and remand it to the Supreme Court of the State of New York, Suffolk County **no earlier than August 5, 2024**. Ordered by Judge Orelia E. Merchant on 7/27/2024. (CS) (Entered: 07/27/2024) |

SPA-44

§ 1442. Federal officers or agencies sued or prosecuted, 28 USCA § 1442

United States Code Annotated
  Title 28. Judiciary and Judicial Procedure (Refs & Annos)
    Part IV. Jurisdiction and Venue (Refs & Annos)
      Chapter 89. District Courts; Removal of Cases from State Courts (Refs & Annos)

28 U.S.C.A. § 1442

§ 1442. Federal officers or agencies sued or prosecuted

Effective: January 2, 2013

Currentness

**(a)** A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

**(1)** The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

**(2)** A property holder whose title is derived from any such officer, where such action or prosecution affects the validity of any law of the United States.

**(3)** Any officer of the courts of the United States, for or relating to any act under color of office or in the performance of his duties;

**(4)** Any officer of either House of Congress, for or relating to any act in the discharge of his official duty under an order of such House.

**(b)** A personal action commenced in any State court by an alien against any citizen of a State who is, or at the time the alleged action accrued was, a civil officer of the United States and is a nonresident of such State, wherein jurisdiction is obtained by the State court by personal service of process, may be removed by the defendant to the district court of the United States for the district and division in which the defendant was served with process.

**(c)** Solely for purposes of determining the propriety of removal under subsection (a), a law enforcement officer, who is the defendant in a criminal prosecution, shall be deemed to have been acting under the color of his office if the officer--

**(1)** protected an individual in the presence of the officer from a crime of violence;

**(2)** provided immediate assistance to an individual who suffered, or who was threatened with, bodily harm; or

SPA-45

**(3)** prevented the escape of any individual who the officer reasonably believed to have committed, or was about to commit, in the presence of the officer, a crime of violence that resulted in, or was likely to result in, death or serious bodily injury.

**(d)** In this section, the following definitions apply:

**(1)** The terms "civil action" and "criminal prosecution" include any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order, including a subpoena for testimony or documents, is sought or issued. If removal is sought for a proceeding described in the previous sentence, and there is no other basis for removal, only that proceeding may be removed to the district court.

**(2)** The term "crime of violence" has the meaning given that term in section 16 of title 18.

**(3)** The term "law enforcement officer" means any employee described in subparagraph (A), (B), or (C) of section 8401(17) of title 5 and any special agent in the Diplomatic Security Service of the Department of State.

**(4)** The term "serious bodily injury" has the meaning given that term in section 1365 of title 18.

**(5)** The term "State" includes the District of Columbia, United States territories and insular possessions, and Indian country (as defined in section 1151 of title 18).

**(6)** The term "State court" includes the Superior Court of the District of Columbia, a court of a United States territory or insular possession, and a tribal court.

**CREDIT(S)**

(June 25, 1948, c. 646, 62 Stat. 938; Pub.L. 104-317, Title II, § 206(a), Oct. 19, 1996, 110 Stat. 3850; Pub.L. 112-51, § 2(a), (b), Nov. 9, 2011, 125 Stat. 545; Pub.L. 112-239, Div. A, Title X, § 1087, Jan. 2, 2013, 126 Stat. 1969.)

28 U.S.C.A. § 1442, 28 USCA § 1442
Current through P.L. 118-106. Some statute sections may be more current, see credits for details.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

SPA-46

United States Code Annotated
  Title 28. Judiciary and Judicial Procedure (Refs & Annos)
    Part IV. Jurisdiction and Venue (Refs & Annos)
      Chapter 89. District Courts; Removal of Cases from State Courts (Refs & Annos)

28 U.S.C.A. § 1447

§ 1447. Procedure after removal generally

Effective: November 9, 2011

Currentness

**(a)** In any case removed from a State court, the district court may issue all necessary orders and process to bring before it all proper parties whether served by process issued by the State court or otherwise.

**(b)** It may require the removing party to file with its clerk copies of all records and proceedings in such State court or may cause the same to be brought before it by writ of certiorari issued to such State court.

**(c)** A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case.

**(d)** An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise.

**(e)** If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.

## CREDIT(S)

(June 25, 1948, c. 646, 62 Stat. 939; May 24, 1949, c. 139, § 84, 63 Stat. 102; Pub.L. 88-352, Title IX, § 901, July 2, 1964, 78 Stat. 266; Pub.L. 100-702, Title X, § 1016(c), Nov. 19, 1988, 102 Stat. 4670; Pub.L. 102-198, § 10(b), Dec. 9, 1991, 105 Stat. 1626; Pub.L. 104-219, § 1, Oct. 1, 1996, 110 Stat. 3022; Pub.L. 112-51, § 2(d), Nov. 9, 2011, 125 Stat. 546.)

28 U.S.C.A. § 1447, 28 USCA § 1447
Current through P.L. 118-106. Some statute sections may be more current, see credits for details.

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.