# 24-1639(L)

**24-1645(CON), 24-1651(CON), 24-1656(CON), 24-1665(CON), 24-1668(CON), 24-1671(CON), 24-1676(CON), 24-1686(CON), 24-1687(CON), 24-1689(CON), 24-1691(CON), 24-1693(CON), 24-1694(CON), 24-1717(CON), 24-1719(CON), 24-1724(CON), 24-1728(CON), 24-1731(CON), 24-1734(CON), 24-1744(CON), 24-1745(CON), 24-1748(CON), 24-1753(CON), 24-1754(CON), 24-1756(CON), 24-1758(CON), 24-1759(CON), 24-1761(CON), 24-1762(CON), 24-1763(CON), 24-1764(CON), 24-1765(CON), 24-1767(CON), 24-1815(CON), 24-1818(CON), 24-1819(CON), 24-1820(CON), 24-1821(CON), 24-1822(CON), 24-1823(CON), 24-1824(CON), 24-1825(CON), 24-1826(CON), 24-1828(CON), 24-1829(CON), 24-1831(CON), 24-1832(CON), 24-1833(CON), 24-1834(CON), 24-1836(CON), 24-1837(CON), 24-1838(CON), 24-1839(CON), 24-1840(CON), 24-2020(CON)**

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆

COUNTY OF WESTCHESTER, TIOGA COUNTY, CATTARAUGUS COUNTY, NY, PUTNAM COUNTY, NY, RENSSELAER COUNTY, NY, TOWN OF CHEEKTOWAGA, NY, FRANKLIN COUNTY, NY, CITY OF

(*Caption continued on inside cover*)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## JOINT BRIEF FOR PLAINTIFFS-APPELLEES

PAUL J. NAPOLI
HUNTER J. SHKOLNIK
NESTOR GALARZA
NAPOLI SHKOLNIK PLLC
1302 Avenida Ponce de Leon
Santurce, Puerto Rico 00907
(212) 397-1000

SALVATORE C. BADALA
NAPOLI SHKOLNIK PLLC
400 Broadhollow Road, Suite 350
Melville, New York 11747
(212) 397-1000

*Attorneys for Plaintiffs-Appellees County of Westchester, Tioga County, Cattaraugus County, NY, Putnam County, NY, Rensselaer County, NY, Town of Cheektowaga, NY, Franklin County, NY,*

(*Additional parties continued on inside cover*)

JAYNE CONROY
THOMAS I. SHERIDAN, III
ANDREA BIERSTEIN
SIMMONS HANLY CONROY LLP
112 Madison Avenue
New York, New York 10016
(212) 784-6402

*Attorneys for Plaintiffs-Appellees County of Monroe, County of Lewis, County of Broome, County of Erie, County of Montgomery, County of Columbia, County of Fulton, City of New York, County of Greene, County of Dutchess, County of Ontario, County of Ulster, County of Oswego, County of Washington, County of Herkimer, County of Schenectady, County of Sullivan, County of Orange, County of St. Lawrence, County of Seneca, County of Wyoming and County of Suffolk*

KINGSTON, SCHUYLER COUNTY, NY, NIAGARA COUNTY, NY, CAYUGA COUNTY, NY, TOWN OF AMHERST, NY, STEUBEN COUNTY, NY, CHAUTAUQUA COUNTY, NY, SARATOGA COUNTY, NY, CHEMUNG COUNTY, NY, ESSEX COUNTY, NY, CORTLAND COUNTY, NY, CITY OF MOUNT VERNON, NY, ORLEANS COUNTY, NY, OTSEGO COUNTY, NY, CLINTON COUNTY, NY, CHENANGO COUNTY, NY, TOMPKINS COUNTY, NY, CITY OF ITHACA, NY, GENESEE COUNTY, NY, HAMILTON COUNTY, NY, TOWN OF LANCASTER, NY, TOWN OF TONAWANDA, NY, LIVINGSTON COUNTY, NY, WARREN COUNTY, NY, YATES COUNTY, NY, MADISON COUNTY, NY, SCHOHARIE COUNTY, NY, NASSAU COUNTY, NY, COUNTY OF MONROE, COUNTY OF LEWIS, COUNTY OF BROOME, COUNTY OF ERIE, COUNTY OF MONTGOMERY, COUNTY OF COLUMBIA, COUNTY OF FULTON, CITY OF NEW YORK, COUNTY OF GREENE, COUNTY OF DUTCHESS, COUNTY OF ONTARIO, COUNTY OF ULSTER, COUNTY OF OSWEGO, COUNTY OF WASHINGTON, COUNTY OF HERKIMER, COUNTY OF SCHENECTADY, COUNTY OF SULLIVAN, COUNTY OF ORANGE, COUNTY OF ST. LAWRENCE, COUNTY OF SENECA, COUNTY OF WYOMING,

*Plaintiff-Appellees,*

—against—

EXPRESS SCRIPTS, INC., OPTUMRX INC.,

*Defendants-Appellants,*

MYLAN PHARMACEUTICALS, INC., PURDUE PHARMA L.P.,

*Defendants.*

———————————————————

NAPOLI SHKOLNIK PLLC

(*Continued from previous cover*)

*Attorneys for Plaintiffs-Appellees City of Kingston, Schuyler County, NY, Niagara County, NY, Cayuga County, NY, Town of Amherst, NY, Steuben County, NY, Chautauqua County, NY, Saratoga County, NY, Chemung County, NY, Essex County, NY, Cortland County, NY, City of Mount Vernon, NY, Orleans County, NY, Otsego County, NY, Clinton County, NY, Chenango County, NY, Tompkins County, NY, City of Ithaca, NY, Genesee County, NY, Hamilton County, NY, Town of Lancaster, NY, Town of Tonawanda, NY, Livingston County, NY, Warren County, NY, Yates County, NY, Madison County, NY, Schoharie County, NY, and Nassau County, NY*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................1

COUNTER-STATEMENT OF ISSUES ...............................................1

STATEMENT OF THE CASE ...............................................................2

SUMMARY OF ARGUMENT ...............................................................7

ARGUMENT.............................................................................................8

    II.    Plaintiffs' Disclaimers Were Effective to Render the Federal Officer Removal Statute Inapplicable...............................................8

    III.    The PBMs Are Unable to Satisfy the Requirements of the Federal Officer Removal Statute ...................................................21

CONCLUSION .......................................................................................24

CERTIFICATE OF COMPLIANCE ..................................................26

CERTIFICATE OF SERVICE.............................................................27

i

# TABLE OF AUTHORITIES

Page(s)

### CASES

*Amancio v. DePerry*,
654 F. Supp. 3d 145 (D. Conn. 2023) .................................................................. 20

*Baker v. Atl. Richfield* Co.,
962 F.3d 937 (7th Cir. 2020) ............................................................................ 19

*California v. CaremarkPCS Health LLC*,
2024 WL 3770326 (9th Cir. Aug. 13, 2024)............................................ 17, 18, 19

*California. v. Eli Lilly & Co.*,
2023 WL 4269750, at *6 (C.D. Cal. June 28, 2023).................................... 17, 18

*Carnegie-Mellon University v. Cohill*,
484 U.S. 343 (1988) ........................................................................................ 9

*Chapman v. Crane Co.*,
694 F. App'x 825 (2d Cir. 2017)...................................................................... 8, 10

*City & Cnty. of S. F. v. Purdue Pharma L.P.*,
620 F. Supp. 3d 936 (N.D. Cal. 2022) ...............................................................11

*County of San Mateo v. Chevron Corp.*,
32 F.4th 733 (9th Cir. 2022) ........................................................................... 23

*Frawley v. Gen. Elec. Co.*,
2007 WL 656857 (S.D.N.Y. Mar. 1, 2007) ..................................................... 9, 10

*Grady v. Monsanto Co.*,
2023 WL 4884468 (E.D. Mo. Aug. 1, 2023) ...................................................... 8

*Hawai'i ex rel. Lopez v. CaremarkPCS Health, L.L.C.*,
2024 WL 1907396 (D. Haw. May 1, 2024) ...................................................... 15

*Healthcare Venture Partners, LLC v. Anthem Blue Cross & Blue Shield*,
2021 WL 5194662 (S.D. Ohio Nov. 8, 2021) ...................................................... 8

ii

*Hukkanen v. Air & Liquid Sys. Corp.*,
2017 WL 1217075 (C.D. Cal. Mar. 31, 2017) ...................................................... 20

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
488 F.3d 112 (2d Cir. 2007) ................................................................ 22

*In re Nat'l Prescription Opiate Litig.*,
622 F. Supp. 3d 584 (N.D. Ohio 2022) ............................................... 13

*In re Opioid Litigation*, Index No. 400000/2017 ...................................... 2, 7, 10, 13

*In Touch Concepts, Inc. v. Cellco P'ship*,
788 F.3d 98 (2d Cir. 2015) ................................................................... 9

*Isaacson v. Dow Chem. Co.*,
517 F.3d 129 (2d Cir. 2008) ................................................... 17, 19, 21, 24

*Jefferson County v. Acker*,
527 U.S. 423 (1999) ............................................................................ 22

*Maguire v. A.C. & S.*,
2015 WL 4934445 (S.D.N.Y. Aug. 18, 2015) ................................. 8, 10

*Meer Enterprises, LLC v. Kocak*,
2018 WL 1901478 (S.D.N.Y. Apr. 20, 2018) ...................................... 8

*Nanavati v. New Sch. for Soc. Rsch.*,
2020 WL 1876359 (S.D.N.Y. Apr. 15, 2020) ...................................... 8

*Nassau Cnty., NY v. Mylan Pharms., Inc.*,
2024 WL 3298500 (E.D.N.Y. July 4, 2024) ........................................ 1

*Ohio ex rel. Yost v. Ascent Health Servs. LLC*,
2024 WL 23187 (S.D. Ohio Jan. 2, 2024) ......................................... 12

*Palmer v. Amazon.com, Inc.*,
51 F.4th 491 (2d Cir. 2022) .............................................................. 13

*Pratt v. Asbestos Corp. Ltd.*,
2011 WL 4433724 (N.D. Cal. Sept. 22, 2011) .................................. 20

iii

*Puerto Rico v. Eli Lilly & Co.*,
    2023 WL 4830569 (D.P.R. July 13, 2023) ............................................ 15

*Puerto Rico v Express Scripts, Inc.*,
    119 F.4th 174 (1st Cir 2024) ......................................... 14, 15, 16, 17

*State by Tong v. Exxon Mobil Corp.*,
    83 F.4th 122 (2d Cir. 2023) ..................................................... 22, 23, 24

*Watson v. Philip Morris Companies, Inc.*,
    551 U.S. 142 (2007) ................................................................ 22, 23, 24

*West Virginia ex rel. McCuskey v. Eli Lilly & Co.*, No. 5:24-cv-,
    2024 WL 4357749 (N.D. W. Va. Sept. 6, 2024) ............................ 12, 23

*Westbrook v. Asbestos Defs. (BHC*,
    2001 WL 902642 (N.D. Cal. July 31, 2001) ....................................... 20

*Westchester Cnty. v. Mylan Pharms., Inc.*,
    2024 WL 3043121 (S.D.N.Y. June 18, 2024) ........................................ 1

*Wilde v. Huntington Ingalls, Inc.*,
    616 F. App'x 710 (5th Cir. 2015) ......................................................... 8

*Wullschleger v. Royal Canin U.S.A., Inc.*,
    75 F.4th 918 (8th Cir. 2023) ............................................................... 9

**STATUTES**

28 U.S.C. §1442(a)(1) .............................................. 1, 4, 12, 21, 22, 24

**RULES**

Federal Rule of Appellate Procedure 32(a)(5) ..................................... 26
Federal Rule of Appellate Procedure 32(a)(6) ..................................... 26
Federal Rule of Appellate Procedure 32(a)(7) ..................................... 26
Federal Rule of Appellate Procedure 32(f) .......................................... 26
Second Circuit Local Rule 32.1(a)(4) .................................................. 26

**O**THER **A**UTHORITIES

*Puerto Rico v. Express Scripts, Inc.*, Brief of Express Scripts, Inc.,
  2023 WL 6939503 (filed Oct. 12, 2023) ................................................. 16

Restatement (Second) of Torts § 821B (1979) ........................................11

Restatement (Second) of Torts § 840E comments b & c (1979) ........................... 14

## PRELIMINARY STATEMENT

These are consolidated appeals from orders of the United States District Courts for the Eastern District of New York (Seibel, J.) and the Southern District of New York (Merchant, J.), granting the motions of plaintiffs-appellees to remand fifty-seven cases to state court. Defendants-appellants removed the cases to federal court based on the federal officer removal statute. 28 U.S.C. § 1442(a)(1). In careful and well-reasoned decisions, and applying well-established precedents, both courts agreed that the federal officer removal statute did not apply because the plaintiffs expressly disclaimed in their complaints any claim upon which the federal officer removal could be based. Their orders remanding the cases were entirely correct and should be affirmed in all respects.[1]

## COUNTER-STATEMENT OF ISSUES

Did the district courts correctly rule that Plaintiffs' explicit and comprehensive disclaimers of any claims relating in any way to the defendants' work on behalf of federal programs rendered the federal officer removal statute inapplicable?

---

[1] The decisions below are reproduced in the Special Appendix at SPA-1, SPA-16, SPA-39, and SPA-43. The first two are reported at Nassau Cnty., NY v. Mylan Pharms., Inc., No. 2:23-CV-5382 (OEM) (ARL), 2024 WL 3298500, at *1 (E.D.N.Y. July 4, 2024) and Westchester Cnty. v. Mylan Pharms., Inc., No. 23-CV-6096 (CS), 2024 WL 3043121 (S.D.N.Y. June 18, 2024), respectively.

1

## STATEMENT OF THE CASE

**Nature of the State Cases**

Plaintiffs are New York State counties and cities. Beginning in 2017, they each commenced separate actions in New York State courts asserting claims under New York State law against parties responsible for creating and maintaining the opioid crisis in their respective communities. The defendants included manufacturers of opioids, distributors of opioids, and pharmacies that dispensed opioids. The cases were coordinated by the New York State Court Litigation Coordinating Panel ("LCP") and transferred to Suffolk County Supreme Court as *In re Opioid Litigation*, Index No. 400000/2017. Many of the defendants settled prior to or during a bellwether trial involving three of the plaintiffs that began in June 2021. On December 30, 2021, the bellwether trial concluded with a jury verdict against the trial defendants that had not settled. Thereafter, most, but not all, of the coordinated cases were transferred to Westchester County Supreme Court.

On April 7, 2023, Plaintiffs in thirty-five of the cases (the "First Wave Cases") filed identical amended complaints asserting claims against additional defendants for their role in creating and contributing to the opioid crisis, including Defendants-appellants, pharmacy benefits managers Express Scripts, Inc. ("ESI") and OptumRx, Inc. ("Optum") and their respective affiliates (collectively "PBMs"). Plaintiffs allege that:

> PBMs are the gatekeepers to the vast majority of opioid prescriptions filled in the United States. [They] manage the drug benefits for approximately ninety-five percent (95%) of the United States' population or 253 million American lives. PBMs control drug formularies which set the criteria and terms under which pharmaceutical drugs are reimbursed.

A-1153 (footnote omitted).

Plaintiffs further allege that PBMs:

- Colluded with opioid manufacturers [including Purdue Pharma], granting preferred formulary treatment to opioids in exchange for payment of rebates and other fees paid to PBMs. A-1588-89.

- Designed formularies that facilitated unrestricted access to opioids in return for financial incentives from manufacturers. A-1570, 1589.

- Participated in manufacturers' deceptive marketing efforts to promote opioids for chronic pain while downplaying addiction risks. A-1595, 1601.

- Breached their duties to monitor and control prescription abuse and address suspicious prescribing patterns. A-1614-16.

- Structured their contracts with clients to reserve all rights to rebates in their favor, explicitly stating in their client agreements that they negotiate rebates for their own benefit, not on behalf of clients. A-1583.

The complaints did not include any federal claims. They pleaded state common law claims for public nuisance, fraud, unjust enrichment, and negligence, as well as New York statutory claims for deceptive consumer practices, false advertising, and false statements to obtain public funds. A-1273-88.

**Removal**

PBMs removed the First Wave Cases from Westchester County Supreme Court to the United States District Court for the Southern District of New York based on 28 U.S.C. §1442(a)(1). Their theory of removal was that they provided services to a United States Department of Defense ("DoD") health care program known as TRICARE; the Federal Employees Health Benefits Program ("FEHBP"), which is administered and overseen by the U.S. Office of Personnel Management ("OPM"); and the Veterans Health Administration ("VHA") and that Plaintiffs' claims were broad enough to include their performance of those services. *See generally* A-88-288, 1115-1315, 1972-2730, 2764-3336.

Specifically, PBMs claimed that:

- "OptumRx 'acts under' the direction of a federal officer *in performing its contracts with the [VHA]*." (A-93) (emphasis added)

- "Express Scripts Acted Under DoD *in Providing Services to TRICARE*." (A-276) (emphasis added)

- "Express Scripts acts under the direction of a federal officer *when it provides services for federal employees under FEHBP*." (A-280) (emphasis added)

Significantly, however, PBMs failed to cite any federal government regulation, guidance, control, or direction that required them to do any of the wrongful things of which Plaintiffs accused them. Thus,

- The federal government did not require PBMs to enter into arrangements with opioid manufacturers to grant preferred formulary

4

treatment to opioids in exchange for payment of rebates and other fees paid to PBMs.

- The federal government did not require PBMs to design formularies that facilitated unrestricted access to opioids.

- The federal government did not require PBMs to participate in manufacturers' marketing efforts to promote the use of opioids.

- The federal government did not prohibit PBMs from monitoring and controlling prescription abuse and address suspicious prescribing patterns.

- The federal government did not require PBMs to structure their contracts with clients so that they were free to negotiate rebates from manufacturers for their own benefit, not for the benefit of their clients.

According to PBMs, the federal agencies do not merely control what their respective formularies say, they develop their own and require PBMs to use them in administering the federal programs. For example, TRICARE "mandates the exclusive use of a formulary created by the DoD's own Pharmacy & Therapeutics (P&T) Committee." A-270. For another example,

> the VHA retains complete control over formulary construction and claims processing, including control of claim adjudication and pricing logic. See Hoernlein Decl., Ex. 1, VHA Contract at p. 6, Section 2; p. 8, Section 5.1. Engaging its own Pharmacy & Therapeutics Committee,[2] the VHA constructs its own formulary and prior-authorization criteria. *OptumRx neither decides what prescription drugs are covered on the VHA's formulary nor makes recommendations regarding formulary design*.

A-667 (emphasis added); *see* Appellants' Brief at 24.[2]

---

[2] The VHA contract cited by PBMs is under seal and is not reproduced in the joint appendix.

5

With respect to their clients' formularies generally, PBMs alleged that:

> Express Scripts offers options to assist its clients with managing prescription-drug benefits, *but it is up to plan sponsors to choose what benefits to provide to their plan beneficiaries and how to manage those benefits*. In particular, plan sponsors select which medications their plans will cover (i.e., what drugs are on a plan's formulary) and under what circumstances (i.e., what utilization management and clinical programs, if any, are in place). Like most PBMs, Express Scripts develops standard formularies, utilization management tools, and clinical programs that it offers to its clients. *Some plan sponsors adopt Express Scripts' offerings, while others create their own*. Either way, *the plan sponsor controls the formulary, utilization management, and clinical programs applicable to each plan it sponsors*. Express Scripts' role is to implement and administer the plan sponsor's choices for the plan beneficiaries.

A-269 (emphasis added).

After removal, on September 29, 2023, the First Wave plaintiffs filed Second Amended Complaints to include an express disclaimer of any (i) claims based on PBMs' *conduct* on behalf of the federal programs and (ii) *recovery* for harm caused by that conduct. *See* A-1327-1330. Lest there be any doubt about the comprehensive scope of their disclaimers, Plaintiffs further disclaimed any legal grounds that could be raised related to federal law and PBMs' work for the federal government. *See* A-1329.

In April 2024, Plaintiffs in twenty-two other cases pending in state court (the "Second Wave Cases") amended their pleadings to add PBMs as Defendants. All of the complaints against PBMs filed by the Second Wave Plaintiffs included disclaimers relating to PBMs' work for the federal government that were

substantially identical to the disclaimers in the Second Amended Complaints filed by the First Wave Plaintiffs. *See* A-2304-2309. Defendants removed the Second Wave Cases, either to the Southern District of New York, or, in the case of the two actions that were still pending in Suffolk County Supreme Court, to the United States District Court for the Eastern District of New York.

**The Orders Appealed From**

In *Westchester*, Judge Seibel granted plaintiffs' motion to remand thirty-four of the cases before her. She held that Plaintiffs' "disclaimers effectively waive[d] any claims or recovery attributable to the [PBMs'] conduct related to, or contracts with, federal officers," and she exercised her discretion to decline to exercise supplemental jurisdiction. SPA-32. In *Nassau*, Judge Merchant agreed with Judge Seibel and also ordered remand of that case. *See generally* SPA-1-15. The Southern and Eastern District courts thereafter issued remand orders in the remaining twenty-two cases based on the rulings in *Westchester* and *Nassau*. SPA-39-43.[3]

**SUMMARY OF ARGUMENT**

Plaintiffs' disclaimers could not be more clear or comprehensive in disclaiming any claim that could possibly trigger the federal officer removal statute.

---

[3] Following the remands, the LCP entered an order indicating that it intended to transfer the cases pending in Westchester back to Suffolk. *In re Opioid Litigation*, LCP Index No. 0003/2024, <u>NYSCEF Doc. No. 94</u> (Sept. 20, 2024).

Accordingly, the district courts correctly concluded that the statute did not apply. The orders appealed from should be affirmed on that basis.

Like the district courts below, this Court need not resolve the question whether the federal officer removal statute would apply if there had been no disclaimer. If the Court concludes that the disclaimer was somehow ineffective, however, then the Court should affirm on the ground that the statute does not apply to Plaintiffs' claims in any event.

## ARGUMENT

### I. PLAINTIFFS' DISCLAIMERS WERE EFFECTIVE TO RENDER THE FEDERAL OFFICER REMOVAL STATUTE INAPPLICABLE

The federal courts "have consistently granted motions to remand where the plaintiff expressly disclaimed the claims upon which federal officer removal was based." *Grady v. Monsanto Co.*, No. 23-CV-226, 2023 WL 4884468, at *2-3 (E.D. Mo. Aug. 1, 2023) (collecting cases); *see, e.g., Chapman v. Crane Co.*, 694 F. App'x 825, 827 (2d Cir. 2017); *Wilde v. Huntington Ingalls, Inc.*, 616 F. App'x 710, 715 n.28 (5th Cir. 2015); *Healthcare Venture Partners, LLC v. Anthem Blue Cross & Blue Shield*, No. 21-CV-29, 2021 WL 5194662, at *6 (S.D. Ohio Nov. 8, 2021); *Nanavati v. New Sch. for Soc. Rsch.*, No. 20 Civ. 935, 2020 WL 1876359, at *1–2 (S.D.N.Y. Apr. 15, 2020); *Meer Enterprises, LLC v. Kocak*, No. 18 Civ. 00006, 2018 WL 1901478, at *2-3 (S.D.N.Y. Apr. 20, 2018); *Maguire v. A.C. & S.*, No. 14-CV-7578,

2015 WL 4934445, at *2 (S.D.N.Y. Aug. 18, 2015); *Frawley v. Gen. Elec. Co.*, No. 06 Civ. 15395, 2007 WL 656857 (S.D.N.Y. Mar. 1, 2007).[4]

Plaintiffs' disclaimers are specific and comprehensive. They explicitly renounce any claims or recovery related to PBMs' services, conduct, and contracts in connection with any federal program. PBMs do not dispute the breadth of the disclaimers as written. Rather, they suggest that no disclaimer, however expansive, could ever be effective because "Plaintiffs challenge conduct that the PBMs perform on an undifferentiated basis for federal and non-federal clients alike" Appellants' Brief at 2, and thus, according to PBMs, the claims are "indivisible."

As the district courts noted, however, "indivisibility" arguments have been rejected by multiple courts where, as here, it is possible to distinguish the defendant's conduct on behalf of the federal government from its conduct on behalf of non-

---

[4] Some of the disclaimers below were included in the complaints prior to removal and others were included after removal. Whether a post-removal disclaimer defeats subject matter jurisdiction is an issue on which the circuits have differed, and it is currently before the Supreme Court. *Compare In Touch Concepts, Inc. v. Cellco P'ship*, 788 F.3d 98, 101 (2d Cir. 2015) (a post-removal amendment does not defeat federal jurisdiction) *Wullschleger v. Royal Canin U.S.A., Inc.*, 75 F.4th 918, 924 (8th Cir. 2023) (a post-removal amendment defeats federal jurisdiction), *cert. granted*, 144 S. Ct. 1455 (2024). That issue has no bearing on this appeal, however, because, as the district courts correctly held, "the United States Supreme Court has held that a properly removed case can be remanded to the state court after the complaint is amended to remove the allegations that made removal proper." *Frawley*, 2007 WL 656857, at *3, citing *Carnegie-Mellon University v. Cohill*, 484 U.S. 343 (1988). PBMs do not challenge the district courts' discretionary determinations to decline to exercise supplemental jurisdiction as to those complaints involving post-removal disclaimers. SPA-6, 14, 24, 35.

federal actors. *See, e.g., Chapman*, 694 F. App'x 825*; Maguire*, 2015 WL 4934445*; Frawley,* 2007 WL 656857.

PBMs seek to distinguish the numerous cases relied on by the district courts on the ground that "[w]ith one exception, the non-PBM cases are personal injury lawsuits brought by individuals due to exposure to dangerous chemicals or substances, usually asbestos." Appellants' Brief at 42. But that is a distinction without a difference. The basis for the decisions in those cases is that the non-federal conduct could be litigated without challenging the federal conduct. The same is true here.

PBMs' conduct on behalf of their federal customers is "divisible" for trial by simply precluding any evidence or reference to the federal programs. Plaintiffs can prove their claims against PBMs without any discussion or evidence concerning their roles in federal health care. Specifically, Plaintiffs can prove that 1) the opioid epidemic in their respective communities is a substantial and unreasonable interference with public rights that constitutes a public nuisance, and 2) PBMs' conduct in the non-federal market was a substantial contributing factor in creating, causing, and perpetuating that nuisance. *See In re Opioid Litig.*, No. 400000/2017, NYSCEF Doc. No. 8922, Final Jury Instructions at 22 (Dec. 15, 2021) ("To prevail on the Public Nuisance claim under New York law, a plaintiff must show that the defendant's conduct amounts to a substantial and unreasonable interference with the

10

exercise of a common right to the public, thereby endangering or injuring the property, health, safety or comfort of a considerable number of persons"); *City & Cnty. of S. F. v. Purdue Pharma L.P.*, 620 F. Supp. 3d 936 (N.D. Cal. 2022); Restatement (Second) of Torts § 821B (1979).

PBMs' allegations that the federal agencies control their own formularies is fatal to their "indivisibility" argument because it proves too much. PBMs do not claim that they offered to their non-federal clients formularies that were the same as those dictated by the federal agencies—much less that any federal requirement compelled them to do so. Rather, they allege that their non-federal clients each make their own individual decisions. A-89 ("PBMs do not make formulary or health-plan decisions for their clients"); A-269 ("[s]ome plan sponsors adopt [PBMs'] offerings, while others create their own"). Indeed, Plaintiffs allege, and PBMs do not deny, that PBMs did not offer their non-federal clients the same formularies that were required by federal plans. For example, Plaintiffs alleged that:

> by no later than 2011, the PBM Defendants had been put on notice by the Centers for Medicare and Medicaid Services ("CMS") that all actors involved in delivery of healthcare in the United States needed to take steps to address the overutilization of prescription opioids, which was contributing significantly to the growing opioid crisis.

A-2951. At some point in time after that 2011 notice, "CMS put in requirements that were [opioid] solutions that were not put into commercial" plans, and "what is

available in Medicare is not fully available in Commercial." A-2957 (internal quotes omitted).

PBMs make much of the fact that, "Plaintiffs challenge conduct that the PBMs perform on an undifferentiated basis for federal and non-federal clients alike." Appellants' Brief at 2. But PBMs can point to no federal requirement that they negotiate rebates or fees from manufacturers on an undifferentiated basis. When PBMs voluntarily choose, for their own business reasons, to engage in undifferentiated negotiations, their acts on behalf of the private clients did not lose their character as acts on behalf of those private clients, because they were not required by the federal agencies to negotiate in that fashion. As one court explained:

> That Caremark chose to enter into some negotiations on behalf of federal and non-federal health benefit programs is immaterial, because the State is not seeking relief relating to any federal health benefit programs. Moreover, no federal officer directed, supervised, or controlled Caremark's actions with respect to non-FEHBA plans like WVPEIA.

*West Virginia ex rel. McCuskey v. Eli Lilly & Co.*, No. 5:24-cv-143, 2024 WL 4357749, at *4–8 (N.D. W. Va. Sept. 6, 2024); *accord, Ohio ex rel. Yost v. Ascent Health Servs. LLC*, No. 2:23-CV-1450, 2024 WL 23187, at *3 (S.D. Ohio Jan. 2, 2024), *appeal filed*, No. 24-3033 (6th Cir. Filed Apr. 27, 2023). Likewise here, the acts on behalf of non-federal clients cannot be regarded as acts in "an official or individual capacity, for or relating to any act under color of such office." § 1442(a)(1).

PBMs argue that Plaintiffs' public nuisance claim is indivisible as a matter of law because they say that to prove a public nuisance Plaintiffs must prove "*all members* of the public [are] affected." Appellants' Brief at 34 (emphasis added). That is simply wrong. Under New York law, Plaintiffs only need to prove that a defendant's acts "endanger[ed] or injur[ed] the property, health, safety or comfort of a *considerable number of persons*." *In re Opioid Litig.*, No. 400000/2017, NYSCEF Doc. No. 8922, Final Jury Instructions at 22 (Dec. 15, 2021) (emphasis added). *See Palmer v. Amazon.com, Inc.*, 51 F.4th 491, 512 (2d Cir. 2022).

PBMs also argue that it would be impossible to separate the harm caused by opioids distributed under federal programs from the harm caused by other opioids. To the contrary, proof of harm in all of the opioid public nuisance cases tried to date has always been based on the aggregate volume of opioids for which each defendant is responsible. In the bellwether trial in this case, for example, the jury was asked:

> For each of the Defendants, Severed Defendants, or Plaintiff you found to have caused, contributed to, or maintained a public nuisance in Suffolk County, what is the percentage of responsibility, if any, that should be assigned to each … ?

*In re Opioid Litig.,* No. 400000/2017, NYSCEF Doc. No. 8923, Final Verdict Sheet at 8 (Dec. 15, 2021). And the jury did in fact allocate responsibility. *See id.,* NYSCEF Doc. No. 9199, True Extract of the Minutes, Jury Verdict and Allocation (March 22, 2022). *See also In re Nat'l Prescription Opiate Litig.*, 622 F. Supp. 3d 584, 618 (N.D. Ohio 2022), judgment entered, No. 1:17-MD-2804, 2022 WL 4099669 (N.D. Ohio

Aug. 22, 2022). Likewise in these cases, it will be possible to exclude from the aggregate volume evidence presented to the jury the volume of opioids that were part of the federal programs.[5]

Plaintiffs expect that in reply PBMs will rely on the First Circuit's decision in *Puerto Rico v Express Scripts, Inc.,* 119 F.4th 174 (1st Cir 2024), which was decided after they filed their opening brief. In that case, Puerto Rico alleged that PBMs schemed to unlawfully inflate insulin prices through rebate and price negotiations that they conducted jointly on behalf of federal and non-federal clients. The district court rejected PMBs' claim of indivisibility, explaining:

> Because this case does not make any claims related to federal programs, a decision in this case would have no impact on insulin prices under any federal program because relief would be strictly limited to non-federal health insurance plans. Thus, upon remand, the state court would not need to address any issue related to Defendants' contracts with the federal government nor would Defendants have any colorable

_____

[5] PBMs point out that in their complaints Plaintiffs allege that they have "suffered an indivisible injury." A-1643, A-2542. This refers to the indivisibility of the Plaintiffs' injuries, *not* the indivisibility of the Defendants' conduct. The indivisibility of the injury, however, does *not* mean that the injury caused by the PBMs' non-federal conduct cannot be tried without considering the injury caused by the PBM's federal conduct; in fact, it means the opposite. In the context of nuisance law, all defendants who caused or contributed to the nuisance will be held jointly and severally liable if the nuisance is indivisible—meaning that fault cannot be apportioned among the various contributors. *See* Restatement (Second) of Torts § 840E comments b & c (1979). Plaintiffs thus have alleged that fault for the opioid nuisance is not capable of apportionment. If that is true, then the factfinder in these cases need only consider whether the PBMs' conduct was a "substantial contributing factor" in creating the nuisance in order to hold them jointly and severally liable for all of it. In short, the allegations cited by PBMs are entirely immaterial to the issues before this Court.

federal defense because the claims asserted do not involve federal programs or federal actors. *Just because Defendants conduct business in a particular way, i.e. negotiations with manufacturers do not take place on a plan-by-plan basis, does not mean that they cannot conduct negotiations differently pursuant to a court order*. Moreover, the Court is not persuaded that dividing the work done by Defendants on behalf of the federal government from the work done for its private clients is not possible in this case.

*Puerto Rico v. Eli Lilly & Co.*, No. 23-CV-1127, 2023 WL 4830569 at *2 (D.P.R. July 13, 2023) (emphasis added).

The First Circuit reversed. The court accepted Caremark's allegation that, on the facts of that case, its federal and non-federal conduct was indivisible.[6] The First Circuit explained:

> [Caremark] negotiates for rebates jointly for its [federal] and non-[federal] carriers. And those negotiations lead to rebate agreements, which do not distinguish between [federal] and non-[federal] plans. Considering the level of [the federal government's] involvement in what provisions these rebate agreements must contain, holding Caremark liable for its role in the scheme to inflate insulin prices necessarily includes holding Caremark liable for its negotiations—negotiations that are at least in part for FEHBA plans, carried out pursuant to OPM's detailed requirements.

*Puerto Rico*, 119 F.4th at 190.[7]

---

[6] The PBMs raised separate theories of removal, but because the statute authorizes removal of the entire action even if only one of the controversies involves a federal officer, the Court limited its discussion to Caremark's theory of the case, which it found persuasive. 2023 WL 4830569 at *2

[7] Similarly, in *Hawai'i ex rel. Lopez v. CaremarkPCS Health, L.L.C.*, No. CV 23-00464 LEK-RT, 2024 WL 1907396 (D. Haw. May 1, 2024), the court accepted the argument that the defendant's conduct was indivisible because it had been carried

The facts here are materially distinguishable from those in *Puerto Rico*. There, the joint negotiations resulted in insulin prices that were the same for both federal and non-federal clients.[8] Furthermore, Puerto Rico, "by seeking to recover for every Commonwealth resident who purchased insulin at inflated prices, necessarily seeks to recover for its residents who are federal employees who receive benefits through" federal plans. 119 F.4th at 183. Because the prices were the same for all, and the plaintiff was seeking recovery for both federal and non-federal employees, holding Caremark liable for the negotiations "necessarily" included holding it liable for its acts on behalf of its federal clients. 119 F.4th at 190.

In contrast here, the outcome of the joint negotiations was not inflated prices for federal and non-federal clients alike, and Plaintiffs are not seeking recoveries on behalf of any residents—much less residents covered by the federal plans. Indeed, Plaintiffs are not complaining about prices at all. Rather, they are complaining about formularies that, according to PBMs, can vary from client to client, with the federal formularies strictly dictated by federal requirements and non-federal formularies

---

out on behalf of both federal and non-federal customers. It did so without any discussion of the many cases which granted remand.

[8] "There are not separate WAC prices for Medicare, TRICARE, and the commercial market. Rather, they are all the same; there is only a single WAC price, regardless of the insurer or beneficiary." *Puerto Rico v. Express Scripts, Inc.*, Brief of Express Scripts, Inc., 2023 WL 6939503, at *20 (filed Oct. 12, 2023).

16

varying based on each client's individual choices without regard to federal requirements.

The First Circuit said that it was required to accept Caremark's "theory of the case," and since it was their theory that their federal and non-federal conduct was indivisible, that factual issue had to be resolved in a federal forum. *See* 119 F.4th at 193-94. But in that case, Caremark's "theory of the case" was judged to be "colorable," 119 F.4th at 186. Its joint actions resulted in identical prices for all, and Puerto Rico was seeking recovery for all residents, including federal employees. Caremark could not defend itself without showing that its wrongful conduct had been done at federal direction. Here, in contrast, PBMs' theory of the case is contradicted by their own factual averments (as well as by the allegations of the operative pleadings). It therefore cannot be said to be "colorable." *Isaacson*, 517 F.3d at 135.

PBMs fault the district courts for relying on *California. v. Eli Lilly & Co*., No. 2:23-CV-01929-SPG-SK, 2023 WL 4269750, at *6 (C.D. Cal. June 28, 2023), another decision that was recently reversed. *California v. CaremarkPCS Health LLC*, No. 23-55597, 2024 WL 3770326 (9th Cir. Aug. 13, 2024). Like Puerto Rico, California alleged that PBMs conspired with insulin manufacturers to artificially raise the price of insulin. The district court rejected PBMs' indivisibility argument saying:

[The removing defendant's] indivisibility argument stretches federal officer jurisdiction too far. A number of courts [in cases involving asbestos exposure] have credited similar types of waivers that seek to disclaim work performed on behalf of government officers while suing private contractors for work performed on behalf of private organizations. At oral argument, [the removing defendant] argued that th[ose] asbestos cases presented meaningfully different facts than those the Court is faced with in the present Motion. Specifically, [the removing defendant] argued that work performed on specific vessels could be divided in a way that joint negotiations on behalf of multiple parties could not. While such a division may be more difficult here, the Court is not persuaded that it cannot be done. Furthermore, *[the removing defendant's] argument, when carried to its logical end, assumes that any organization that contracts with the government, including for services that are also available to private organizations, may always take advantage of federal officer removal if any portion of the work it performs is on behalf of both private and government organizations, even if the government services are not at issue.* Yet [the removing defendant] has not provided authority for this proposition, nor has the Court found any such authority, especially under circumstances similar to the present case, where Plaintiff has repeatedly demonstrated that it does not seek to sue over any conduct performed on behalf of a federal entity.

*Id*. at *6 (emphasis added).

PBMs make much of the fact that the Ninth Circuit reversed, but the Ninth Circuit did not take issue with the district judge's analysis of the "indivisibility" issue; rather, the court reversed on the alternative ground that the disclaimer in that case, *as written*, "fails to explicitly release claims or possible recovery from rebate practices as they relate to the federal programs at issue." *California*, 2024 WL 3770326, at *1. Indeed, in her concurring opinion, Judge Ikuta complained that "[t]he majority fails to recognize or address [the indivisibility] issue—which is

18

Caremark's central argument—and therefore errs in concluding that a more carefully drafted disclaimer would defeat removal." 2024 WL 3770326, at *2 (Ikuta, J., concurring).

Because Plaintiff's disclaimers are explicit and comprehensive, the decision of the Court of Appeals does not support PBMs' indivisibility argument. Nor does it undermine the sound reasoning of the district court, or the many cases the district court relied on, which the district courts here were right to follow.

PBMs complain that the disclaimers "would force the PBMs to prove federal direction in state court." Appellants' Brief at 37. But they fail to identify some direction that arguably caused the harm for which Plaintiffs seek to hold them accountable. *Baker v. Atl. Richfield* Co., 962 F.3d 937, 944 (7th Cir. 2020), which is cited by PBMs, is distinguishable because in that case the plaintiffs alleged that the defendants had caused pollution, and there was a genuine merits question whether the pollution had "flowed from the Companies' specific wartime production for the federal government or from their more general manufacturing operations outside those confines." 962 F.3d 944. In those circumstances, the defendants' federal defense was colorable because the defendants could point to federally directed conduct—wartime production—that arguably caused the pollution.

A defendant must raise a colorable federal defense to properly invoke federal officer removal jurisdiction. *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 139 (2d Cir.

19

2008). PBMs raise two potential federal defenses: the government contractor defense and preemption. But Plaintiffs have specifically disclaimed any claims premised upon conduct performed pursuant to a federal contract, including claims that would implicate a government contractor or preemption defense. Accordingly, PBMs have no "plausible" federal defense. *Amancio v. DePerry*, 654 F. Supp. 3d 145, 155 (D. Conn. 2023).

The problem for PBMs with both of these purported defenses, is that they only apply to PBMs' actions in connection with their respective government health care programs. But Plaintiffs' disclaimers have taken those actions out of this litigation. There is simply no plausible argument that PBMs' actions on behalf of private clients are shielded from liability by either government-contractor immunity or preemption. *See, e.g.*, *Hukkanen v. Air & Liquid Sys. Corp.*, No. CV 17-2227, 2017 WL 1217075, at *2 (C.D. Cal. Mar. 31, 2017) ("In their Complaint, Plaintiffs have waived any claims that would give rise to [the] military contractors immunity defense"); *Pratt v. Asbestos Corp. Ltd.*, 2011 WL 4433724, at *2 (N.D. Cal. Sept. 22, 2011) ("Plaintiff's waiver has rendered any federal defenses moot. There must be claims against which a federal defense is cognizable, and Plaintiff's waiver has removed any such claims."); *Westbrook v. Asbestos Defs. (BHC)*, 2001 WL 902642, at *2 (N.D. Cal. July 31, 2001) ("If plaintiffs' claims arise only from work done on private ships, not

under the direction of any federal officers, [the] military contractor defense is unavailable.").

## II. THE PBMS ARE UNABLE TO SATISFY THE REQUIREMENTS OF THE FEDERAL OFFICER REMOVAL STATUTE

The district courts did not reach the question whether the federal officer removal statute would have applied in the absence of the disclaimers, because they held that Plaintiffs had effectively disclaimed any claims that could trigger the statute. This Court should affirm on that basis.

If the Court determines that the disclaimers were ineffective, however, then the Court should reach that issue and affirm on the ground that the statute does not apply in the circumstances presented here.

The federal officer removal statute provides in pertinent part:

(a) A civil action … that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to *any act under color of such office* … .

28 U.S.C. § 1442(a)(1) (emphasis added).

PBMs are not federal officers. In order to invoke the statute, therefore, they must satisfy a three-pronged test. *Isaacson*, 517 F.3d at 135. They must (1) show that they "acted under a federal officer," (2) "performed the actions for which [it is] being

sued 'under color of federal office,'" and (3) "raise a colorable federal defense." *Id.* (quoting 28 U.S.C. § 1442(a)(1) and citing *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999)) (alterations omitted). The first two of these prongs "tend to collapse into a single requirement: that the acts that form the basis for the state civil ... suit were performed *pursuant to an officer's direct orders or to comprehensive and detailed regulations.*" *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007) (emphasis added; internal quotation marks omitted). *See also State by Tong v. Exxon Mobil Corp.*, 83 F.4th 122, 142-43 (2d Cir. 2023). PBMs cannot satisfy that test because the "acts that form the basis for" Plaintiffs' claims were not performed "pursuant to an officer's direct orders or to comprehensive and detailed regulations."

The federal officer removal statute is not triggered merely because a person has a business relationship with a federal agency, even if that relationship is subject to extensive government controls and regulations. As the Supreme Court has held:

> a private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase "acting under" a federal "official," even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored. A contrary determination would expand the statute's scope considerably, potentially bringing within it state-court actions filed against private firms in many highly regulated industries. Nothing in the statute's language, history, or purpose indicates a congressional intent to do so.

*Watson*, 551 U.S. at 143.

For the statute to apply, there must be a "causal nexus" between the conduct for which the defendant is sought to be held liable and some direction or control exerted by the federal government. *See State by Tong*, 83 F.4th at 145; *County of San Mateo v. Chevron Corp.*, 32 F.4th 733, 755 (9th Cir. 2022); *W. Virginia ex rel. McCuskey*, 2024 WL 4357749, at *4.

Here, there is no "causal nexus" between the conduct alleged to have been wrongful and any federal "officer's close direction, such as acting under the 'subjection, guidance, or control' of the officer, or in a relationship which 'is an unusually close one involving detailed regulation, monitoring, or supervision.'" *Watson*, 551 U.S. at 152.

PBMs can identify no federal mandate required them to enter into self-serving arrangements with manufacturers to give opioids preferred treatment on formularies, and that misconduct cannot be said to have in any way aided the federal government in performing any government task or function. No federal mandate required PBMs to participate in opioid manufacturers' promotion of opioids, and that self-serving misconduct cannot be said to have in any way aided the federal agencies in performing any government task or function. No federal prohibition barred PBMs from monitoring and controlling prescription abuse and addressing suspicious prescribing patterns, and their failure to do so cannot be said to have in any way aided the federal agencies in performing any government task or function. In short,

23

although PBMs held federal contracts and were governed by government regulations and controls, they fail to show that any such regulations or control, or any directions given by any federal officer, had any "causal nexus" to the wrongful conduct that is the subject of Plaintiffs' claims. *See Watson*, 551 U.S. at 147; *Isaacson*, 517 F.3d at 137.

Implicitly recognizing the utter lack of a "causal nexus" here, PBMs urge this Court to overrule prior precedents and adopt a less demanding test based on a 2011 amendment to 28 U.S.C.A. § 1442(a)(1). This Court should decline that invitation because this Court has previously rejected it in "binding and precedential opinions":

> We reject Exxon Mobil's [assertion] that the causal-nexus requirement recognized in pre-2011 cases like *Isaacson* and *In re MTBE* was abrogated by the Removal Clarification Act of 2011. … In fact, we have continued to apply the casual-nexus requirement in our binding and precedential opinions long after 2011—and indeed, as recently as just last year.

*State by Tong*, 83 F.4th at 145 n.7.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district courts' orders remanding these cases to state court.

Dated:  November 15, 2024                    Respectfully submitted,

/s/ Paul J. Napoli                              /s/ Thomas I. Sheridan, III
**NAPOLI SHKOLNIK**                     **SIMMONS HANLY CONROY LLP**
PAUL J. NAPOLI                              JAYNE CONROY
HUNTER J. SHKOLNIK                     THOMAS I. SHERIDAN, III
NESTOR D. GALARZA                     ANDREA BIERSTEIN
NS PR LAW SERVICES                     112 Madison Avenue
1302 Avenida Ponce de Leon          New York, NY 10016
Santurce, PR 00907                        (212) 784-6402
Tel: (787) 493-5088                         jconroy@simmonsfirm.com
Fax: (646) 843-7603                         tsheridan@simmonsfirm.com
PNapoli@nsprlaw.com                    abierstein@simmonsfirm.com
Hunter@nsprlaw.com
NGalarza@nsprlaw.com                  *Attorneys for Second Wave Plaintiffs*

SALVATORE C. BADALA
NAPOLI SHKOLNIK
400 Broadhollow Rd, Suite 305
Melville, NY 11747
Tel: (212) 397-1000
SBadala@napolilaw.com

*Attorneys for First Wave Plaintiffs*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Second Circuit Local Rule 32.1(a)(4)/ Federal Rule of Appellate Procedure 32(a)(7) because this brief contains 6081 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

Dated:  November 15, 2024

*/s/ Paul J. Napoli*
Paul J. Napoli
**NAPOLI SHKOLNIK**
NS PR LAW SERVICES
1302 Avenida Ponce de Leon
Santurce, PR 00907
Tel: (787) 493-5088
Fax: (646) 843-7603
PNapoli@nsprlaw.com

*Attorneys for First Wave Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2024, I electronically filed the foregoing with the Clerk of Court using the Court's CM/ECF system which will send notification of such filing to all counsel of record.

Dated:  November 15, 2024

*/s/ Paul J. Napoli*_____
Paul J. Napoli
**NAPOLI SHKOLNIK**
NS PR LAW SERVICES
1302 Avenida Ponce de Leon
Santurce, PR 00907
Tel: (787) 493-5088
Fax: (646) 843-7603
PNapoli@nsprlaw.com

*Attorneys for First Wave Plaintiffs*